```
                 STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF NEW YORK
                 ------------------------------x

                 LOUIS PSIHOYOS,

                             Plaintiff,

                         v.                        11 Civ. 1416 (JSR)

                 JOHN WILEY and SONS, INC.,
                                                   Argument
                             Defendant.

                 ------------------------------x
                                                   New York, N.Y.
                                                   August 9, 2011
                                                   4:30 p.m.
                 Before:

                         HON. JED S. RAKOFF

                                                   District Judge


                         APPEARANCES



                 NELSON & McCULLOCH LLP
                     Attorneys for Plaintiff
                 BY:  DANIAL A. NELSON


                 ASHIMA AGGARWAL
                     Attorney for Defendant
```

1           (Case called)

2           THE COURT:  Good afternoon.  Before we hear oral

3  argument on the motion, there has been a new case filed with

4  the same parties and counsel, 11 Civ. 4187.  While we are at

5  it, why don't we set a date for an initial conference on that

6  case.  Any reason why I can't have the initial conference next

7  week?

8           MR. NELSON:  Your Honor, sorry to interrupt, I believe

9  that is Psihoyos v. Pearson, not Psihoyos v. Wiley.

10          THE COURT:  Thank you very much.  You're right.  We'll

11 set down a notice of conference.  I think we will probably put

12 it on for an initial conference sometime next week.

13          I'm ready to hear argument on the motion for a

14 preliminary injunction.  Let me hear first from plaintiff's

15 counsel.

16          MR. NELSON:  Your Honor, it is a very straightforward

17 issue.  The defendant admits to taking several of Mr.

18 Psihoyos's photographs and incorporating those photographs in

19 textbooks.

20          THE COURT:  As I understand it, they are saying that

21 you had not properly registered those copyrights.

22          MR. NELSON:  Your Honor, they are saying that, that's

23 correct.

24          THE COURT:  If they are correct, we would go to

25 whether or not you were likely to prevail, yes?

1           MR. NELSON:  I agree that that bears primarily on the

2    likelihood of success on the merits, although either way there

3    is a certainty of success on the merits if they are willing to

4    stipulate to liability.  There is almost no chance that there

5    are any of these photographs that aren't registered.  The

6    defendant has a copy of Mr. Psihoyos's contracts with Corbis,

7    for example, which contractually obligates them to register

8    copyrights of these photographs.

9           What they are actually bringing to your Honor's

10   attention is a discrepancy in the complaint based on your

11   Honor's ruling in a similar case, Psihoyos v. Pearson.  We

12   actually attached registration numbers to our initial

13   complaint.

14          In this case there are a couple of discrepancies where

15   Wiley, who hadn't given us the actual photographs that they

16   used, sent us letters saying we, or Mr. Psihoyos in the initial

17   case, saying we used a copy of your photographs of William

18   Dement holding a Narcoleptic Dog in our book entitled

19   Visualizing Psychology.  Mr. Psihoyos has a famous photograph

20   of William Dement holding a Narcoleptic Dog.

21          It came out for the first time at his deposition that

22   the photo Wiley actually used is a similar taken from the same

23   photo shoot, which wasn't published in National Geographic

24   Magazine, which is the copyright registration that Mr. Psihoyos

25   has relied upon in his complaint.  It is licensed by Corbis and

1  part of Corbis's registration program, and there is a copyright
2  registration. It's a just matter of amending our complaint
3  once discovery is complete to reflect the proper numbers for
4  copyright registration.
5          Even if they were right, that there were some
6  photographs for which there was no registration, they don't
7  deny copyrightability or that Mr. Psihoyos owns these
8  photographs. He can register a copyright tomorrow and bring
9  these claims, and they would be certain to admit doing what he
10 alleges they did.
11         You have a case where he owns the photographs, and the
12 Court is not inhibited from protecting his copyrights at this
13 stage by the registration status one way or the other. There
14 is a certainty of success on the merits. They will stipulate
15 to liability. They used these photographs without permission.
16 They don't deny they are Mr. Psihoyos's photographs. They have
17 books in a warehouse they want to continue to sell.
18         THE COURT: The very fact that they have admitted it
19 suggests, does it not, that there is no likelihood of
20 repetition in the future?
21         MR. NELSON: They say they want to continue to do so,
22 your Honor. They want to continue to sell these books even
23 though they admit that they used his picture without his
24 permission, they haven't paid him, they don't have a license.
25 They admit that what they are doing is copyright infringement

