**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

LOUIS PSIHOYOS,

     *Plaintiff*,

 v.

JOHN WILEY & SONS, INC.,

     *Defendant*.

Case No. 11-cv-1416 (JSR)

ECF Case

Electronically Filed

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
NELSON & McCULLOCH LLP
The Chrysler Building
405 Lexington Ave., 26th Floor
New York, New York 10174
T: (212) 907-6677

*Attorneys for Plaintiff*

August 31, 2011

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................iii

INTRODUCTION ..............................................................................................1

STATEMENT OF PROCEDURAL BACKGROUND ..............................................2

SUMMARY OF ARGUMENT .............................................................................6

I.      LEGAL STANDARD OF REVIEW ...........................................................7

II.     PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON
LIABILITY..............................................................................................7

     A.  Elements Of A Claim For Infringement Under The Copyright Act ..........................8

     B.  Plaintiff Is Entitled To Summary Judgment On Claims Related To His
"Narcoleptic Dog" and "Oviraptor" and "Dinosaur Tracks"
Photographs.......................................................................................8

          1.  "Dement Narcoleptic Dog"........................................................9

          2.  "8-Foot Long Nesting Dinosaur" (or "Oviraptor").............................13

          3.  "Fossilized Dinosaur Tracks" ...................................................14

     C.  Plaintiff Is Entitled To Summary Judgment On Claims Regarding His
"Triceratops" and "Dinamation Exhibit" and "Gastroliths"
Photographs.......................................................................................15

          1.  "Enormous Triceratops Skeleton" ..............................................15

          2.  "Dinamation Exhibit" .............................................................18

          3.  "A Collection of Gastroliths"....................................................19

          4.  "500 TVs" ..........................................................................20

     D.  Plaintiff's Registration Cures Any Alleged Defects In His Claims........................21

     E.  Defendant's Argument For Precluding Evidence Under Rule 37(c) Is
Baseless............................................................................................22

     F.  Defendant's Argument For Precluding Evidence Due to Prejudice Is
Baseless............................................................................................23

     G.  Alternatively, Defendant's Motion Must Be Denied Under Rule 56(d)...................24

III.    PLAINTIFF UNDOUBTEDLY IS PERMITTED TO ELECT STATUTRY
DAMAGES FOR IMAGES AT ISSUE IN THIS ACTION ...........................24

IV.    STATUTE OF LIMITATIONS ................................................................25

     A.  The "Discovery Rule" Applies To Claims Under The Copyright Act ....................25

     B.  Defendant's Position Would Have Disastrous and Perverse
Consequences.....................................................................................28

i

V.      DEFENDANT CANNOT SHOW THAT IT IS ENTITLED TO
        JUDGMENT AS A MATTER OF LAW ON WHETHER ITS CONDUCT
        IS "WILLFUL" .............................................................................................................29

# TABLE OF AUTHORITIES

FEDERAL AND STATE CASES                                                      PAGE(S)

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................7

*Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637 (S.D.N.Y. 2008) ...........................28

*Armstrong v. Virgin Records, Ltd.*, 91 F. Supp. 2d 628 (S.D.N.Y. 2000) ................26

*Auscape Int'l v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 235 (S.D.N.Y. 2004) ...............................................................................................................26

*Authors Guild v. Google, Inc.*, 770 F. Supp. 2d 666 (S.D.N.Y. 2011) ....................11

*Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883 (6th Cir. 2004) .......28

*Bryant v. Media Right Productions, Inc.*, 603 F.3d 135 (2d Cir. 2010) ..................29

*Charron v. Meaux*, 60 F.R.D. 619 (S.D.N.Y. 1973) ................................................21

*Chere Amie, Inc. v. Windstar Apparel, Corp.*, 191 F. Supp. 2d 343 (S.D.N.Y. 2001) ...............................................................................................................22

*E. Am. Trio Prods., Inc. v. Tang Elec. Corp.*, 97 F. Supp. 2d 395 (S.D.N.Y. 2000) ...............................................................................................................12

*Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172 (S.D.N.Y. 1983) ..........29

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ...............................8

*Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110 (2d Cir.1986) ............29

*Foman v. Davis*, 371 U.S. 178 (1962) ....................................................................16

*Frankely v. Stein and Day, Inc.*, 470 F. Supp. 209 (S.D.N.Y. 1979) .......................22

*Gilliam v. Am. Broadcasting Cos.*, 538 F.2d 14 (2d Cir. 1976) .................................8

*Hamil Am. Inc. v. GFI*, 193 F.3d 92 (2d Cir. 1999) ................................................11

*Home Design Servcs. v. B & B Custom Homes, LLC*, 509 F. Supp. 2d 968, 972 (D. Colo. 2007) ...............................................................................................27

*J. Racenstein & Co., Inc. v. Wallace*, 1997 WL 605107 (S.D.N.Y. Oct.1, 1997) ...............................................................................................................21

*Jacobsen v. Katzer*, 535 F.3d 1373 .........................................................................8

*Jamison Business Systems, Inc. v. Unique Software Support Corp.*, No. 02-cv-4887, 2005 WL 1262095 (E.D.N.Y. May 26, 2005) ........................................11

*Kalsi v. New York City Transit Auth.*, 62 F. Supp. 2d 745 (E.D.N.Y. 1998) ...........16

*Lewinson v. Henry Holt and Co., LLC*, 659 F. Supp. 2d 547 (S.D.N.Y. 2009) ...........10, 11

*Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d 444 (S.D.N.Y. 2005) ..................12

*Mathews v. Diaz*, 426 U.S. 67 (1976) .....................................................................17

*Mattel, Inc. v. Robarb's, Inc.*, 139 F. Supp. 2d 487 (S.D.N.Y. 2001) ....................11

*Merchant v. Levy*, 92 F.3d 51(2d Cir. 1996)............................................................26

*M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486 (11th Cir. 1990)........22

*Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*, 712 F. Supp. 2d 84 (S.D.N.Y. 2010)................................................................19

*N.A.S. Import Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250 (2d Cir. 1992)....................29

*Netzer v. Continuity Graphic Associates, Inc.*, 963 F. Supp. 1308, (S.D.N.Y. 1997)................................................................26

*One Treasure Ltd., Inc. v. Richardson*, 202 F. App'x 658 (5th Cir. 2006) ............................21

*Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357 (5th Cir. 2004)................................................................17

*Roberts v. Keith*, No. 04-cv-10079, 2006 WL 547252 (S.D.N.Y. Mar. 7, 2006)....................26

*Roger Miller Music, Inc. v. Sony/ ATV Publishing, LLC*, 477 F.3d 383 (6th Cir. 2007)................................................................26

*Rogers v. Koons*, 960 F.2d 301 (2d Cir. 1992) ................................................................12

*Roley v. New World Pictures*, 19 F.3d 479 (9th Cir. 1994) ................................................26

*Shipman v. R. K. O. Radio Pictures, Inc.*, 20 F. Supp. 249 (S.D.N.Y. 1937)...........11

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ...................8

*Stone v. Williams*, 970 F.2d 1043 (2d Cir. 1992)........................................26, 27, 28

*Tasini v. New York Times Co., Inc.*, 206 F.3d 161 (2d Cir. 2000)................................8

*Tomas v. Gillespie*, 385 F.Supp.2d 240 (S.D.N.Y. 2005)..........................................27

*TRW, Inc. v. Andrews*, 534 U.S. 19 (2001)............................................................26, 27

*Union Ins. Soc. of Canton, Ltd. v. William Gluckin & Co.*, 353 F.2d 946, (2d Cir. 1965)................................................................9

*United Nat'l Ins. Co. v. The Tunnel, Inc.*, 988 F.2d 351 (2d Cir. 1993)..................16

*Well–Made Toy Mfg. Corp. v. Goffa Intern. Corp.*, 210 F. Supp. 2d 147 (E.D.N.Y. 2002)................................................................11

*William A. Graham Co. v. Haughey*, 568 F.3d 425, 432 (3d Cir. 2009) ....................26

*Williams v. Smith*, 781 F.2d 319 (2d Cir. 1986) ......................................................7

*Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001)...............................11

## RULES AND OTHER MATERIALS

Fed. R. Civ. P. 37(c)(1)............................................................................3, 9, 22

Fed. R. Civ. P. 56(a) ..................................................................................7, 24

Fed. R. Civ. P. 56(d) ......................................................................................24

17 U.S.C. § 408(d) ......................................................................................................... 19

17 U.S.C. § 410(c) ......................................................................................................... 22

17 U.S.C. § 504(c) ........................................................................................................... 6

17 U.S.C. § 507(b) ...........................................................................................6, 7, 25-27

37 C.F.R. § 201.5(b)(2) ................................................................................................. 19

Plaintiff Louis Psihoyos ("Plaintiff" or "Psihoyos"), by and through undersigned counsel, hereby submits this Memorandum of Law in Opposition to Defendant John Wiley & Sons, Inc.'s ("Defendant" or "Wiley") Motion for Summary Judgment ("Motion").

