C4b9wilc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

LOUIS PSIHOYOS,

                Plaintiff,

            v.                          11 CV 1416 (JPO)

JOHN WILEY & SONS, INC.,

                Defendant.

------------------------------x
                                        New York, N.Y.
                                        April 11, 2012
                                        2:16 p.m.

Before:

                    HON. J. PAUL OETKEN

                                             District Judge

                        APPEARANCES

NELSON & McCULLOCH LLP
        Attorneys for Plaintiff
BY:   KEVIN PATRICK McCULLOCH
          DANIAL A. NELSON

LEVINE, SULLIVAN, KOCH & SCHULZ LLP
        Attorney for Defendant
BY:   CHRISTOPHER PERRY BEALL


ASHIMA AGGARWAL
        Attorney for Defendant

C4b9wilc

```
1                (In open court; case called)

2                THE DEPUTY CLERK:  Your Honor this is in the matter of

3      Louis Psihoyos v. John Wiley & Sons, Inc., docket number

4      11 CV 1416.

5                Starting with plaintiff's counsel, can I have all

6      counsel state their appearance for the record.

7                MR. McCULLOCH:  Good afternoon, Your Honor.

8                Kevin McCulloch from Nelson & McCulloch for plaintiff

9      Louis Psihoyos.

10               MR. NELSON:  And Dan Nelson from Nelson & McCulloch

11     also for plaintiff.

12               MR. BEALL:  Good afternoon.

13               Chris Beall of Levine, Sullivan & Koch on behalf of

14     John Wiley & Sons.

15               MS. AGGARWAL:  Your Honor, Ashima Aggarwal from John

16     Wiley & Sons, Inc.

17               THE COURT:  Good afternoon everyone.

18               This case was reassigned -- I think this is the first

19     I'm meeting the counsel in this case for this case.  And this

20     was reassigned to me from Judge Rakoff.

21               As I recall, Judge Rakoff issued his decision on the

22     motion for summary judgment with respect to copyright

23     registration and then issued a decision on reconsideration.  So

24     that issue is decided.

25               Is discovery complete?
```

C4b9wilc

1          MR. McCULLOCH:  Your Honor, if I may?

2          THE COURT:  Sure.

3          MR. McCULLOCH:  In this matter, we asked for --

4    actually there is just one preliminary matter that we wanted to

5    address and raise with your Honor before we get into some of

6    the substantive questions in this particular matter.

7          Because we have other cases involving Mr. Psihoyos'

8    claims against Pearson scheduled, counsel for Pearson is

9    present here in the courtroom.

10          In other cases, Pearson has asked that counsel for

11   other textbook publishers be removed from the courtroom due to

12   the highly confidential nature of some of the issues that may

13   be discussed.

14          We anticipate getting into some documents and some

15   questions that Wiley itself has asked to seal on the record,

16   from the docket in other cases in this Court, particularly in

17   the Southern District and in the Eastern District of

18   Pennsylvania.

19          We would just request that your Honor ask Mr. Church,

20   counsel for Pearson, not to be present during these

21   conversations just so that the confidential nature of the

22   documents that we may discuss isn't at issue and that there is

23   no concern about the disclosure issues and that we can talk

24   freely about the issues.

25          THE COURT:  Judges have done that in other cases?

C4b9wilc

1          MR. McCULLOCH:  Judge Holwell refused Mr. Cooney's

2     request in the summary judgment argument in the Wu v. Pearson

3     class action suit.

4          But I wanted to raise it with your Honor just so that

5     we weren't inhibited in any way from discussing matters that

6     may involve documents or issues that are of a confidential

7     nature for Wiley.

8          THE COURT:  Mr. Beall, do you want to address that?

9          MR. BEALL:  Your Honor, I understood that this status

10    conference was to discuss scheduling issues.  I can't imagine

11    why we would be discussing information from documents that have

12    been labeled confidential.  But in any event, Wiley does object

13    to closing the courtroom for this hearing.  We believe the

14    proceedings should be open to the public.

15         THE COURT:  I don't think I've ever closed a courtroom

16    in my seven months on the bench.

17         I think it's really just to discuss scheduling.  If it

18    comes to a point where we need to have a discussion about a

19    document that's subject to a confidentiality order, we'll

20    address that separately but short of that I would prefer to

21    keep it open.  So, if we get to a point you can raise the need

22    for a confidential discussion, any party can, if we get to that

23    point, okay.  But the point is noted and I'll be attuned to it

24    as we address whatever we need to address.