1   and they admit that they intend to continue to do so if the
2   Court doesn't stop them from doing so.
3          THE COURT: I don't quite read their papers the same
4   way, but maybe you're right. Let me interrupt you for a second
5   and see what your adversary says in that regard.
6          MS. AGGARWAL: Your Honor, Wiley has agreed to make
7   certain stipulations in this case. We have not stipulated that
8   Wiley has committed copyright infringement nor have we admitted
9   to liability. What we have stipulated to is that Wiley has
10  made unauthorized use of certain photographs in the textbooks
11  at issue in this litigation.
12         THE COURT: Are you planning to continue to sell those
13  books with that unauthorized use?
14         MS. AGGARWAL: We are continuing to sell any existing
15  inventory we have of those books. But when we reprint those
16  books, the photographs are being replaced. They are being
17  removed from sort of the printer files of those books, and in
18  any new printings new photographs will be substituted in for
19  those photographs.
20         THE COURT: If you agree that your use of that
21  photograph is unauthorized, what is it that you say doesn't
22  make you, forgetting about injunctive relief for a minute,
23  liable to plaintiff in damages?
24         MS. AGGARWAL: Your Honor, there are two elements that
25  a plaintiff needs to prove in order to establish copyright

1  infringement.  The first is ownership of a valid copyright.
2  Wiley has not conceded that Mr. Psihoyos has or owns valid
3  copyrights in any of these photographs.
4          THE COURT:  Who do you think owns them?
5          MS. AGGARWAL:  We don't know that, your Honor.
6          THE COURT:  Have you any reason to believe there would
7  be anyone else other than the plaintiff?
8          MS. AGGARWAL:  Yes, your Honor.  Plaintiff has not
9  identified copyright registrations to us for any of the
10 photographs for which he seeks injunctive relief.  During his
11 deposition Mr. Psihoyos testified that a number of those
12 photographs were taken on assignment for National Geographic
13 and that National Geographic paid all of his expenses.
14         THE COURT:  So you are saying works for hire?
15         MS. AGGARWAL:  Potentially, yes.  We have a subpoena
16 pending to National Geographic for discovery in connection with
17 that issue.
18         THE COURT:  Anything else on that?  Any other defense
19 you have other than works for hire?
20         MS. AGGARWAL:  Your Honor, the defenses are, number
21 one, that plaintiff does not own a valid copyright.  That is
22 the main defense, just in terms of liability for copyright
23 infringement.
24         THE COURT:  I really didn't phrase the last question
25 right.  Other than the works for hire and the fact that you

1  think his registration is not proper in terms of these
2  particular photographs, is there any other reason that you have
3  for thinking that someone else owns the copyright?
4          MS. AGGARWAL:  No, your Honor.
5          THE COURT:  Let me go back to plaintiff's counsel.
6          MR. NELSON:  Your Honor, it is a very interesting
7  argument, I think one that has been squarely addressed by this
8  court.  Judge Kaplan presided over the case of Faulkner v.
9  National Geographic, in which Mr. Psihoyos was a named
10 plaintiff suing National Geographic for publishing The Complete
11 National Geographic, where ultimately the Second Circuit ruled
12 that the reuse of these images was covered by section 201(c) of
13 the Copyright Act because The Complete National Geographic was
14 a revision of the magazine.
15         That court held, in its ten years of presiding over
16 that case, that these are not works for hire, that these
17 photographs that appeared in National Geographic Magazine were
18 taken under a freelance agreement by Mr. Psihoyos and they are
19 his, and that's the presumption under the 1976 Copyright Act,
20 that the creator owns the copyright in the absence of an
21 express transfer.
22         THE COURT:  Let me go back to defense counsel.  What
23 about that?
24         MS. AGGARWAL:  Your Honor, Mr. Nelson is referencing
25 these freelance agreements.  I have requested copies of these