## INTRODUCTION

Defendant's argument for summary judgment on liability is specious. Defendant's Motion conspicuously omits that Defendant *admits* to using six of Plaintiff's images without permission and exceeding its license to use another. The record on this point is not in dispute. In fact, Defendant has *stipulated* to the unauthorized copying element of Plaintiff's infringement claims. Consequently, Plaintiff needs only to demonstrate that his copyrights in the images infringed by Defendant have been registered to prevail on his infringement claims as a matter of law. Because Plaintiff can demonstrate registration for all misappropriated works, Defendant's Motion fails and Plaintiff is entitled to summary judgment on his infringement claims.

Defendant's alternative argument that Plaintiff is precluded from recovering statutory damages also is contradicted by the evidence. In fact, it cannot be disputed that multiple works infringed by Defendant were registered *over a decade* prior to Defendant's unauthorized uses.

Nor can Defendant possibly show that it is entitled to summary judgment on the issue of "willfulness" for purposes of enhanced damages. Defendant's attempt to downplay the scope and seriousness of its violations of Plaintiff's rights is galling. The evidence shows that Defendant made at least ***36 infringing uses of 7 different photographs spanning 6 years*** and continued to commit new infringements and to sell and profit from its infringing publications even *after* acknowledging that its use of Plaintiff's images was unauthorized. Not only has Defendant offered no defense or explanation for this egregious violation of Plaintiff's copyrights, but it has continued to hide and conceal its conduct at every turn. If anything, it is Plaintiff who is entitled to judgment as a matter of law on the question of willfulness.

1

## STATEMENT OF PROCEDURAL BACKGROUND

Plaintiff is a professional photographer who licenses his works directly and through various agencies, including his agent Science Faction. Defendant is a publishing company specializing in producing educational textbooks. Defendant used a number of Plaintiff's images in various publications, including images that it supposedly licensed from Science Faction.

### *Defendant's Pre-Litigation Disclosures and Pleadings*

On November 2, 2010, the Manager of Wiley's Photo Department contacted Plaintiff to disclose that Wiley had used (and was still using) his pair of photographs identified as "Dr. William Dement Holding A Narcoleptic Dog" in multiple publications associated with at least four different psychology titles without permission. (Nelson Decl. Ex. 1.) Wiley's disclosure was shockingly incomplete. On December 16, 2010, *in response to a demand for additional information*, Wiley disclosed numerous additional infringements involving several other photographs.[1] (*Id.* Ex. 2.) Wiley also admitted that it exceeded the restrictions of licenses to use other photographs. (*Id.*) All of these unauthorized uses were confirmed in discovery where Wiley admitted to using multiple images without any license whatsoever and using other photos in excess of any putative license. (Nelson Decl. Ex. 4, ¶¶ 1-31.) Wiley also stipulated to "unauthorized copying" and exceeding its licenses. (*Id.* Ex. 5.)

Prior to filing this action, Plaintiff's counsel identified for Defendant the registrations that

---

[1] Defendant's Motion acknowledges that Wiley's December 16 letter inadvertently misidentified certain textbooks and images. For instance, Wiley's letter stated that it used Plaintiff's images in "Visualizing *Geography*," but Defendant now concedes that it meant "Visualizing *Geology*." (Def. Mtn. at 2 n.1.) This error led directly to Plaintiff misidentifying this textbook in the Complaint. (*See* Dkt. No. 1 at ¶¶ 17-18.) Wiley also sent a separate letter to Plaintiff's counsel on December 16 admitting to violating the terms of licenses it obtained from Science Faction pertaining to Plaintiff's images. (Nelson Decl. Ex. 3.) For whatever reason, though, Wiley did not identify the images involved. Nor did Wiley disclose that it was using *different images* than those covered by its licenses. These ambiguities led directly to the inadvertent pleading errors which Defendant's Motion improperly attempts to exploit.

we reasonably believed covered the images used by Defendant.  (*Id.* Ex. 6.)  Although Defendant obviously had access to its own publications, Defendant did not raise any concerns that these registrations did not cover the images used in its textbooks, and certainly did not disclose that it used *different versions* of the images covered by its putative licenses from Science Faction.  Nor could Plaintiff reasonably have inquired into the issue until Defendant finally produced its textbooks on June 6, almost four months later and with only 10 weeks remaining in discovery.

Defendant's initial Answer failed to allege either that the images it used in its publications differed from those identified in the Complaint that supposedly had been licensed from Science Faction or that the registrations identified in the Complaint did not cover the images being used.  (*See* Dkt. No.  7.)  Although Defendant's Fourth Affirmative Defense challenged Plaintiff's registrations, it raised an entirely different issue, alleging merely that: "Psihoyos' copyrights in the photographs are invalid and/or unenforceable."  (*Id.* at ¶ 58.)

Defendant was immediately advised that its Answer included no factual pleading and thus was insufficient to provide Plaintiff with fair notice of the basis for the alleged defenses and thus was "insufficient" under Rule 12(f).  (Nelson Decl. Ex. 7.)  Defendant capitulated and filed an Amended Answer on May 23 that withdrew all but three of its prior defenses. [2]  (Dkt. No. 11.)  Although the Amended Answer again alleged that Plaintiff's copyrights were "invalid and/or unenforceable," it challenged *only* the registrations covering Plaintiff's "Gastroliths" and "Dinamation" images and only that they were "invalid" because they were "not in compliance with 17 U.S.C. §§ 409 and 411."  (*Id.* at ¶ 57-59.)  Although Defendant amended its answer two months after being on notice of the allegedly applicable registrations, Defendant continued to conceal that it did not actually use the images that were licensed from Science Faction.

---

[2] While Defendant's failure to raise these issues in either of its pleadings may not preclude it from raising them on this Motion, it demonstrates that Defendant's argument to exclude evidence—under Rule 37(c) or on any other basis—is specious.

### *Discovery*

Plaintiff's First Request for Production requested documents "regarding the date and manner in which Wiley acquired any of Plaintiff's images." (Nelson Decl. Ex. 8, No. 35.) Defendant's Response, served on May 18, agreed to produce documents regarding its acquisition of Plaintiff's images identified in the Complaint. (*Id.* Ex. 9 at 16.) However, when Defendant finally produced documents, it did not produce documents from any agencies other than Science Faction pertaining to its acquisition of Plaintiff's images.[3] The lack of such documents was surprising given that Defendant's December 16 letter claimed that two of Plaintiff's images "were licensed [from] Matrix on 11/20/98" and another "came from NGS [National Geographic Society] and permission was secured through them." (*Id.* Ex. 2 at 2.) Anticipating this issue, Plaintiff's counsel had advised Defendant's counsel against improperly limiting its discovery review, expressly stating that it appeared that "Wiley did not acquire all of the images identified in the Complaint directly from Science Faction, but instead acquired those images from other agencies, including Getty Images and Corbis." (*Id.* Ex. 10.) Although Plaintiff's discovery request and subsequent inquiries were not limited to Getty and Corbis, Ms. Aggarwal responded by suggesting that only "Science Faction was involved in licensing certain of the photographs" and that Wiley had "not yet located any such documents" pertaining to the its acquisition of Plaintiff's photographs. (*Id.* Ex. 11.) This suspicious representation that Wiley acquired these images from Science Faction continued when Wiley did not produce documents to the contrary.

Nevertheless, on June 8, Plaintiff requested leave to move to compel discovery regarding the full scope of Defendant's acquisition and use of his images. Defendant opposed this request on the ground that it was a mere "fishing expedition." Based on this objection, Defendant did

---

[3] Defendant did not produce any documents until June 4 because it objected to producing documents without a protective order. (Nelson Decl. Ex. 9, at 4.) This objection was frivolous given that the Court entered a protective order a month earlier on April 25. (Dkt. No. 10.)

4

not produce *any documents* from *any agencies* other than Science Faction regarding its acquisition of Plaintiff's images.   Thus, if Defendant in fact did use "different photos" than those licensed from Science Faction, the record contains no evidence as to how it acquired these images or that it ever had permission to use the images it admits to publishing.

Ms. Aggarwal's Declaration misleadingly suggests that the issues presented on this Motion have been at issue "during the course of the proceedings in this case."  (Aggarwal Decl. ¶ 28.)  In point of fact, the first time Defendant raised any issue regarding alleged differences between the images it published and the images identified in the Complaint was during Plaintiff's deposition on July 7, 2011, when only five weeks remained in discovery.  Defendant's Motion presents no evidence that this issue arose prior to July 7.  Defendant's opposition on the injunction motion did raise this issue, but at that point only two weeks remained in discovery. (Dkt. No. 17.)  The only evidence Ms. Aggarwal offers to support her contention is a letter dated July 28, when only 12 days remained in discovery.  (Aggarwal Decl. Ex. 19.)  Ms. Aggarwal also fails to alert the Court that she served additional discovery on Plaintiff on July 7 and a document subpoena on National Geographic Society ("NGS") on July 26 directly related to the issues presented on this Motion.  (Nelson Decl. Ex. 12.)  Given that inadequate time remained in discovery to inquire into this new issue or allow third-party discovery to be completed, Plaintiff requested that Defendant agree to extend discovery and consent to Plaintiff's amending the Complaint to moot these issues.  (*Id.* Ex. 13.)  Defendant denied this reasonable request, insisting that discovery should close as scheduled.  (*Id.* Ex. 14.)