25         But in general terms, if you could just tell me the

C4b9wilc

1    status of discovery.

2               MR. McCULLOCH:   Sure, if I may, your Honor.

3               If your Honor recalls, this matter was transferred to

4    you right about the same time the summary judgment briefing had

5    occurred and summary judgment ruling had been handed down by

6    Judge Rakoff, but we moved for reconsideration, and Judge

7    Rakoff responded and addressed that motion.

8               In addition Judge Rakoff in his summary judgment order

9    allowed Wiley, but not plaintiff, to conduct additional

10   discovery.  An that discovery occurred.  And Wiley conducted

11   whatever discovery on third parties that they were permitted

12   under that order.

13              However, prior to the summary judgment briefing, just

14   as we did in Psihoyos v. Pearson One, we requested discovery on

15   topics beyond the images identified in the complaint from Judge

16   Rakoff.  Judge Rakoff denied that request.

17              We requested discovery also pertaining to images other

18   than Mr. Psihoyos' that were appeared in the same books.  Judge

19   Rakoff denied that request.  It was in a June 11 letter, 2011

20   that was submitted to Judge Rakoff.  It's laid out very

21   clearly.

22              In addition, right before summary judgment briefing

23   occurred on our side, we requested additional discovery from

24   Judge Rakoff on those same topics because they pertain to

25   Wiley's defenses and because they pertain to the willfulness

C4b9wilc

1    question.  Again, Judge Rakoff denied that request.

2          We raised this issue in our opposition brief in the

3    summary judgment briefing.  Summary judgment was denied because

4    there were disputed facts on those questions but there was no

5    ability for us to conduct postsummary judgment briefing

6    discovery, although Wiley was, for whatever reason, permitted

7    to conduct additional postsummary judgment briefing discovery.

8          So, technically discovery is closed.  Wiley's ability

9    to conduct postsummary judgment discovery, that deadline also

10   has closed.

11         However, in light of your Honor's recent ruling in the

12   Psihoyos v. Pearson case, I can't imagine why additional

13   discovery wouldn't be permitted in this case as well.  As your

14   Honor noted, Judge Rakoff's denial of certain discovery topics

15   in Psihoyos v. Pearson One created an incomplete record.  He

16   apparently didn't understand the nature of the defenses and how

17   central they would be in the case, and he didn't look at how

18   central those issues would be to the question of willfulness.

19         I will give you, just briefly, two examples of why we

20   think additional discovery is required.

21         Judge Rakoff didn't allow us to do, as I said,

22   discovery involving the same books at issue in the case that

23   were identified in the complaint, beyond just Mr. Psihoyos'

24   images, and he didn't allow any discovery of any other images

25   that Mr. Psihoyos owned that were used by Wiley.

7

C4b9wilc

1          After summary judgment briefing in this case, Wiley

2     began cleaning up the same books, sending requests for

3     permission to other vendors and other photographers whose

4     images appeared in those same exact books, same edition,

5     Visualizing Psychology, for example, edition one and edition

6     two.

7          In November of 2011 Wiley began sending those out.  We

8     know because we represent other photographers in those books

9     who received those requests.

10         THE COURT:  But this case is only about Mr. Psihoyos'

11    images.

12         MR. McCULLOCH:  Absolutely.  But the position Wiley

13    has taken in this case is that the failure to get a license

14    from Mr. Psihoyos was an administrative error, mere oversight.

15    This is in Ms. Newman's declaration in support of their summary

16    judgment briefing.  And it's the basis on which Judge Rakoff

17    denied summary judgment on the question of willfulness, that

18    there was complete prelitigation disclosures by Wiley, and that

19    it was mere administrative oversight.  Whether or not it was

20    administrative oversight, it's a relevant question how they

21    went about licensing other images in that exact same book.  The

22    administrative error argument begins to fall apart when you

23    realize hundreds of people have the exact same claims against

24    Wiley.

25         In addition, we've asked for discovery on prior uses

C4b9wilc

1    of Mr. Psihoyos' images and the course of conduct with his

2    agent.  Judge Rakoff again denied that discovery request.

3              Recently, just last week, Wiley lost summary judgment.

4    Summary judgment was granted against Wiley in an action in

5    Arizona.  Bean v. John Wiley.  Judge Martone's decision

6    involved books that Mr. Psihoyos also has pictures in.