1  freelance agreements in discovery.  I have not received them.
2  I have not received any evidence that confirms that Mr.
3  Psihoyos is in fact the owner of these copyrights.
4         Discovery in this case closes tomorrow.  Mr. Psihoyos
5  has not produced copyright registrations for the photographs.
6  He is required to register the copyrights in order to assert
7  these claims.  He has not provided me with anything in
8  connection with National Geographic.
9         I don't know what the Court's ruling was in Faulkner
10 v. National Geographic.  I don't know what photographs were at
11 issue in that case and if they are the same as the photographs
12 at issue in this case, so I can't speak to that.
13        THE COURT:  Let me go back to plaintiff's counsel.  Is
14 that right, you haven't produced to your adversary anything
15 about this alleged agreement with National Geographic?
16        MR. NELSON:  Their opposition in this motion was the
17 first we have ever heard of this argument that National
18 Geographic somehow owns the copyright because Mr. Psihoyos --
19        THE COURT:  Did they propound a document request?
20        MR. NELSON:  We have answered their document requests.
21        THE COURT:  No, no.  They propounded a document
22 request that asked for stuff related to National Geographic?
23        MR. NELSON:  I don't believe they did, your Honor.
24 They may have since the deposition.  I don't know that for
25 certain.

1    THE COURT: Let me go back to defense counsel. What
2 document requests are you referring to?
3    MS. AGGARWAL: Your Honor, I propounded a document
4 request either the day of or the day after Mr. Psihoyos's
5 deposition requesting these agreements.
6    THE COURT: When was that?
7    MS. AGGARWAL: The deposition was on July 8th, so I
8 either served them on July 8th or 9th.
9    THE COURT: Let me go back to plaintiff's counsel.
10 What about that?
11    MR. NELSON: Mr. McCullough has been handling that,
12 your Honor. We will certainly produce anything that is in our
13 possession with respect to National Geographic. The case
14 Faulkner v. National Geographic pertained to The Complete
15 National Geographic, every photograph ever in National
16 Geographic Magazine.
17    THE COURT: It is unlikely that that is collateral
18 estoppel. In any event, unless you object on a valid ground,
19 you have to produce what is called for in that respect.
20    MR. NELSON: Absolutely, your Honor. We produced,
21 even though it is our position and has been that we are not
22 required to, copyright registration numbers in the initial
23 complaint. We have provided certain copyright registration
24 certificates. We have cooperated with the defendant in
25 providing them registration.

                As is probably clear to your Honor by now, there are
several agents involved and agencies, and we are in the process
of requesting information from Corbis.

                With respect to the end of discovery, we have asked
Ms. Aggarwal to agree to allow us to amend our complaint to
reflect proper copyright registration information.  She
maintains the position that we shouldn't be allowed to do that;
tick-tock, game's locked; if it's the wrong number in the
initial complaint, you're out of luck, and you would have to
bring another case for the other copyright registration.

                We will certainly be in touch with your Honor,
probably tomorrow, requesting a briefing schedule on a motion
to extend discovery or amend our complaint.

                THE COURT:  Let's discuss it right now.  Is this an
amended complaint solely for the purpose of changing the
copyright numbers?

                MR. NELSON:  Yes, your Honor, I believe so at this
point.

                THE COURT:  What is the objection to that?

                MS. AGGARWAL:  Your Honor, Wiley first disclosed its
use of these photographs in certain books to Mr. Psihoyos in
November.  Wiley made a more complete disclosure in December of
2010.  All of the books in which these photographs are included
are available in the marketplace on Amazon.com, easily
accessible.  Plaintiff easily could have secured them before he