In light of Wiley's position, Plaintiff's counsel advised the Court on August 9—prior to the close of discovery—that we believed additional discovery was required and that, after this discovery, Plaintiff would amend his pleadings to address these issues.  (*See* Dkt. No. 32.) Defendant filed this Motion one week later.  Prior to filing, Defendant's counsel made no effort

to cooperate or confer on these easily-resolved issues, opposing Plaintiff's suggestion that an amending the Complaint would moot the need for this baseless motion.   Two days later, Plaintiff sought leave to amend to correct misidentified textbooks and images, all of which Defendant was on notice would moot aspects of its Motion.   On August 25, Plaintiff also sought to stay briefing on aspects of this Motion.   Defendant opposed both requests, and both were denied.

## SUMMARY OF ARGUMENT

Defendant's Motion raises four issues.   First, Defendant seeks summary judgment on liability, arguing that "Psihoyos has no evidence to support either the elements of ownership of a valid copyright registration or unauthorized use by the defendant."   Second, Defendant alternatively requests judgment as a matter of law on Plaintiff's reservation of his right to elect statutory damages under 17 U.S.C. § 504(c).   Third, Defendant contends that claims regarding infringements prior to March 1, 2008 are time barred under 17 U.S.C. § 507(b).   Finally, Defendant contends that, even if it is liable, no jury could find its misconduct "willful" for purposes of 17 U.S.C. § 504(c)(1).   Defendant's Motion is baseless and fails on all counts.

*Liability* – Defendant's request for summary judgment on liability issues is specious. Defendant does not dispute that Plaintiff created and owns the photographs used in the publications at issue in this action, *admits* to using Plaintiff's images without a license or beyond the scope of its putative licenses, and *stipulates* to "unauthorized copying."   The only remaining question, therefore, is whether Defendant's admitted infringements involve registered copyrights.

*Statutory Damages* – Because Plaintiff's infringement claim involves multiple copyrights that were registered years prior to Defendant's infringements, Plaintiff is entitled to seek statutory damages under Section 504(c), as well as damages under Section 505.

*Willfulness* – The scope of Defendant's infringements and its conduct in this dispute demand, as a matter of law, that its conduct be found "willful" under Section 504(c)(1).   Indeed,

Defendant admits to publishing new materials and continuing to print and distribute publications after being on notice that these materials included unauthorized copies of Plaintiff's images.

**Statute of Limitations** – Because the "discovery rule" applies, Section 507(b) does not preclude any claims related to infringements at issue in this action.  Defendant's argument to the contrary ignores controlling authority and is unavailing.

## I.      LEGAL STANDARD OF REVIEW.

Summary judgment may be granted only if the movant demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In making this determination, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court's role is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.  As the moving party, Defendant bears the burden of showing this threshold has been met.  *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986).  In light of this allocation of burdens, "if the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented."  *Id.* (quotation omitted).  Even if Defendant meets this threshold, its Motion still fails if Plaintiff "set[s] forth specific facts showing that there is a genuine issue for trial," *id.*, or shows that "a reasonable jury could return a verdict" in his favor, *Anderson*, 477 U.S. at 249.  "All ambiguities must be resolved and all inferences drawn in favor of the party against whom judgment is sought." *Williams*, 781 F.2d at 323 (citation omitted).

## II.     PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON LIABILITY.

The evidence concerning both elements of liability on Plaintiff's infringement claims is

not in dispute.  Defendant admits and stipulates to unauthorized uses and exceeding its putative licenses, and the evidence is unequivocal that Plaintiff's copyrights in the works that Defendant infringed are registered.  Plaintiff thus is entitled to summary judgment on liability.

### A.    Elements Of A Claim For Infringement Under The Copyright Act.

The Copyright Act provides copyright owners certain "exclusive rights," including: "(1) to reproduce the copyrighted work in copies . . . ; (2) to prepare derivative works based upon the copyrighted work; [and] (3) to distribute copies . . . of the copyrighted work to the public by sale [.]"  17 U.S.C. § 106.  "'Anyone who violates any of the exclusive rights of the copyright owner,' that is, anyone who trespasses into his exclusive domain by using or authorizing the use of the copyrighted work in one of the five ways set forth in the statute, 'is an infringer of the copyright.'"  *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 432 (1984) (quoting 17 U.S.C. § 501).  Thus, to prevail on his infringement claims, Plaintiff must establish (1) ownership of a valid copyright and (2) that Defendant violated any of his exclusive rights in his copyrighted works.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). Plaintiff also can show infringement if Defendant exceeded the scope of its license to use his copyrighted work.  *See Jacobsen v. Katzer*, 535 F.3d 1373, 1379-80 (Fed. Cir. 2008); *Gilliam v. Am. Broadcasting Cos.*, 538 F.2d 14, 20 (2d Cir. 1976).  Where the validity or applicability of the license is in dispute, as it is here, "the burden is on the alleged infringer to prove the existence of the license."  *Tasini v. New York Times Co., Inc.*, 206 F.3d 161, 171 (2d Cir. 2000).

### B.    Plaintiff Is Entitled To Summary Judgment On Claims Related To His "Narcoleptic Dog" and "Oviraptor" and "Dinosaur Tracks" Photographs.

Defendant does not challenge the validity of Plaintiff's registrations regarding his "Narcoleptic Dog" and "Oviraptor" and "Dinosaur Tracks" photographs.  Instead, Defendant contends that it is entitled to prevail on claims involving these images because it now alleges that

the images it used in its publications "are different from" and "are not the same photos" as the images that Plaintiff registered with the Copyright Office.  (Def. Mtn. at 3; Aggarwal Decl. ¶ 15.)  Significantly, though, the only "evidence" offered that these are "not the same photos" comes from a comparison of the images by Defendant's counsel.[4]  (Aggarwal Decl. Exs. 9, 11, & 16.)  Because Defendant offers no evidence showing that it acquired Plaintiff's images from any source other than Science Faction and produced none in discovery, it remains unclear why all of the images it published are not the same images licensed by Science Faction.  (*See* Sliwoski Aff. ¶¶ 12, 21, 27.)   Although one can *speculate* that Wiley obtained these photographs from Plaintiff's former agents, no *evidence* exists on this point.

Even accepting Defendant's unsupported position on its face, its argument is unavailing. Defendant's Motion does not explain why the minor differences identified by Ms. Aggarwal are legally significant, does not dispute that the images it used are "substantially similar" to Plaintiff's registered images, and provides no authority to support its premise that Plaintiff's registered copyrights are not infringed by Defendant's use of substantially similar works.  In any event, Plaintiff also can demonstrate separate registrations to cover the images used by Wiley.

### 1.   "Dement Narcoleptic Dog"

Defendant concedes that it used a pair of photographs depicting Dr. William Dement holding a narcoleptic dog in numerous publications without permission.  (Def. Mtn. at 3; Nelson Decl. Exs. 1-5.)  And there is no dispute that these photographs were created and owned by

---

[4] The analysis of alleged differences between the images used by Wiley and Plaintiff's registered work is provided by Ms. Aggarwal, who contends that she has personal knowledge of the facts in her declaration and is competent to testify as to the issues.  Because Ms. Aggarwal has never been identified as a witness in this case, any factual evidence she purports to offer on this point must be excluded.  *See* Fed. R. Civ. P. 37(c)(1).  Moreover, Ms. Aggarwal does not declare whether she created the exhibits purporting to identify the differences between photographs or whether she intends to serve as Wiley's witness at trial on these alleged differences.  Thus, these allegations in her declaration cannot be considered on this Motion.  *See Union Ins. Soc. of Canton, Ltd. v. William Gluckin & Co.*, 353 F.2d 946 (2d Cir. 1965).

Plaintiff.   (*See* Psihoyos Aff. ¶¶ 3-6.)   Thus, the only remaining liability issue is whether Plaintiff's copyrights in the images used by Defendant are registered with the Copyright Office.