7              The course of conduct defense falls apart if we can

8    prove that Wiley committed the exact same infringements over

9    and over again and didn't inform Mr. Psihoyos' vendors of the

10   type of retroactive licensing and overruns that were occurring.

11   We have been allowed no discovery beyond the images identified

12   in the complaint, no discovery on the course of conduct, no

13   discovery with Mr. Psihoyos' vendors, no discovery about any of

14   the images that appear in the exact same books.

15             We would request, in light of your Honor's ruling in

16   Psihoyos v. Pearson, that we be permitted to conduct that

17   discovery that Judge Rakoff denied.  He denied it in Psihoyos

18   v. Pearson.  And just have the exact same ruling in this case

19   on the exact same grounds.

20             THE COURT:  I'll hear from counsel for defendant.

21             MR. BEALL:  Thank you, your Honor.

22             This is coming out of the blue.  I was not aware, one,

23   of the decision that your Honor reached in the Pearson case and

24   I'd like to have an opportunity to review it.

25             This case was transferred to your Honor's court at the

C4b9wilc

1    moment, almost, when the final pretrial conference was

2    scheduled to happen.  Judge Rakoff had issued summary judgment.

3    And if I'm getting the sequence of events correctly, we were

4    within weeks of a final pretrial conference at which we would

5    set a trial date and we'd move forward into trial.

6            That final pretrial conference was vacated because of

7    the transfer of this case to your Honor's court.  And we have

8    been -- and then motion for reconsideration was filed.

9    Judge Rakoff took that motion back, issued the decision on the

10   motion for reconsideration.  And we have sort of have been

11   holding fire waiting to get the case back on schedule.

12           THE COURT:  After his decision on summary judgment

13   there was some discovery?

14           MR. BEALL:  No -- well, yes, your Honor.

15   Mr. McCulloch's recitation with respect to that is accurate.

16   Judge Rakoff had authorized Wiley to conduct discovery for a

17   short period of time.  And Wiley did.

18           The answer to your question, I agree with

19   Mr. McCulloch, is that discovery is closed.  Mr. McCulloch is

20   now asking for reopening of discovery on matters that

21   Judge Rakoff ruled upon, on the strength of your Honor's ruling

22   apparently in the Pearson case.

23           I would submit, your Honor, that this case was ready

24   for trial or ready to put on a trial calendar in December and

25   it should go to trial and we should not conduct more discovery.

C4b9wilc

1          The question of willfulness and the question of

2    Wiley's answer to the willfulness contention that it was an

3    administrative error has been alive in the case from the

4    beginning.

5          And yes, the plaintiff has pursued an effort to

6    discover what Wiley did with respect to other photographs,

7    other photographers' licenses, with respect to either these

8    books or with respect to Mr. Psihoyos in connection with books

9    that are not at issue in this case.

10         THE COURT:  One difference is that in this case there

11   was no summary judgment motion filed by plaintiff as to

12   infringement.

13         MR. BEALL:  That's correct.

14         THE COURT:  I feel I should give you a chance to look

15   at the opinion I issued in the Pearson case, which was a case

16   in which plaintiff moved for summary judgment on infringement

17   and I denied summary judgment on the issue of infringement as

18   well as willfulness on the ground that there were genuine

19   issues of fact going to the course of conduct and estoppel

20   defenses which had been raised.

21         In this case are there -- is there an implied license

22   defense?

23         MR. BEALL:  Is there an implied license defense?

24         There is -- there are licenses.  And there is a

25   dispute between the parties as to whether the execution and

C4b9wilc

1    payment on the license came in time.

2            There is a fact that one of the books was published

3    before the formal license document was exchanged between the

4    parties and payment was received.  And there is a contention

5    that's been made that that constitutes a publication of the

6    photographs without permission because the license was not

7    executed and performed until after the publication.

8            There is one instance in which a photograph was used

9    without any license.  That's the administrative breakdown

10   argument.

11           There are two others where we believe that we -- Wiley

12   is in full compliance with the terms of the license and that,

13   therefore, is no liability.

14           There are four photographs left in the case, five

15   books.  And Wiley believes that there is liability and,

16   therefore, only a damages issue with respect to I believe two

17   or three of the books and that there are things to be discussed

18   with respect to the rest.