1  filed his copyright infringement complaint to determine what
2  photographs were used and to identify the proper copyright
3  registration numbers for those photographs. He didn't do that.
4              THE COURT: I understand that. But how are you
5  prejudiced by this amendment?
6              MS. AGGARWAL: Because we would have to do discovery
7  all over again, your Honor. We would have to obtain discovery
8  on all the new copyright registration numbers.
9              THE COURT: What discovery did you take that would
10 bear on that?
11             MS. AGGARWAL: We took document discovery and the
12 deposition of Mr. Psihoyos, and we have now served the subpoena
13 on National Geographic with respect to those copyright
14 registration numbers that are identified in the complaint.
15             THE COURT: Let me hear from plaintiff's counsel.
16             MR. NELSON: Your Honor, defendant's 30(b)(6) witness
17 testified that they maintained these photographs, unbeknownst
18 to Mr. Psihoyos, in an archive in electronic form. Nothing
19 prevented the defendant from sending me, along with their
20 letter admitting these uses, a thumbnail of what photographs
21 they used.
22             We assumed that they identified the photographs that
23 they used. To the extent that those are not the identical
24 photographs from certain copyright registrations, there is no
25 prejudice to the defendant for us substituting the number from

the actual copyright registration that pertains to the photograph. In this case it's the same photo shoot. It's just another click of the camera a few seconds before or a few seconds after.

THE COURT: What I don't understand is if the present complaint identifies the wrong numbers, why should you get injunctive relief with respect to those wrong numbers? Maybe you're entitled to injunctive relief, assuming you're successful amending, as to the right numbers.

MR. NELSON: The relief is requested with respect to the publications that they admit contain --

THE COURT: Containing photos that do not bear the copyright numbers, registration numbers, that you are presenting suing on, yes?

MR. NELSON: Some do and some don't, your Honor. Ms. Aggarwal is just incorrect when she says we haven't provided them any registration numbers. There are really only two photos that matter for purposes of this motion, the two that are in books that they say they are still selling, the Collection of Gastroliths photo and the Narcoleptic Dog photo.

In the Collection of Gastroliths, it was part of the copyright registration program and it has been separately registered. We have identified for them that it was part of the Corbis registration program. We have provided them the application number, which is no different from a legal

1  perspective than the registration number, of the subsequent
2  registration.  So they have all of the information with respect
3  to that photograph.
4  　　　　The Narcoleptic Dog photo, as we said, is in the
5  Corbis registration program.  Her whole point is it wasn't in
6  National Geographic.  There is no claim to ownership by
7  National Geographic.  It's a matter that's been time-consuming
8  for us and difficult to obtain certain information from Corbis
9  about the Corbis registration program.
10 　　　　We, out of abundance of caution, put registration
11 numbers in the complaint which weren't required under the law.
12 For the Court to make a determination that because we provided
13 additional information to the defendant, that there being
14 discrepancies in some of that information would deny us
15 inductive relief where we would get injunctive relief if we had
16 said they used his Narcoleptic Dog photo and they admit to use
17 his Narcoleptic Dog photo in a book they didn't pay him for and
18 he didn't know they had the photographs and they continue to
19 sell the book to this date, I think it would be a perverse
20 ruling to rule that if the contention was they used his
21 Narcoleptic Dog photo which he has a registered copyright in,
22 that we would be entitled to injunctive relief, but since the
23 complaint says it's part of copyright registration number
24 VAU000275, we wouldn't be entitled to injunctive relief.
25 　　　　I think that highlights sort of the difficulties in

1  requiring copyright plaintiffs to prove registration prior to
2  bringing copyright infringement actions.
3          Again, there is no prejudice to the defendant if we
4  were to bring a separate action with a different registration
5  number or a separate action saying the photo of the Narcoleptic
6  Dog that is part of Corbis copyright registration program
7  instead of identifying the National Geographic copyright
8  registration.  Obviously, the defendant would have to defend
9  that, would stipulate to liability for that use, and would lose
10 on the merits.
11         THE COURT:  What is your reason for thinking that
12 monetary damages would not be adequate?
13         MR. NELSON:  The first, your Honor, is the difficulty
14 in calculating damages.  The plaintiff is entitled to a
15 disgorgement of defendant's profits attributable to the
16 infringement.  That involves the initial burden on the
17 plaintiff to show gross revenues attributable to the
18 infringement, and then the burden shifts to the defendant to
19 show deductible expenses.
20         In textbooks with hundreds of photographs, the
21 difficulty of ascertaining and putting on expert testimony and
22 receiving an award for the defendant's profits attributable to
23 these particular uses of these particular photographs is an
24 extremely difficult and time-consuming and expensive.  Courts
25 have held that the difficulty in calculating those sorts of

1    damages in and of itself can be an irreparable injury.