The Complaint alleges that Plaintiff's "Narcoleptic Dog" photographs are registered under registration VA 888-303.   (Dkt. No. 1, ¶ 30.)   Defendant concedes that this registration covers an article entitled "What is this thing called sleep?" that appeared in the December 1987 edition of *National Geographic* that includes a pair of Plaintiff's photographs of Dr. Dement holding a narcoleptic dog.   (Aggarwal Decl. ¶¶ 14, 20; Exs. 8, 13; Psihoyos Dep. at 22:9—23:17.)   Defendant does not challenge the validity of this registration or that Plaintiff is the owner of the copyrights for the photographs covered by this registration.   Instead, Defendant contends that the "Narcoleptic Dog" images it published "are not the same photos" as the "Narcoleptic Dog" photographs registered under VA 888-303.   (Aggarwal Decl. ¶ 15.) Defendant does not carry its argument any further.   Defendant fails to show that the differences between the pair of images it used and those registered under VA 888-303 are legally significant. On the contrary, Defendant essentially acknowledges that the images it repeatedly published without a license are essentially identical to those registered under VA 888-303, merely presuming that Plaintiff's claim fails if there are any differences at all.

Defendant's analysis of the infringement inquiry is seriously flawed.   This Court has held that Section 411 precludes a copyright owner from asserting claims related to his unregistered revisions of registered works only if the revised work includes differences that "are more than minimal" and not "trivial."   *See Lewinson v. Henry Holt and Co., LLC*, 659 F. Supp. 2d 547, 561 (S.D.N.Y. 2009) (collecting cases).   Because Defendant identifies only minor differences between the works it misappropriated and those that it concedes are registered, it fails to carry its burden to show that the images it used are new or derivative works that required separate registration.   Furthermore, even if Defendant could show legally significant differences, Plaintiff

still can pursue infringement claims related to his copyrights in the registered original work. *See, e.g.*, *Lewinson*, 659 F. Supp. 2d at 562; *Mattel, Inc. v. Robarb's, Inc.*, 139 F. Supp. 2d 487, 496, 498 (S.D.N.Y. 2001) (holding defendant's copying of plaintiff's unregistered derivative work infringed plaintiff's copyright in the registered work); *Jamison Business Systems, Inc. v. Unique Software Support Corp.*, No. 02-cv-4887, 2005 WL 1262095, at *8 (E.D.N.Y. May 26, 2005).

On either approach, the only distinction in the Court's analysis in this context is that, "where the preexisting work is registered, but the derivative work is not, a suit for infringement may be maintained as to any protected element contained in the registered preexisting work, but not as to any element original to the unregistered derivative work." *Well–Made Toy Mfg. Corp. v. Goffa Intern. Corp.*, 210 F. Supp. 2d 147, 157 (E.D.N.Y. 2002). Therefore, even if Defendant is correct that these "are not the same photos," it still infringed Plaintiff's copyrights registered under VA 888-303 if "a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999). "The standard test for substantial similarity between two items is whether an 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same.'" *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001) (quoting *Hamil Am.*, 193 F.3d at 100)). "In making such a comparison, the works themselves supersede and control any contrary allegations of the parties." *Id.* (citing *Shipman v. R. K. O. Radio Pictures, Inc.*, 20 F. Supp. 249 (S.D.N.Y. 1937)).

Here, there can be no dispute that the works used by Defendant are substantially similar to the protectable elements of Plaintiff's registered works.[5]   Indeed, Ms. Aggarwal's effort to

---

[5] The contrary rule suggested by Defendant's Motion must be rejected.  It is settled that an author's copyrights include negative rights that allow an author to preclude others from creating substantially similar copies of his works. *See Authors Guild v. Google, Inc.*, 770 F. Supp. 2d 666, 682 (S.D.N.Y. 2011) ("A copyright owner's right to exclude others from using his property

identify the very minor differences between the photos merely confirms how much alike they are and that an ordinary observer would not notice the differences "unless he set out to detect the disparities."  The few minor differences do not negate the fact that Wiley infringed numerous elements of Plaintiff's registered works, including Plaintiff's choice of composition, lighting, shading, camera angle, background, perspective, selection of film and camera, and the posing of the main subjects, all of which are protectable.  *See Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d 444, 452 (S.D.N.Y. 2005) (collecting cases); *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992) ("Elements of originality in a photograph may include posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved.");  *E. Am. Trio Prods., Inc. v. Tang Elec. Corp.*, 97 F. Supp. 2d 395, 417 (S.D.N.Y. 2000) (same).  Because Plaintiff orchestrated the entire scene with Dr. Dement holding this narcoleptic dog awake and asleep, (*see* Psihoyos ¶¶ 4-5), his copyrights are broad enough to protect the "subject" of his work.  *Mannion*, 377 F. Supp. 2d at 454.  Any minor differences do not negate that it infringed the protectable elements of Plaintiff's works registered under VA 888-303, even if it used "different photos."

In any event, *out of an abundance of caution*, Plaintiff's agent Science Faction separately registered Plaintiff's copyrights in the "Narcoleptic Dog" images that Defendant admits using without permission.  (*See* Sliwoski Aff. ¶ 13, Ex. 3.)  Therefore, because there is no basis for dispute regarding the question of registration, Plaintiff is entitled to summary judgment on his liability claims relating to the 11 publications that include unauthorized copies of his pair of

---

is fundamental and beyond dispute.").  Defendant's Motion implies that this is the limit of an author's copyrights, and that his "exclusive rights" under Section 106 do not also include a positive dimension that extends protection to the author's own revisions or derivatives, even if they are *essentially identical* works that contain only minor revisions.  This would mean that any infringer could raise issue under Section 411 by showing merely that the author had made *any* revision to the registered work, no matter how minor, before the defendant used it.

"Narcoleptic Dog" photographs. Any issues regarding whether Defendant infringed Plaintiff's copyrights registered under VA 888-303 or those now registered under No. 1-64093732 are damages issues only and thus do not create a material dispute on liability.

### 2.   "8-Foot Long Nesting Dinosaur" (or "Oviraptor")

Defendant admits to using Plaintiff's photograph of an 8-foot long oviraptor fossil wrapped around a clutch of 20 fossilized eggs image without permission. (Nelson Decl. Exs. 2-5.) Specifically, Defendant concedes that it included this image in three of its *Visualizing Earth Science* publications and four of its *Visualizing Geology* publications. (Def. Mtn. at 12; Aggarwal Decl. ¶¶ 4, 9-11.) Although Defendant contends it obtained a license for the *Geology* publications, it conspicuously omits that its alleged licenses from Science Faction plainly identify the licensed image as "scf4399-095 – Oviraptor Fossil Still Protects a Clutch of Eggs." (*See* Sliwoski Aff. ¶¶ 18-19, Exs. 5 & 6.) This is significant because Science Faction registered Plaintiff's copyrights in his "Oviraptor" photograph in January 2009 under registration VA 1-659-154.[6] (Sliwoski Aff. ¶ 17.) There is no genuine dispute on this point because Image scf4399-095 is identified on the face of the registration certificate and a copy of the "Oviraptor" image is included in the deposit materials. (*See* Aggarwal Ex. 15 at 1, 4 (second row).)

Defendant does not challenge the validity of this registration or dispute that Plaintiff's "Oviraptor" image is covered by this registration. Instead, Defendant once again argues that the "8-Foot Long Nesting Dinosaur" image that it used without permission is a "different" picture than the "Oviraptor" photograph registered under VA 1-659-154. (Def. Mtn. at 5; Aggarwal Decl. ¶ 24). Again, though, Defendant fails to show that the alleged differences between the

---

[6] Ironically, Defendant's argument implies that the putative licenses that Defendant claims to have obtained from Science Faction do not cover its use of these images because those licenses are "strictly limited" to "the Licensed Material identified in the invoice." (Sliwoski Aff. Ex. 5 at 2, ¶ 2(a)-2(b).) Thus, Wiley cannot show a valid license to cover its uses of the image it published in the *Visualizing Geology* publications.

images are legally significant, does not dispute that the images are substantially similar, and fails to provide any authority to support its contention that this registration does not protect the image it used.  As explained above, these deficiencies are fatal to Defendant's Motion.

With respect to this image, though, the Court need not even consider the issue because the image that Wiley admits using already is covered by a separate registration that pre-dates any infringement.  Specifically, the image used by Wiley is the same image published in the July 1996 edition (Vol. 190, No. 1) of *National Geographic* in an article entitled "Dinosaurs of the Gobi: Unearthing a Fossil Trove."  (Psihoyos Aff. ¶¶ 10-12 ; Nelson Decl. Ex. 15.)  Both the Copyright Office's public catalog and the certificate of registration confirm that Plaintiff's copyrights in the images used in this article are registered under registration VA 888-295.  (*Id.* Ex. 16.)  There can be no dispute that the image used by Wiley has been registered since 1997.