19           If your Honor would indulge me, Judge Rakoff's

20   decision on the motion for summary judgment, docket number 47,

21   page 13 of the slip opinion is the paragraph where he addresses

22   the question of the plaintiffs' claim for willful infringement

23   and Wiley's summary judgment arguments for why the willfulness

24   issue should be taken out of the case.

25           And I'll just read your Honor, "Psihoyos, however,

C4b9wilc

1    argues that for purposes of awarding enhanced statutory

2    damages, an infringement is willful if the defendant acted

3    recklessly or had actual or constructive knowledge that its

4    actions constitute infringement.  Citation to Fitzgerald.

5    Willfulness need not be proven directly but may be inferred

6    from the defendants' conduct.  Citation to NAS Import

7    Corporation.  Here, plaintiff has pointed to an arguable

8    pattern of knowing and continued infringing publication on the

9    part of the defendant.  See record cites.  Accordingly,

10   plaintiff argues, there is a genuine dispute of material fact

11   on whether defendant act willfully.  The Court agrees and

12   therefore denies defendants' motion for summary judgment on the

13   issue of willfulness."

14           I point to this section of the opinion, your Honor,

15   only to show that the question of willfulness and the factual

16   basis for the defendants' claim of willful infringement is

17   already in the case.  Judge Rakoff made notes of it in denying

18   the defendants' motion for summary judgment on that issue.

19   Therefore, we don't need more discovery.

20           THE COURT:  What was the date of the close of fact --

21   of discovery?

22           MR. BEALL:  I believe it's July 30.

23           THE COURT:  It was last summer?

24           MR. BEALL:  It was -- yes.  It was before the motion

25   for summary judgment was filed.  And discovery then was

C4b9wilc

1    reopened for a short period of time after the summary judgment

2    ruling for Wiley alone.  And Wiley was only using that period

3    to pursue third party discovery with respect to National

4    Geographic.

5              THE COURT:  Is it a bench trial or jury trial in this

6    case, Mr. McCulloch?

7              MR. McCULLOCH:  Jury.  Your Honor, it will be a jury

8    trial.

9              THE COURT:  Okay.  How many days?

10             MR. McCULLOCH:  Just given the nature of the claims,

11   at this point, we would say three days, at most five.  But I

12   don't anticipate it being five days of trial.

13             THE COURT:  Mr. Beall?

14             MR. BEALL:  Three.  If that.

15             THE COURT:  As with other reassigned cases, I take the

16   rulings of the prior judge to be the law of the case.  It's not

17   as though the decision I issued in the Psihoyos v. Pearson case

18   was a decision in this case.  It was properly teed up in a

19   different way procedurally which is because plaintiffs filed a

20   motion for summary judgment in that case.  So I'm not inclined

21   to reopen discovery in that case, which, as you know, closed

22   many months ago.

23             So I think unless there's some other extraordinary

24   reason to reopen discovery I'm inclined to schedule the trial.

25             MR. McCULLOCH:  Your Honor, if I may just for the

C4b9wilc

 1    record?

 2              THE COURT:  Sure.

 3              MR. McCULLOCH:  It's not -- the phrasing of

 4    Judge Rakoff's opinion is a little misleading.  The defendant

 5    moved for summary judgment in this case on copyright issues,

 6    that there wasn't proper registration.

 7              THE COURT:  Right.

 8              MR. McCULLOCH:  We established copyright registration

 9    for certain images and Judge Rakoff ruled in our favor on

10    those.  But we also moved, at the end of our brief, separately

11    for summary judgment on the issue of copyright infringement and

12    the question of willfulness.  And Wiley's reply was essentially

13    in opposition to summary judgment.  So Judge Rakoff's ruling

14    that summary judgment not be granted on copyright infringement

15    or willfulness was really a rejection of our request for

16    summary judgment on those issues.  And the entire basis of the

17    ruling was only the position that this was a one-off

18    administrative error.  Ms. Newman testified that someone forgot

19    to check a box and Mr. Psihoyos' name got left off the list of

20    people they should get a license for.

21              We asked for discovery on that exact topic.  How Wiley

22    went about licensing the other pictures in those exact same

23    books.  Judge Rakoff denied that request.

24              The entire question of willfulness will be the

25    centerpiece of the trial.  Wiley has stipulated to unauthorized

C4b9wilc

1    use in this case.  Ms. Aggarwal has said unauthorized use

2    granted.  Judge Rakoff has ruled we have copyright

3    registration.