2            It is certainly defendant's contention that we are not
3    entitled to any additional damages for these uses and that
4    there is no distinction between the uses of these photos prior
5    to having any knowledge of them and after his explicit
6    objection to these uses.  That is the second issue.

7            He has the right, as the copyright owner, to exclusive
8    control to the use of his copyrighted material, and this
9    creates a forced license situation where Mr. Psihoyos, who
10   doesn't want this defendant to use his photographs, is forced
11   to do so and forced to do so in the face of a very difficult
12   actual damage calculation.  He is also deprived of his
13   constitutional right not to speak, not to have his photos out
14   there in certain places.

15           This is precisely the sort of case that we cite you
16   about a defendant who is sneering in the face of a plaintiff,
17   whose position is at odds with the plaintiff's, obviously, and
18   at odds with the recommendation of the magistrate on
19   settlement, and they want to continue to do something they
20   acknowledge is not legal.  Absent court intervention, they have
21   said as much today, that they will continue to do so.

22           THE COURT:  Let me hear from defense counsel.  Thank
23   you very much.

24           MS. AGGARWAL:  Your Honor, can I comment on Mr.
25   Nelson's earlier comments regarding the two photographs and the

1   copyright registrations?

2          THE COURT:  Yes.

3          MS. AGGARWAL:  He noted that the two most important

4   photographs are Collection of Gastroliths.  They have alleged

5   that that particular photograph is used in Wiley's book Cutnell

6   Physics, which I have a copy of here.  That photograph is not

7   in this book.  We have put in a declaration to that effect in

8   our opposition.

9          The other photographs, Narcoleptic Dogs, there have

10  been no allegations and no previous testimony that those

11  photographs are part of the Corbis registration program.  There

12  are other photographs at issue in this action that plaintiff

13  has alleged are part of Corbis registration program.  They have

14  provided with respect to one of those a copyright application

15  number but no copyright registration number.  With respect to

16  the second, they have not provided either.  During his

17  deposition Mr. Psihoyos actually testified that he does not

18  know if Corbis actually registered the photographs.

19         THE COURT:  Assuming they could overcome that hurdle,

20  what about the damages versus other relief?

21         MS. AGGARWAL:  Your Honor, these photographs were

22  originally licensed from Mr. Psihoyos for 2 to $300 each.

23  These are one to two to three photographs included in an entire

24  textbook.  The plaintiff and his various agents are quite

25  skilled at calculating the appropriate licensing fees for

1   different uses of their photographs in different numbers of
2   textbooks, in electronic versions of textbooks, in textbooks
3   that are distributed worldwide versus just in the United
4   States.  This is what they do every day when they license these
5   photographs to people.
6               The photographs at issue in this action are part of
7   the collection of stock photos that Mr. Psihoyos continues to
8   license through a couple of different stock photo agencies.  So
9   it is our position that it certainly is possible to calculate
10  appropriate license fees or the uses that Wiley has made.
11              With respect to calculating a percentage of profits,
12  that is certainly possible also.  We have made disclosures
13  regarding the financials for these books.
14              In and of itself, the difficulty making the
15  calculation of what percentage should be applied is not
16  something that constitutes irreparable injury.  Since the
17  decision in the Second Circuit in Salinger v. Colting, courts
18  have said that in copyright infringements, the types of damages
19  that a plaintiff needs to show in order to be entitled to a
20  preliminary injunction are damages like market confusion, loss
21  of good will, loss of reputation, those types of things.  There
22  is no evidence of any of that in this action.
23              THE COURT:  Anything else that plaintiff's counsel
24  wanted to say?
25              MR. NELSON:  No, your Honor.

1   THE COURT:  Anything further from defense counsel?
2   MS. AGGARWAL:  No, your Honor.
3   THE COURT:  I thank you both for those very helpful
4 argument.  I will take the matter under advisement and get you
5 a decision promptly.  Thank you very much.
6   (Adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25