### 3.  "Fossilized Dinosaur Tracks"

Defendant also admits to using Plaintiff's photograph of an archeologist measuring fossilized dinosaur tracks in a vertical rock face without permission.  (Nelson Decl. Ex. 3-5.)  Specifically, Defendant concedes that it included this image in five publications associated with its *Visualizing Earth Science* and *Visualizing Geology 2e* titles.  (Aggarwal ¶ 4, Exs. 5 & 6.)  There is no evidence of any license covering Defendant's use of this image in the *Earth Science* publications, and Defendant does not dispute that this use was unauthorized.  (*See* Sliwoski Aff. ¶ 28.)   Although Defendant did produce a putative license pertaining to the *Geology*, 2e publication, this invoice pertains to an image identified as "scf4399-070" and described as "Precariously Measuring Dinosaur Tracks Andes."  (*Id.* ¶ 26, Ex. 6)  This is significant because Plaintiff's copyrights in this image were registered under registration VA 1-761-465.  (Sliwoski Aff. ¶ 25, Ex. 8.)  Defendant ignores this evidence because it presumes that this evidence is not relevant merely because Wiley did not use the exact same image registered under VA 1-761-465.

(Aggarwal Decl. ¶ 18.)  Again, though, the differences identified by Ms. Aggarwal are extremely minor and cannot possibly defeat a finding of substantial similarity.

In any event, the version of this image that Wiley did publish *is* the same as the image published in the January 1993 edition of *National Geographic* (Vol. 183, No. 1) in an article entitled "Dinosaurs" by Rick Gore with photographs by Louis Psihoyos.  (Psihoyos Aff. ¶ 15-17; Nelson Decl. Ex. 17.)  The Copyright Office's public catalog and the certificate of registration confirm that Plaintiff's copyrights in the images used in this article, including the image used by Wiley, are registered under registration VA 888-296.  (Psihoyos Aff. ¶ 14-18; Nelson Decl. Ex. 18.)  Therefore, even accepting Defendant's contention it did not use the image it licensed from Science Faction, Plaintiff's copyrights in the image Wiley did use were registered since 1997.

### C.    Plaintiff Is Entitled To Summary Judgment On Claims Regarding His "Triceratops" and "Dinamation Exhibit" and "Gastroliths" Photographs.

#### 1.    "Enormous Triceratops Skeleton"

Defendant's Motion falsely contends that it did not infringe Plaintiff's copyrights in his "Enormous Triceratops Skeleton" because every use of this image was covered by a valid license.  According to Defendant's Motion, it published this photograph "in the following title: *Visualizing Earth History 1e*."  (Def. Mtn. at 6.)  This statement is extremely misleading in that it intentionally omits the indisputable fact that Defendant also published this image on page 958 of its *Physics 8e* publication, (Sliwoski Aff. ¶ 46; Nelson Decl. Ex. 19), a book which Defendant *admits* to having printed in excess of its license.  (Nelson Decl. Ex. 3 at 2, Ex. 4 at Nos. 29-31.)

Defendant's Motion ignores this admitted infringement in a baseless attempt to capitalize on the fact that the Complaint inadvertently alleged that Defendant used Plaintiff's "Gastroliths" photograph in this book rather than his "Triceratops" photo.  (*See* Def. Mtn. at 5.)  Defendant offers no basis in law or logic to support its (unstated) contention that the Court's review must

strictly construe the pleadings and that such scrivener's errors cannot be corrected at this stage.

Nor could it, as it is settled law that, "[o]n a motion for summary judgment the court must pierce

through the pleadings . . . to get at the substance of the claim."   *United Nat'l Ins. Co. v. The*

*Tunnel, Inc.*, 988 F.2d 351, 354 (2d Cir. 1993).   That is especially true here, where the Defendant

***concedes*** that such inadvertent mistakes can and should be corrected.[7]   (*See* Def. Mtn. at 2 n.1.)

Unlike other contexts in which plaintiffs have been denied leave to amend their pleadings

after the close of discovery, *see, e.g.*, *Kalsi v. New York City Transit Auth.*, 62 F. Supp. 2d 745,

761 (E.D.N.Y. 1998), Plaintiff is not seeking to introduce any new theories of liability and this

correction would not require additional discovery.   On the contrary, Defendant has been on

notice of this minor error for months and the parties already conducted discovery on the use of

Plaintiff's "Triceratops" photograph in the *Physics 8e* publications.   (*See* Nelson Decl. Ex. 4 at

Nos. 29-31.)   Despite the parties having conducted discovery on this issue, Defendant's counsel

refused to grant its consent, even *prior to the close of discovery*, to allow Plaintiff to amend the

pleadings to moot this issue.   (Nelson Decl. Ex. 14.)   Defendant cannot use its own litigation

tactics to create a claim for prejudice.   It would be highly improper to summarily dispose of

matters based on technical defects in the pleadings where Defendant was on notice of the issue

and the parties conducted discovery on the issue.   *See Foman v. Davis*, 371 U.S. 178, 181 (1962)

---

[7] As with the error that Defendant concedes can be corrected, this issue also arose because of ambiguities in Defendant's pre-litigation disclosures.   In particular, Defendant's December 2010 letter admitted that it "exceeded" its license to use "1 photo" in *Physics, 8e*, but failed to identify the photograph.   (Nelson Decl. Ex. 3 at 2.)   Due to this ambiguity, Plaintiff's Complaint mistakenly alleged that Plaintiff's "A Collection of Gastroliths" image appeared in this publication.   (Compl. ¶¶ 25-27.)   During discovery, Defendant produced its license from Science Faction indicating that Science Faction authorized use of an image identified as "scf4399-001 Five Hundred Televisions in the Information Age."   (Sliwoski Aff. ¶¶ 43-45, Ex. 15.)   It turns out, though, that Defendant did not use *either* the "Gastroliths" image as alleged in the Complaint or the "500 TVs" covered by its license from Science Faction.   If Defendant had not opposed Plaintiff's request for consent to amend the pleadings, this issue would have been resolved without unnecessary motions practice.

("It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities.").

Because Defendant's request for summary judgment regarding Plaintiff's copyrights in his "Triceratops" photograph rests entirely on an inadvertent error in the pleadings—which arose due to ambiguities in Defendant's own pre-litigation disclosures—the Court should deny Defendant's Motion outright or, at the very least, stay consideration to allow supplemental pleading that will moot this issue. *See Mathews v. Diaz*, 426 U.S. 67, 73-76 (1976) (holding defects in pleadings may be cured even on appeal); *Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 366 (5th Cir. 2004) (emphasizing "that technicalities should not prevent litigants from having their cases heard on the merits"). Defendant's attempt to capitalize on confusion it played a role in causing is improper, and any suggestion that Defendant was not on notice of this issue is false. As the evidence shows, Defendant *admitted* in response to formal discovery that it used Plaintiff's "Triceratops" photograph in this publication and violated any alleged license it may have obtained from Science Faction. (Nelson Decl. Ex. 4 at Nos. 29-31.)

Once the Court sees past Defendant's attempt at misdirection and obfuscation, it is evident that Plaintiff is entitled to summary judgment on his infringement claim related to this photograph. Plaintiff alleged that this image is registered with the Copyright Office under registration TX0004083613 as part of Plaintiff's registration of his book *Hunting Dinosaurs*. (Compl. ¶ 33; Aggarwal Decl. Ex. 17 (PL000014).) And the evidence confirms that this image included in this book. (Psihoyos Aff. ¶¶ 22-24; Nelson Decl. Ex. 20.) The evidence also demonstrates that this image also was later registered as an independent photograph identified as "scf4399-104 – Enormous Triceratops Skeleton." (Sliwoski Aff. ¶ 31; Aggarwal Decl. Ex. 15.) Defendant admits to exceeding its license, and it cannot be disputed that Plaintiff's copyrights have been registered. Nothing more is required to demonstrate copyright infringement.

### 2.   "Dinamation Exhibit"

Defendant concedes that it used Plaintiff's photograph of a man cleaning the teeth of a Tyrannosaurus Rex model in the "Dinamation Exhibit" at the Cincinnati Museum of Natural History in at least seven distinct publications associated with its *Visualizing Earth Science 1e*, *Visualizing Geology 1e*, and *Visualizing Geology 2e* titles.  (Def. Mtn. at 4; Aggarwal Decl. ¶ 4.) Curiously, though, Defendant fails to mention that it *admits* that it did not have a license to use this photograph in its *Earth Science* publications.  (Nelson Decl. Ex. 4 at Nos. 23-28).  Nor does Defendant mention that its licenses pertaining to the *Geology* titles were prospective only and identified express start dates for each license.  (Sliwoski Aff. ¶¶ 38-39, Exs. 5 & 6.) This is significant because Defendant began copying and reproducing both *Geology* publications well before the start of its licenses.  (Nelson Decl. Ex. 21.)  Specifically, the evidence shows that Wiley released the completed *Geology 1e* files to the printer on December 22, 2006, but did not obtain a license until January 31, 2007.[8]  (*See* Nelson Decl. Ex. 21; Sliwoski Aff. ¶ 38, Ex. 5.) And Wiley admits that it published *Geology 2e* on February 5, 2009, but did not obtain a license until March 25, 2009.  (*See* Aggarwal Decl. ¶ 4; Sliwoski Aff. 39, Ex. 6.)