4            So the only question in this case is going to be

5    damages, and willfulness will be the centerpiece of that

6    because it's going to be a claim for statutory enhanced

7    damages.

8            We haven't been able to conduct discovery on that

9    question other than the limited deposition we've been able to

10   do of Wiley's personnel without any documents about past

11   conduct, course of dealing and other images in the exact same

12   book.

13           To me it seems that it is the centerpiece of the trial

14   and discovery has been denied on that.

15           If your Honor would grant discovery -- I can't imagine

16   that it's going to be very extensive and just related to the

17   course of conduct with Mr. Psihoyos' past images and his

18   vendors and other images in the same books that are at issue in

19   this case.  But if your Honor is not inclined, we can turn to

20   scheduling the trial.

21           THE COURT:  Which opinion by Judge Rakoff denied your

22   motion for summary judgment on these issues?  The same opinion?

23           MR. McCULLOCH:  Same opinion.

24           THE COURT:  I just read it.  He doesn't refer to a

25   motion filed by you.

C4b9wilc

```
 1              MR. McCULLOCH:  We didn't technically file a cross --

 2    Judge Rakoff's order set -- instead of a premotion conference,

 3    the original scheduling order in the case had a motion deadline

 4    for moving.  We asked Judge Rakoff prior to that to extend

 5    discovery.  Denied.  We asked him for leave to amend.  Denied.

 6              So, defendant filed on the deadline.  It was

 7    surprising to us, given all the outstanding issues, that they

 8    would have moved in that matter.  Our brief asked Judge Rakoff

 9    to grant summary judgment because we claim there was no

10    disputed issue of fact because --

11              THE COURT:  On willfulness.

12              MR. McCULLOCH:  On the issue of willfulness, that this

13    was a pattern of conduct.  And Judge Rakoff said there is

14    outstanding disputed questions of fact.  And yet nobody has

15    been permitted to conduct any additional discovery on that

16    question.

17              THE COURT:  Did he specifically deny discovery on the

18    course of conduct defense?

19              MR. McCULLOCH:  Absolutely.  I'm happy to hand your

20    Honor the June 2011 letter that I wrote.  And it is -- it's

21    identical to the type of discovery we requested in Psihoyos v.

22    Pearson One.  But we identified for Judge Rakoff all of the

23    other instances in which that sort of discovery had been

24    granted, including Wu v. Pearson One where Judge Francis

25    granted that type of discovery.  We also articulated for Judge
```

C4b9wilc

1   Rakoff as clearly as we possibly could that this wasn't an

2   effort to develop new claims, new pictures and new books, that

3   this was related to the defenses and the question of

4   willfulness.  Judge Rakoff denied it for the exact same reason

5   he did, that it was a fishing expedition for new claims.

6   That's not the case.

7            As your Honor noted, course of conduct, implied

8   license defenses, wilfulness questions require a look at

9   broader course of dealing between the parties, vendors, and how

10  Wiley went about licensing images in these exact same books.

11           THE COURT:  But I don't see how it prejudices you.  If

12  anything, the lack of evidence of a broad course of conduct is

13  going to prevent them from adequately making their defense that

14  it was a course of conduct and implied license, you know, a

15  mere administrative error that was anomalous.

16           I didn't allow discovery on course of conduct for

17  willfulness.  I allowed it on implied license.

18           MR. McCULLOCH:  In Psihoyos v. Pearson.

19           THE COURT:  Yes.

20           MR. McCULLOCH:  The question in this case is not going

21  to be about liability because they've stipulated unauthorized

22  use.

23           THE COURT:  Exactly.

24           MR. McCULLOCH:  But we bear the burden on the

25  heightened damages under willfulness.

C4b9wilc

1              So if Hilary Newman testifies:  It was an

2      administrative error.  We forgot to check the box.  We have the

3      burden of rebutting that by saying you didn't just forget to

4      check the box, you didn't license anybody in the book.  There

5      are hundreds of pictures that you didn't license and you waited

6      until summary judgment briefing was over in this case to begin

7      the cleanup effort.

8              Wiley has taken the position that any piece of paper

9      that wasn't produced in this case by the close of discovery

10     should be excluded.  That was their position on summary

11     judgment.