Because the evidence is not in dispute that Defendant used Plaintiff's "Dinamation Exhibit" image in the *Earth Science* publications without any license whatsoever and outside the express terms of its license pertaining to the *Geology* publications, the only remaining question is whether Plaintiff can demonstrate that this work is registered.  Plaintiff's Complaint alleged that his copyrights in this image were registered by Corbis, one of his licensing agents.

---

[8] Ms. Aggarwal points to no evidence to support the "publication dates" presented in her declaration.  Nor does Defendant's Motion justify why these dates are the proper basis for determining the date of unauthorized use.  For instance, the evidence shows that Wiley released the completed files for *Geology 1e* on December 22, 2006.  (Nelson Decl. Ex. 21.)  This is the date that Wiley distributed and began reproducing Plaintiff's image in this book and, therefore, is the relevant date for determining whether Wiley used an image prior to obtaining a license.

(Compl. ¶ 35.)  In discovery, Plaintiff produced his agreement with Corbis electing to participate in Corbis' Copyright Registration Program.  (Nelson Decl. Ex. 22.)  Under the terms of that agreement, Corbis agreed to register Plaintiff's unpublished images, including this image.  (*Id.*)  Plaintiff's counsel requested information from Corbis regarding the status of Plaintiff's registrations on March 28, 2011.  (*Id.* Ex. 23.)  Plaintiff's counsel followed up on the inquiry on July 8, 2011.  (*Id.* Ex. 24.)  When Corbis failed to respond to these inquiries, Plaintiff served a document subpoena on Corbis.  (*Id.* Ex. 25.)  This subpoena remains outstanding.

To preclude the need to wait for Corbis' response, Science Faction registered Plaintiff's copyrights in the "Dinamation Exhibit" image used by Wiley, and that registration has been submitted to the Copyright Office for processing.  (*See* Sliwoski 40, Ex. 12.)  This evidence demonstrates that the registration requirement of the Copyright Act has been satisfied.  *See* 17 U.S.C. § 410(d) (registration is effective as of "the day on which an application, deposit, and fee, which are later determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable for registration, have all been received in the Copyright Office").  Thus, the status of the Corbis registration is relevant *only* to whether statutory damages are available because Corbis may have registered Plaintiff's copyrights prior to Defendant's use.[9]

### 3.  "A Collection of Gastroliths"

Defendant's argument for summary judgment on Plaintiff's infringement claims related to Plaintiff's photograph of "A Collection of Gastroliths" also is predicated on intentionally misleading facts.  Plaintiff's Complaint alleged that Defendant used Plaintiff's "500 TVs"

---

[9] Although this Court has ruled that certain applications filed by Corbis were invalid, *see Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*, 712 F. Supp. 2d 84, 95 (S.D.N.Y. 2010), there is insufficient evidence to determine whether the applications pertaining to Plaintiff's images also are deficient.  Furthermore, this still does not preclude the availability of statutory damages because Plaintiff may file a supplemental registration that is effective *nunc pro tunc* to the date of the prior registration.  *See* 17 U.S.C. § 408(d); 37 C.F.R. § 201.5(b)(2).

photograph in *Visualizing Earth History* and his "Gastroliths" image in *Physics 8e*.   (Compl. ¶¶ 22, 25.)   Unfortunately, Plaintiff's Complaint inadvertently reversed these books.   As the evidence shows, Defendant did use Plaintiff's "Gastroliths" image in the *Visualizing Earth History* title (on page 398), not *Physics 8e*.   (Nelson Decl. Ex. 26.)   Defendant's repeated efforts to have this case resolved on trivialities and scrivener's errors is unavailing, especially where ambiguities and mistakes in Defendant's pre-litigation disclosures contributed to these inadvertent mistakes and Defendant concedes that similar errors can be corrected at this stage.

Again, once the Court looks past these trivialities, it is evident that Plaintiff is entitled to judgment on liability on claims pertaining to his "Gastroliths" image.   Defendant admits that it published this book by at least October 6, 2008.   (Aggarwal ¶ 4.)   The record, however, shows that Defendant did not obtain a license from Science Faction to use Plaintiff's "Gastroliths" image until November 3, 2008.   (Sliwoski Aff. ¶ 37, Ex. 10.)   Because the license issued by Science Faction was *prospective* only, Defendant's admission that it used Plaintiff's image prior to the start of its license is an admission of unlicensed use, which is copyright infringement.

Plaintiff's "Gastroliths" image is registered under VA 1-761-465.   (*Id.* ¶ 36, Ex. 8.) Therefore, because the evidence shows that all elements of infringement are satisfied, Plaintiff is entitled to summary judgment on his claims relating to infringement of his "Gastroliths" image.

### 4.   "500 TVs"

Defendant asserts that it is entitled to summary judgment on Plaintiff's claims regarding his "500 Televisions in the Information Age" image because Wiley did not publish this image in its *Visualizing Earth History 1e* publications.   (Def. Mtn. at 6.)   This request is unnecessary given that Plaintiff's counsel already advised that we intended to amend the pleadings to remove the inadvertent allegations pertaining to Plaintiff's "500 TVs" image.   Again, allegations regarding this image were based on ambiguities in Defendant's pre-litigation disclosures and the

fact that Defendant's license pertaining to *Physics 8e*—a title that Defendant admits it printed in excess of its license—identified the image licensed as Plaintiff's "500 TVs" image.  (*See* Sliwoski Aff. ¶¶ 43-44.)  If Defendant had not opposed Plaintiff's request for consent to amend the pleadings, this issue would have been resolved without unnecessary motions practice.

### D.     Plaintiff's Registration Cures Any Alleged Defects In His Claims.

Contrary to Defendant's suggestion, there is no basis for granting judgment in Wiley's favor.  The evidence is unequivocal that Plaintiff's copyrights have been registered for *all* seven images used by Defendant at issue in this action.   In most cases, Plaintiff's copyrights were registered years prior to Defendant's use.  And in all but 2 instances the instances, there is no serious dispute that registration occurred prior to suit being filed.  In only 2 instances—with respect to Plaintiff's "Narcoleptic Dog" and "Dinamation" photographs—is there even a question as to whether registration was accomplished prior to suit.  As explained, though, the law allows Plaintiff to pursue infringements related to his 1997 registration of photographs that are nearly identical to the "Narcoleptic Dog" photos that Defendant admits it used, and it remains a disputed issue of fact whether the "Dinamation" photo was registered previously by Corbis.

Even if Corbis did not register the "Dinamation" image, any alleged defects in Plaintiff's copyright claims related to this pictures have been remedied.  *See One Treasure Ltd., Inc. v. Richardson*, 202 F. App'x 658, 661 (5th Cir. 2006) ("All defects resulting from lack of registration are cured when the registration is filed, *even if after suit is filed*.")  (emphasis added) (citing *Positive Black Talk*, 394 F.3d at 365); *J. Racenstein & Co., Inc. v. Wallace*, 1997 WL 605107, *1-2 (S.D.N.Y. Oct.1, 1997) ("Where an action is commenced without registration being effected, the defect can be cured by subsequent registration, and an appropriate amendment to the complaint may be made to provide the necessary basis for subject matter jurisdiction."); *Charron v. Meaux*, 60 F.R.D. 619, 624 (S.D.N.Y. 1973) ("if the statutory

conditions have in fact been satisfied, suit may be maintained, if the pleading defect is corrected

by an amended or supplemental complaint, which relates back to commencement of the suit");

*M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1489 n.6 (11th Cir. 1990) (rejecting

"as spurious" the argument plaintiff could not amend pleadings to correct alleged defects

regarding registration).   There is no basis for precluding the evidence of these registrations,

regardless of whether they were completed to remedy alleged defects identified in Defendant's

Motion.   *See Frankely v. Stein and Day, Inc.*, 470 F. Supp. 209, 212 n.2 (S.D.N.Y. 1979)

(allowing copyright claimant to comply with the registration requirements of Section 411 *after

the filing of a motion for summary judgment*).   Defendant's argument that it did not infringe

Plaintiff's copyrights because his images were not yet registered with the Copyright Office is

without merit, and evinces a fundamental misunderstanding of copyright law.   *See* 17 U.S.C. §

410(c); *Chere Amie, Inc. v. Windstar Apparel, Corp.*, 191 F. Supp. 2d 343, 350 (S.D.N.Y. 2001).

### E.   Defendant's Argument For Precluding Evidence Under Rule 37(c) Is Baseless.

In a footnote, Defendant mistakenly contends that any evidence produced after the close

of discovery is subject to preclusion under Rule 37(c).   First, Rule 37(c)(1), by its express terms,

pertains *only* to information or witnesses that parties were obliged to disclose under Rule 26(a)

or Rule 26(e), it does not apply to information sought during discovery under Rule 34.   Because

Plaintiff's Rule 26(a) disclosures expressly identified Plaintiff and Science Faction employees as

witnesses who possessed discoverable information, (Nelson Decl. Ex. 29), there is no basis for

precluding the evidence they present here.   Defendant had every opportunity to propound third-

party discovery on Science Faction or to seek depositions of its employees.