12             THE COURT:  Say that again.  Any piece of paper.

13             MR. McCULLOCH:  Any documents, any evidence that was

14     not produced prior to the official close of discovery is

15     excluded from consideration by the Court.  That creates a real

16     question about motions in limine and whether postsummary

17     judgment evidence that we've discovered outside of discovery

18     can be admitted.

19             Your Honor is going to have to deal with all of that.

20     It would be our recommendation, and our request that we have a

21     reopening of discovery on these particular questions to address

22     them, get before the Court the newly discovered evidence from

23     other cases where Wiley has admitted copyright infringement in

24     other case to Visuals Unlimited, to Grant Hileman in the

25     Eastern District of Pennsylvania, and that -- summary judgment

C4b9wilc

1    was granted by Judge Martone in the District of Arizona in the

2    Tom Bean case.

3          Mr. Psihoyos has images in all of those books.  And

4    it's relevant to us what admissions they made in those cases,

5    what the violations were.  But they are under seal now.

6          We know the name of the book.  We know Mr. Psihoyos

7    was in them.  We don't even know the nature of the violation.

8    We don't know what admissions were made.  Those documents are

9    under seal in those cases.  And I'm happy to go through for

10   your Honor and identify the exact particular books and where

11   they appear in the record in other cases.

12         But it's our opinion that instead of dealing with this

13   sort of extended motions in limine practice or leaving us in

14   the wind on rebutting a defense of administrative error, that

15   we just get before the Court all the documents that are

16   relevant in this case.  It's our position that we can just

17   remove for summary judgment on the question of willfulness and

18   you can clear it up after discovery.  I have no doubt that

19   that's going to be true when we get our hands on the proper

20   evidence.

21         THE COURT:  Assuming we go to trial, I'm not going to

22   want it to be a trial involving all these other actions of the

23   defendant that don't involve the images at issue in this case.

24         MR. McCULLOCH:  The question of willfulness is just

25   about reckless disregard or knowledge that the conduct was

C4b9wilc

infringing.  Courts have held that prior conduct in other cases
for images not in suit is directly relevant and is admissible.
In addition, courts have held that settlement agreements
involving images not in suit with different plaintiffs is
admissible as evidence.

        The question of whether or not Wiley knew using an
image in excess of a print run -- it doesn't involve the images
in this case.  It involves Wiley's knowledge.  And if Wiley is
admitting that in other cases, having summary judgment granted
against it in other case, settling other cases, that is
evidence that Wiley knows -- at least constructive evidence.
And the standard for constructive evidence in the Southern
District is whether a jury could draw an inference of the
constructive knowledge.

        We don't need to present actual knowledge.  We just
need to say to the jury their position is this was
administrative error and they didn't know overrunning a license
was a copyright violation.  But they have settled this case and
this case and this case.  Summary judgment was granted in this
case.  They cleaned up in this case.  Here's an internal memo
from Wiley on this.

        None of that evidence would involve Mr. Psihoyos'
images in particular.  All of it is held to be admissible in
copyright willfulness questions.  And all of it goes to the
question of whether or not you can draw an inference of

C4b9wilc

1    constructive knowledge.  And that's the centerpiece of the

2    trial.

3            THE COURT:  Some of that you can get from

4    cross-examining defendants' witnesses, I assume, if I allow it.

5            MR. McCULLOCH:  Granted.  We could get some of it.

6    But we couldn't rebut false testimony.

7            Ms. Newman has testified and submitted declarations in

8    this case that we believe to be just blatantly false; that this

9    was an administrative error and someone just forgot

10   Mr. Psihoyos, he somehow got left out of the mix.  That appears

11   to be just blatantly false.

12           In addition, Wiley's position is prelitigation

13   disclosures are a rebuttal to willfulness, we've tried to be as

14   open and fair and, you know, forthright as possible.  And that

15   is a relevant question.  Prelitigation cooperation is a

16   relevant admissible issue for the question of willfulness.  But

17   the -- whether or not the admissions and disclosures were

18   complete and forthright needs to be tested.  And we can't test

19   that without doing the discovery on other uses of Mr. Psihoyos'

20   images.  Ms. Aggarwal's position in the brief on summary

21   judgment was Wiley always respected Mr. Psihoyos' copyright.

22   We made a mistake and we tried to clean it up and we tried to

23   be honest and open with you.