Second, Defendant's preclusion argument ignores that Defendant served significant

discovery that was not even due until August 9, the penultimate day of discovery, including its

Second Request for Production of Documents and a subpoena on NGS.   Defendant thus cannot

now claim that August 10 is an absolute deadline and any documents produced thereafter must be precluded.  Indeed, Defendant's discovery requests state that they are "continuing" in nature. (Nelson Decl. Ex. 27 at 4.) Furthermore, the evidence produced after discovery involved publicly available documents such as copyright registrations certificates and articles in prominent magazines.  These are not documents that Plaintiff had in his possession but refused to produce.

**F.    Defendant's Argument For Precluding Evidence Due to Prejudice Is Baseless.**

Defendant's claim that all additional evidence must be excluded due to prejudice is spurious.  As demonstrated above, Defendant did not raise the issues underlying this Motion until very late in discovery.  Although Defendant did raise a defense in this action regarding the "validity" of Plaintiff's copyright registrations, it did not contest the applicability of any registrations, and did not allege that it used different photographs than those identified in the Complaint.   In fact, the Amended Answer *narrowed* the scope of its challenge to Plaintiff's copyrights to *only* the "Gastroliths" and "Dinamation Exhibit" images, alleging *only* that they were "invalid" because they were "not in compliance with 17 U.S.C. §§ 409 and 411."  (Dkt. No. 11 at ¶ 58-59.)  At the time the Amended Answer was filed, 11 weeks remained in discovery.

Defendant also cannot show any prejudice because it was on notice of Plaintiff's intent to amend his pleadings and fully understood that such amendments would moot the issues raised on this Motion.  Defendant's repeated refusal to grant its consent to allow Plaintiff to amend his pleadings negates its feigned claim to prejudice based on expending time and resources filing this Motion.  Defendant cannot now claim to be prejudiced by its own litigation tactics.[10]  Nor can Defendant claim prejudice by not being able to conduct additional discovery given that it

---

[10] Defendant cannot claim to be surprised by the fact that the "Fossilized Dinosaur Tracks" photograph it did use turned out to have been covered by one of Plaintiff's many registrations covering his work while he was at *National Geographic* since Wiley's entire "Visualizing" series is based on a partnership with National Geographic Society.  (Nelson Decl. Ex. 28.)

*opposed* extending the discovery and *opposed* Plaintiff's request to stay its Motion under Rule 56(d) to allow additional discovery.  If Defendant truly believes that additional discovery is necessary, then it can make that request to the Court and Plaintiff will not oppose.

### G.   Alternatively, Defendant's Motion Must Be Denied Under Rule 56(d).

If the Court determines that Plaintiff is not entitled to summary judgment, Defendant's Motion must be denied under Rule 56(d).  Summary disposition of registration questions against Plaintiff would be improper where Defendant has failed to provide discovery on a topic directly relevant to its Motion and relevant third-party discovery *served by Defendant* remains outstanding.  (Nelson Decl. Ex. 12.)  As shown above, the issues presented on this Motion arose very late in discovery, through no fault of Plaintiff, and yet Defendant opposed a reasonable extension to allow necessary discovery to be completed.  Rule 56(d) is designed to prevent precisely these sorts of circumstances from working an injustice on the non-movant.

The fundamental purpose of Rule 56(d) is to allow a fair adjudication of topics after reasonable discovery.  Although discovery in this case technically lasted four months, the questions raised on this Motion did not arise until only a few weeks remained in discovery.

## III.   PLAINTIFF IS PERMITTED TO ELECT STATUTRY DAMAGES.

The evidence unquestionably shows that Plaintiff is permitted to seek, at his election, statutory damages for images infringed by Defendant.  Plaintiff contends, and Defendant largely admits, that Wiley infringed his exclusive rights under Section 106 in seven different photographs.  Even accepting Ms. Aggarwal's unsupported contentions regarding the applicable publication dates for the infringing publications, the evidence is unequivocal that most of Plaintiff's images have been registered for ***over a decade*** prior to Defendant's infringement, and disputed issues remain regarding the other images.

| Plaintiff's Photograph | Applicable Registrations | Dates of First Use (by primary title)[11] |
|---|---|---|
| "Enormous Triceratops Skeleton" | • Image used by Wiley registered **on August 11, 1995** under TX 4-083-613 (*see* Aggarwal Decl. Ex. 17);<br>• Same image subsequently registered by Science Faction on January 28, 2009 under VA 1-659-154 (*see* Sliwoski Aff. ¶ 31) | • *Earth History*: 10/6/08<br>• *Physics*: 12/17/08 |
| "Fossilized Dinosaur Tracks" | • Image used by Wiley registered on **December 10, 1997** under VA 888-296 (Psihoyos Aff. ¶ 18; Nelson Decl. Ex. 18);<br>• Similar image registered by Science Faction on January 28, 2009 under VA 1-761-465 (*see* Sliwoski Aff. ¶ 25) | • *Earth Science*: 12/12/08<br>• *Geology 2*: 2/05/09 |
| "8-Foot Long Nesting Dinosaur" | • Image used by Wiley registered on **December 10, 1997** under VA 888-295 (Psihoyos Aff. ¶ 12; Nelson Decl. Ex. 16)<br>• Similar image registered by Science Faction on January 28, 2009 under VA 1-659-154 (*see* Sliwoski Aff. ¶ 17) | • *Earth Science*: 12/12/08<br>• *Geology 1*: 1/16/07<br>• *Geology 2*: 2/05/09 |
| "Narcoleptic Dog" (2 photos) | • Original photos of Dr. Dement registered on **December 10, 1997** under VA 888-303 (Aggarwal Decl. Ex. 13)<br>• Similar images separately registered by Science Faction on August 29, 2011 under 1-64093732 (*see* Sliwoski Aff. ¶ 13) | • *Psych in Action 8*: 12/14/05<br>• *Psych in Action 9*: 11/04/08<br>• *Vis. Psych 1*: 1/09/07<br>• *Vis. Psych 2*: 10/05/09 |
| "Gastroliths" | • Registered by Science Faction on **February 2, 2011** under VA 1-761-465 (*see* Sliwoski Aff. ¶ 36) | • *Earth History*: 10/6/08 |
| "Dinamation Exhibit" | • Registered by Science Faction on **August 29, 2011** under 1-654093797(*see* Sliwoski Aff. ¶ 40);<br>• Still awaiting discovery from Corbis to determine whether prior registration exists | • *Earth Science*: 12/12/08<br>• *Geology 1*: 1/16/07<br>• *Geology 2*: 2/05/09 |

## IV.   STATUTE OF LIMITATIONS.

### A.   The "Discovery Rule" Applies To Claims Under The Copyright Act.

Section 507(b) of the Copyright Act requires that claims must be brought "within three years after the claim accrued."  17 U.S.C. § 507(b).  On this basis, Defendant seeks judgment as a matter of law regarding any misconduct that occurred prior to March 1, 2008.  Defendant's Motion ignores relevant authority and misconstrues the limited authority on which it relies.

According to Defendant, this Court has concluded that copyright claims accrue for statute

---

[11] These dates are taken from Aggarwal Decl. ¶ 4.  Plaintiff disputes the basis and accuracy of the dates identified in this chart and the assumption that these date are the appropriate basis for determine when an unlicensed use occurred.  Nevertheless, these dates are at least sufficient to discredit Defendant's contention that statutory damages are unavailable.

of limitations purposes on the date of *misconduct*, not the date of *discovery*, relying entirely

*Roberts v. Keith*, No. 04-cv-10079, 2006 WL 547252 (S.D.N.Y. Mar. 7, 2006); and *Auscape Int'l*

*v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 235 (S.D.N.Y. 2004).  These decisions are contrary

to the controlling rule announced by the Second Circuit in *Stone v. Williams*, 970 F.2d 1043 (2d

Cir. 1992)—cited by Defendant but not discussed—confirming that the discovery rule applies to

claims under the Copyright Act of 1976:

> A cause of action accrues when a plaintiff knows or has reason to know of the injury upon which the claim is premised.  The claim in this case is an entitlement to renewal copyrights under §§ 24 and 304(a) of the 1909 and 1976 Acts.  The injury which is the basis of the action is the deprivation of this statutory entitlement.  Thus, the statute of limitations did not begin to run until plaintiff had reason to know of the facts giving rise to her statutory entitlement[.]