24           But there are other images that we know of in other

25   books involving other cases that weren't on any of those

C4b9wilc

prelitigation disclosures, that they still haven't admitted

what they did with Mr. Psihoyos' work, that they exceeded the

licenses or not.  That is a relevant question that goes to the

heart of what's going to be the centerpiece of the trial.

          THE COURT:  Mr. Beall, do you want to respond to the

argument that because wilfulness generally is going to be an

issue, that I should allow the reopening of discovery into a

broader net of practices.

          MR. BEALL:  Yes, your Honor.  Thank you.

          First off, I can be corrected by the record but my

recollection is that there was not an affirmative request on

the part of the plaintiff in the summary judgment briefing for

entry of judgment as a matter of law on the question of

willfulness in summary judgment briefing.  But the record -- we

should all go back and read the briefing.  I just don't recall

that.  I don't recall that there was a request for entry of

judgment in the plaintiffs' favor entering judgment as a matter

of law that the infringement was willful.

          I think there was a hearty dispute about whether there

was evidence of knowledge of infringing conduct, knowledge of

the infringing nature of the conduct of Wiley.  And Wiley's

motion for summary judgment was that there was an absence of

evidence of intentional bad faith conduct in an effort to

violate Mr. Psihoyos' rights.  That motion was premised on the

evidence that Mr. McCulloch is referring to; in part, Hilary

C4b9wilc

1    Newman's testimony, as well as other testimony.  The disclosure

2    of Wiley's position with respect to the absence of malice or

3    ill will or an intent to violate Mr. Psihoyos' rights was made

4    in December of 2010 in this case.  And there has been plenty of

5    opportunity of the plaintiff to discover what was Wiley's

6    knowledge.

7         Mr. McCulloch points to postsummary judgment events or

8    documents.  He points to potential for admissions by Wiley in

9    connection with other cases involving, I guess, books that

10   Mr. Psihoyos has photos in that are not books in this case.  I

11   assume that they are not the photos that are in this case.  In

12   any event, they are things that are outside the pleadings of

13   this case.  And if Mr. Psihoyos believes that his rights have

14   been infringed with respect to those photos in those books he

15   can bring a new case.  We should go to trial on this case.

16        This case involves four photos and five books.

17   Discovery was closed.  Summary judgment was briefed, decided.

18   We are ready to go to trial.  And we should go to trial.

19        On the question of whether or not subsequent

20   information that had come into possession or created might be

21   evidence of the knowledge of Wiley with respect to conduct that

22   occurred long prior to the filing of the case, it is conduct --

23   I'm not even clear that the evidence that would be sought in

24   discovery is evidence of knowledge of Wiley at the time of the

25   infringement, which I believe is what is relevant to

C4b9wilc

1   willfulness.  The question of whether there are post

2   infringement, post-litigation admissions by Wiley with respect

3   to conduct in other cases, I'm not at all sure is relevant.

4          But be that as it may, Judge Rakoff has addressed this

5   precise argument.  And he has declined to authorize the

6   discovery that the plaintiffs are now asking your Honor to

7   authorize.  And we believe that we should go to trial.

8          THE COURT:  Well I've heard from the parties.

9          One of the things that happens when you get 250

10  reassigned cases is you get them at various stages of various

11  procedural postures.  And I got this -- this case was

12  reassigned to me following the close of discovery and following

13  the briefing of summary judgment motions that didn't tee up the

14  issue precisely in the same way as others.  And evidentiary

15  rulings had been decided by Judge Rakoff.  And I'm treating

16  those, as I do in other case, as the law of the case.  So I'm

17  not going to revisit the issue of discovery -- the issues of

18  discovery in so far as Judge Rakoff has decided them.

19         So I think I am going to go ahead and schedule it, as

20  he would have done if he kept the case, for trial, for a

21  pretrial conference and trial.

22         What I'd like to do is schedule a pretrial conference.

23  If you look at my individual practices, you'll see what's due

24  in the joint pretrial order.  And on the date of the joint

25  pretrial order also any motions in limine would be due.  And

C4b9wilc

1    then a response to any motions in limine would be due a week

2    from that date.  And then the pretrial conference will be a

3    week from that date, the final pretrial conference.

4             So working back from that, I'd ask the parties if we

5    could schedule the final pretrial conference in about 45 days

6    and then the trial a week after that.