970 F. 2d at 1048 (citations omitted).  The holding of *Stone* has been applied repeatedly by the

Second Circuit and this Court to claims under the Copyright Act, including claims for

infringement.  *See Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996); *Armstrong v. Virgin*

*Records, Ltd.*, 91 F.Supp.2d 628, 640 (S.D.N.Y. 2000) (collecting cases); *Netzer v. Continuity*

*Graphic Associates, Inc.*, 963 F. Supp. 1308, (S.D.N.Y. 1997).  And this Circuit's application of

the discovery rule stands alongside a vast body of cases reaching the same outcome.  *See, e.g.*,

*William A. Graham Co. v. Haughey*, 568 F.3d 425, 432 (3d Cir. 2009) (citing *Stone*); *Roger*

*Miller Music, Inc. v. Sony/ ATV Publishing, LLC*, 477 F.3d 383 (6th Cir. 2007); *Roley v. New*

*World Pictures*, 19 F.3d 479 (9th Cir. 1994).  Because the discovery rule applies, Plaintiff's

claims *accrued* in November and December of 2010, and thus they are not time barred.

Without even discussing this body of law, Defendant argues that this Court should reject

the discovery rule because the Supreme Court held in *TRW, Inc. v. Andrews*, 534 U.S. 19 (2001),

that the discovery accrual rule can never apply to federal statutes of limitations.  (Def. Mtn. at

17.)  Defendant mischaracterizes the holding of *TRW*.  The Court actually held in *TRW* that,

where Congress expressly states that the statute of liability runs from "the date on which the liability arises" and expressly enumerates a single exception to that rule, then it follows that "Congress implicitly excluded a general discovery rule by explicitly including a more limited one." 534 U.S. at 28.  The Supreme Court did not announce a broader rule, and certainly did not hold that the discovery rule cannot be applied to any federal statutes.  Nor would it be appropriate to conflate the statutory question before the Court in *TRW* with the one posed by here.  Unlike the Fair Claims Reporting Act, the Copyright Act does ***not*** expressly identify the date from which the statute of limitations runs and does ***not*** provide any basis for concluding that Congress intended to exclude the discovery rule.  *See Home Design Servcs. v. B & B Custom Homes, LLC*, 509 F. Supp. 2d 968, 972 (D. Colo. 2007).  Absent such factors, the holding of *TRW* is inapposite and cannot be applied to Section 507(b).  Indeed, the Supreme Court's decision in *TRW* actually *cites with approval* to *Stone*.  543 U.S. at 30.

Against the controlling decisions of the Second Circuit, Defendant offers only this Court's prior holdings in *Roberts* and *Auscape*.  Defendant, however, overlooks that neither decision is controlling, especially given that *Roberts* is not a published decision.  And Defendant conspicuously fails to mention the decisions by this Court declining to follow those holdings. *See, e.g.*, *Tomas v. Gillespie*, 385 F.Supp.2d 240, 243 (S.D.N.Y. 2005) ("Civil actions under the Copyright Act are subject to a three-year statute of limitations, 17 U.S.C. § 507(b), and accrue when a plaintiff knows or has reason to know of the injury upon which the claim is premised.").  Nor does Defendant consider that the decisions on which it relies have been rejected by other courts precisely because they are at odds with overwhelming authority applying the discovery rule.  *See, e.g.*, *Home Design Servcs.*, 509 F. Supp. 2d at 972 (finding these are the *only* decisions "to have adopted the 'injury rule' in relation to a copyright infringement claim").

Finally, even if Defendant were correct that Plaintiff's claims regarding infringements

27

prior to May 1, 2008 were time barred, Defendant is mistaken that this somehow affects the availability of statutory damages. As the Second Circuit explained: "Each act of infringement is a distinct harm giving rise to an independent claim for relief." *Stone*, 970 F.2d at 1049-50. Because any infringements occurring after May 2008 are distinct violations that give rise to an "independent claim for relief," the availability of statutory damages is not affected by the application of the statute of limitations. *See Bridgeport Music, Inc. v. Diamond Time, Ltd.,* 371 F.3d at 883 (6th Cir. 2004) ("Because each act of infringement is a distinct harm, the statute of limitations bars infringement claims that accrued more than three years before suit was filed but does not preclude infringement claims that accrued within the statutory period.").

### B.    Defendant's Position Would Have Disastrous and Perverse Consequences.

To bring an action for copyright infringement, a plaintiff must allege "which specific works are the subject of the copyright claim" and "by what acts during what time defendant infringed the copyright." *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 643-44 (S.D.N.Y. 2008). If it were not for the discovery rule, then copyright holders could not possibly vindicate their rights if copyright infringers are successful in concealing their misconduct long enough. As the facts in this case show, Defendant obtained digital copies of Plaintiff's images years ago and then, without notifying him, published those images in numerous publications without a license. Because information regarding Defendant's infringements remained at all times in Defendant's sole possession, Plaintiff could not possibly have known sufficient information to bring an action to protect his copyrights. If the statute of limitations was running this whole time, it would create disastrous consequences for copyright owners. Defendant's proposed reading of Section 507(b) effectively rewards infringers who are successful at concealing their misconduct.

## V.   DEFENDANT CANNOT SHOW THAT IT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON WHETHER ITS CONDUCT IS "WILLFUL."

The determination of damages for "willful" infringements requires the Courts to consider:  (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the infringements; and (6) the conduct and attitude of the parties. *Bryant v. Media Right Productions, Inc.*, 603 F.3d 135, 144 (2d Cir. 2010) (citing *N.A.S. Import Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250, 252-53 (2d Cir. 1992)).  The Second Circuit has held that, for the purpose of awarding enhanced statutory damages under Section 504(c)(2), an infringement is "willful" if the defendant acted "recklessly" or had "actual or constructive knowledge" that its actions constitute an infringement.  *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1115 (2d Cir.1986). Under this standard, willfulness "need not be proven directly but may be inferred from the defendant's conduct."  *N.A.S. Import*, 968 F.2d at 252 (citing *Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983)). Defendant cannot show that there is no dispute of material facts bearing on these factors.  And its attempt to leverage its supposedly "voluntary" disclosures into a defense against willfulness is unavailing.

Defendant's initial disclosure on November 2, 2010 was incomplete and failed to disclose infringements relating to multiple photographs in dozens of publications.  (*See* Nelson Decl. Ex. 1.)  But for Plaintiff's counsel's follow-up demands for information, the other infringements at issue here would never have been disclosed by Defendant.  (*Id.* Ex. 30 (Newman Dep. at 152-53).)  Defendant then falsely claimed that its additional disclosures on December 16 included "all uses we were able to identify of photographs by Mr. Psihoyos in Wiley publications."  (*Id.* Ex. 2.)  Wiley's representation is demonstrably false.  Not only did Wiley fail to disclose the

complete usage of the photographs identified on December 16, it also concealed information regarding dozens of other photographs owned by Plaintiff that it obtained from his other agents—many of which Plaintiff has learned are included in some of the publications at issue in this action!   In fact, Defendant also **conceals admitted infringements** from the Court by intentionally omitting them from Ms. Aggarwal's summary of publications.   (Aggarwal ¶ 4 (omitting uses of "Triceratops" photo in *Physics 8e*; omitting uses of "Gastroliths" in *Earth History*).)   Moreover, Defendant admits to *publishing*—not just printing additional copies—of the *Visualizing Psychology* DVD on November 8, 2010, (*see* Aggarwal Decl. ¶ 4), which was *after* Wiley contacted Mr. Psihoyos to admit and apologize for using his images without a license.   And even after this litigation commenced, Defendant continued to print, distribute, and sell textbooks that included unauthorized copies of Plaintiff's images and opposed efforts to stop distribution of these publications.   (*See* Dkt. Nos. 13, 22.).   This *demands* judgment for Plaintiff.

Defendant has cloaked its utter disregard for Plaintiff's copyrights with unconvincing excuses—including that the production department "forgot" to inform the permissions staff that it exceeded the print run for *Physics*, when in fact it was Wiley's policy and practice not to inform the permissions staff of print re-orders. (*See* Nelson Decl. Ex 30 at 45-47.)   The number of infringements, Defendant's repeated efforts to conceal them, and its opposition to making a complete disclosure all evince a pattern of *willful* and *reckless* disregard for Plaintiff's rights.

Whether Defendant's conduct is willful also must be judged against its position that Section 507(b) prohibits Plaintiff from obtaining any damages resulting from infringements occurring more than three years before filing of this action.   If Defendant believes that the limitations period is running, then it *must* bear responsibility for any failure—especially intentional refusals—to make a full and complete disclosure to Plaintiff of all uses of his images so that Plaintiff can take the necessary steps to protect his rights before they expire.

**CONLCUSION**

For the foregoing reasons, Defendant's Motion must be DENIED in its entirety, and summary judgment should be entered in Plaintiff's favor on (1) liability on all copyright infringement claims; (2) Plaintiff's right to seek statutory damages; and (3) that Defendant's conduct is "willful" for purposes of Section 504(c).

Respectfully submitted,

NELSON & McCULLOCH LLP

By: _____
Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
The Chrysler Building
405 Lexington Ave., 26th Floor
New York, New York 10174
T: (212) 907-6677
F: (646) 308-1178
dnelson@nelsonmcculloch.com
kmcculloch@nelsonmcculloch.com

*Attorneys for Plaintiff*