7             MR. BEALL:  The trial a week after that?

8             THE COURT:  Or two weeks, either one.

9             MR. BEALL:  Your Honor on behalf of Wiley, I should

10   disclose that Wiley is set to go to trial in Arizona in the

11   Bean case that Mr. McCulloch was referring to on June 19.  And

12   there are pretrial deadlines of the same that we're referring

13   to now that will occupy the time before June 19.

14            I'm perfectly -- we are able to do a final pretrial

15   conference in May, understanding that Wiley's people aren't

16   going to be available for trial until after June 22, June 25.

17   If we could aim for a trial say after the 4th of July

18   holiday.  That would be July 9.

19            I believe for purposes of the final pretrial

20   conference I don't need to have Wiley's witnesses here so we

21   could do that without them.

22            THE COURT:  Mr. McCulloch.

23            MR. McCULLOCH:  We don't object to moving the trial

24   until after the July 4th holiday.  We have, in this court,

25   class action briefing due in another matter before Judge

C4b9wilc

1    Forrest.  That briefing is due May 25.

2              So for us having a pretrial conference when motions in

3    limine are due after May 25 would be very preferable.  So

4    having the pretrial conference motions in limine practice in

5    June with a trial date even later is acceptable to us,

6    depending on how your schedule works, your Honor.

7              (Pause)

8              THE COURT:  How about July 23?

9              MR. BEALL:  As the trial?

10             THE COURT:  For the trial date.  Does that work?

11             MR. BEALL:  That's fine for the defendant, your Honor.

12             MR. McCULLOCH:  Same.

13             THE COURT:  Okay.  Trial July 23.

14             For the pretrial conference Mr. Beall would you be

15   able to do it sometime in June?

16             MR. BEALL:  Yes, your Honor.  Other than the time

17   period from July 19 through -- or June 19 through June 25.  I'm

18   in Arizona for trial prep the week before the trial.  I would

19   ask if we could do the pretrial -- final pretrial in this case

20   the week of say June 26, 27, 28, 29.

21             THE COURT:  Would that work, Mr. McCulloch?

22             MR. McCULLOCH:  Yes.

23             THE COURT:  27th or 28th of June?

24             MR. BEALL:  Either of those dates.

25             MR. McCULLOCH:  Either works for us also, your Honor.

C4b9wilc

<pre>
 1                  THE COURT:  Let's do June 28 in the afternoon.
 2       June 28 at 4:00 for the final pretrial conference.
 3                  MR. BEALL:  That works for the defendant, your Honor.
 4                  MR. McCULLOCH:  That works for us, your Honor.
 5                  THE COURT:  Working back from that, let's have the
 6       joint pretrial order due June 15.  Motions in limine the same
 7       date.  And any oppositions to motions in limine due a week
 8       later, June 22.
 9                  Is that okay?
10                  MR. McCULLOCH:  Works for us, your Honor.
11                  MR. BEALL:  It will make our trial in Arizona
12       interesting but yes, your Honor.
13                  THE COURT:  You can do it in advance.
14                  MR. BEALL:  That's true.
15                  THE COURT:  I could make it due two weeks earlier if
16       you want.
17                  MR. BEALL:  That's fine, your Honor.  We're going to
18       end up having to double track those two cases so we'll make it
19       work.
20                  THE COURT:  Okay.
21                  So I'll look forward to the submissions on June 15.
22                  MR. BEALL:  Your Honor, I did not see in your
23       individual practices suggestion about jury instructions.
24                  Do you have -- have you developed an expectation
25       around jury instructions, about when the parties will submit
</pre>

C4b9wilc

1   them.

2          THE COURT:  I expect them with the joint pretrial

3   order.

4          MR. BEALL:  Okay.  What does your Honor -- I assume

5   stock instructions are not necessary, it's the substantive

6   instructions on the case.

7          THE COURT:  Yes, the substantive instructions.

8          And if you'd try -- I mean really in May you can try

9   to reach agreement.  Insofar as there's agreement on the

10  instructions, you can submit one set of agreed-upon substantive

11  instructions.  And then plaintiffs' separate proposed

12  instructions and then defendants' separate proposed

13  instructions that are not stipulated to.

14         MR. BEALL:  Understood.  Thank you, your Honor.

15         THE COURT:  Okay.

16         We'll try to do it in three days but we'll keep four

17  days in case.

18         MR. McCULLOCH:  Thank you, your Honor.

19         THE COURT:  Okay.  Thank you.

20         (Adjourned)

21

22

23

24

25