Christopher P. Beall (CB-4590)
LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
321 W. 44th Street, Suite 510
New York, NY 10036
(212) 850-1100

Ashima Aggarwal (AA-1444)
JOHN WILEY & SONS, INC.
111 River Street
Hoboken, NJ 07030
(201) 748-7862

*Attorneys for Defendant*
*John Wiley & Sons, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
LOUIS PSIHOYOS,

                          Plaintiff,                    Case No. 11 CV 1416 (JPO)

             -against-

JOHN WILEY & SONS, INC.,

                          Defendant.
------------------------------------------------------------------x


# <u>DEFENDANTS' TRIAL BRIEF</u>

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION .................................................................................................. 1

I.    WITH RESPECT TO WILEY'S USES OF PHOTOGRAPHS FOR WHICH MR.
      PSIHOYOS' AGENT TENDERED AN INVOICE AND THEREAFTER
      ACCEPTED WILEY'S PAYMENT, IN FULL, NO CLAIM CAN BE STATED
      FOR COPYRIGHT INFRINGEMENT ............................................................ 6

II.   STATUTORY DAMAGES MUST BEAR A REASONABLE RELATIONSHIP
      TO THE PLAINTIFF'S ACTUAL INJURY ................................................... 9

III.  THE MEASURE OF MR. PSIHOYOS' ACTUAL DAMAGES FOR WILEY'S
      COPYRIGHT INFRINGEMENT IS THE VALUE OF THE LICENSING FEES
      HE SHOULD HAVE RECEIVED FOR THE INFRINGING USES; PSIHOYOS
      CANNOT ESTABLISH AN ENTITLEMENT TO WILEY'S PROFITS
      ATTRIBUTABLE TO THE INFRINGEMENTS ............................................ 12

      A.    Plaintiff's Actual Damages .............................................................. 12

      B.    Wiley's Profits Attributable to the Infringements ............................ 13

IV.   THE JURY'S DETERMINATION OF WHETHER ANY INFRINGEMENT BY
      WILEY WAS "WILLFUL" MUST BE GUIDED BY THE UNINTENTIONAL
      NATURE OF WILEY'S UNAUTHORIZED USE ......................................... 16

CONCLUSION .................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Int'l, Inc. v. Graphic Mgmt. Assocs.*,
   44 F.3d 572 (7th Cir. 1995) .................................................................................9

*Bly v. Banbury Books, Inc.*,
   638 F. Supp. 983 (E.D. Pa. 1986) .......................................................................10

*Broad. Music, Inc. v. Melody Fair Enters., Inc.*,
   1990 WL 284743 (W.D.N.Y. July 31, 1990)........................................................10

*Broad. Music, Inc. v. R Bar of Manhattan, Inc.*,
   919 F. Supp. 656 (S.D.N.Y. 1996) .................................................................10, 11

*Capitol Records, Inc. v. Thomas-Rasset*,
   680 F. Supp. 2d 1045 (D. Minn. 2010).................................................................10

*Data Gen. Corp. v. Grumman Sys. Support Corp.*,
   36 F.3d 1147 (1st Cir. 1994) ...........................................................................14, 15

*Davis v. The Gap, Inc.*,
   246 F.3d 152 (2d Cir. 2001)........................................................................12, 14, 15

*Digital Filing Sys., L.L.C. v. Agarwal*,
   No. 03-70437, 2005 WL 1702954 (E.D. Mich. July 20, 2005) ............................18

*EMI April Music, Inc. v. White*,
   618 F. Supp. 2d 497 (E.D. Va. 2009) ...................................................................11

*EMI Entm't World v. Karen Records, Inc.*,
   603 F. Supp. 2d 759 (S.D.N.Y. 2009)...................................................................11

*Falcon Enters., Inc. v. Publishers Serv. Inc.*,
   438 F. App'x 579 (9th Cir. 2011) ...........................................................................9

*Fallaci v. New Gazette Literary Corp.*,
   568 F. Supp. 1172 (S.D.N.Y. 1983)......................................................................12

*Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*,
   807 F.2d 1110 (2d Cir. 1986)..........................................................................16, 17

*Fitzgerald v. CBS Broad., Inc.*,
   491 F. Supp. 2d 177 (D. Mass. 2007) ...................................................................18

ii

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,*
  772 F.2d 505 (9th Cir. 1985) ........................................................................15

*Golden Torch Music Corp. v. Pier III Cafe, Inc.,*
  684 F. Supp. 772 (D. Conn. 1988)................................................................10

*Island Software and Computer Serv. Inc. v. Microsoft Corp.,*
  413 F.3d 257 (2d Cir. 2005)..........................................................................17

*Jarvis v. K2 Inc.,*
  486 F.3d 526 (9th Cir. 2007) ........................................................................13

*Keane Dealer Servs., Inc. v. Harts,*
  968 F. Supp. 944 (S.D.N.Y. 1997) ................................................................9

*Knitwaves, Inc. v. Lollytogs Ltd.,*
  71 F.3d 996 (2d Cir. 1995)............................................................................17

*Lipton v. Nature Co.,*
  71 F.3d 464 (2d Cir.1995)........................................................................16, 17

*Martin v. City of Indianapolis,*
  192 F.3d 608 (7th Cir. 1999) ........................................................................18

*N.A.S. Imp. Corp. v. Chenson Enters., Inc.,*
  968 F.2d 250 (2d Cir. 1992)..........................................................................16

*Polar Bear Prods. v. Timex Corp.,*
  384 F.3d 700 (9th Cir. 2004) ........................................................................15

*Princeton Univ. Press v. Mich. Document Servs., Inc.,*
  99 F.3d 1381 (6th Cir. 1996) (*en banc*) ......................................................17

*Psihoyos v. Pearson Educ., Inc.,*
  No. 10 Civ. 5912 (JPO), --- F. Supp. 2d ---, 2012 WL 676352 (S.D.N.Y. Feb. 29,
  2012) ...............................................................................................................8

*Realsongs v. 3A North Park Avenue Rest Corp.,*
  749 F. Supp. 2d 81 (E.D.N.Y. 2010) ............................................................11

*Reed Elsevier, Inc. v. Muchnick,*
  130 S.Ct. 1237 (2010)....................................................................................14

*Rogers v. Koons,*
  960 F.2d 301 (2d Cir. 1992)..........................................................................12

*RSO Records, Inc. v. Peri,*
  596 F. Supp. 849 (S.D.N.Y. 1984) ...............................................................10

*Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*,
    Civ. A. No. 03-4962, 2005 WL 67077 (E.D. Pa. Jan. 11, 2005) ......................................16, 18

*Semerdjian v. McDougal Littell*,
    641 F. Supp. 2d 233 (S.D.N.Y. 2009) ..............................................................................12, 13

*Webloyalty.com, Inc. v. Consumer Innovations, LLC*,
    388 F. Supp. 2d 435 (D. Del. 2005)........................................................................................10

*Yurman Design, Inc. v. PAJ, Inc.*,
    262 F.3d 101 (2d Cir. 2001).....................................................................................................16

## STATUTES

17 U.S.C. § 504(b) .........................................................................................................12, 13, 15

17 U.S.C. § 504(c) ...................................................................................................................18

17 U.S.C. § 504(c)(1)..................................................................................................................9

17 U.S.C. § 504(c)(2)................................................................................................................17

## OTHER AUTHORITIES

4 NIMMER & NIMMER, *Nimmer on Copyright*, § 14.04[B][3] (1996 ed.) ....................................17

4 NIMMER & NIMMER, *Nimmer on Copyright*, § 14.04[E][1][a] (1996 ed.)................................10

4 NIMMER & NIMMER, *Nimmer on Copyright*, § 14.02[A][1] (1996 ed.)...............................12, 13

4 NIMMER & NIMMER, *Nimmer on Copyright*, § 1403 (1996 ed.) ................................................14

4 NIMMER & NIMMER, *Nimmer on Copyright*, § 1403 (1996 ed.) ................................................14

RESTATEMENT (SECOND) OF CONTRACTS § 233.............................................................................9

U.S. House Report No. 94-1476 .................................................................................................15

## INTRODUCTION

In this civil action, Plaintiff Louis Psihoyos, a long-established professional freelance photographer, brings claims for copyright infringement against Defendant John Wiley & Sons, Inc., a 205-year-old publisher of trade, academic, and other titles. Mr. Psihoyos, along with his current counsel, have filed more than ten copyright infringement litigations against publishers and other defendants in this Court.  Some of these cases involve dozens of photographs and dozens of textbooks.  This action concerns four photographs of fossils, one or two of which were used in five separate textbook titles published by Wiley.

This action was commenced after a photo editor at Wiley discovered that two other of Plaintiff's photographs had been used in a series of textbooks with no permission. These were photographs Wiley had previously licensed for use for licensing fees of approximately $250. Wiley immediately contacted Plaintiff to advise him of this and to request that proper licenses and invoices be issued for those uses. (PL000289)  Within hours, Wiley received an audit request from Plaintiff's counsel on behalf of Plaintiff and other photographers represented by counsel. (PL00035-037)  Wiley disclosed additional information concerning its use of Plaintiff's photographs to Plaintiff's counsel and this litigation followed.

The majority of Plaintiff's remaining claims for copyright infringement are based on a theory by plaintiff that Wiley's publication of three textbooks occurred before the date that is listed on the invoice that ultimately granted Wiley permission to use the photographs.  These claims are as follows:

| Textbook | Photograph title and image | Plaintiff's Theory of Infringement | Defendant's Explanation or Defense(s) |
|---|---|---|---|
| Murck, Skinner & Mackenzie, *Visualizing Geology*, 1st Edition (2007) | "8-foot long nesting dinosaur wrapped around at least 20 eggs" (Am. Compl. ¶16) | Late payment, after photo sent to printer | Permission granted by Science Faction; fully paid by Wiley. |
| Murck, Skinner & Mackenzie, *Visualizing Geology*, 2nd Edition (2009) | "8-foot long nesting dinosaur wrapped around at least 20 eggs" (Am. Compl. ¶¶17, 18) | Late payment, after photo sent to printer | Permission granted by Science Faction; fully paid by Wiley. |
|  | "Fossilized dinosaur tracks" (Am. Compl. ¶¶17, 18) | Late payment, after photo sent to printer | Permission granted by Science Faction; fully paid by Wiley. |

| Textbook | Photograph title and image | Plaintiff's Theory of Infringement | Defendant's Explanation or Defense(s) |
|---|---|---|---|
| Babcock, *Visualizing Earth History*, 1st Edition (2008) |  "A Collection of Gastroliths" (Am. Compl., ¶25) | Late payment, after photo sent to printer | Permission granted by Science Faction; fully paid by Wiley. |
| |  "Enormous Triceratops Skeleton" (Am. Compl., ¶¶ 21, 22) | Late payment, after photo sent to printer | Permission granted by Science Faction; fully paid by Wiley. |

Wiley requested permission to use these photographs prior to or within one day of publication. (WPSIHOYOS 00000408-409, 00000415, and 00000428-429).  In all cases, however, Plaintiff's licensing agent delayed the issuance of the invoice.  This type of delay was not unusual and consistent with the parties' course of conduct and the course of conduct in the industry for decades.  Further, licenses for these uses of photographs are routinely granted to publishers. The only circumstance where an agency might refuse to grant permission is if it no longer has the rights to license a photograph.  Remarkably, Plaintiff now seeks to take gain a windfall from his own agent's dilatory conduct and hold Wiley liable for copyright infringement.

Another of Plaintiff's claims is based on Wiley having exceeded the print run limitation in a license as follows:

| Textbook | Photograph title and image | Plaintiff's Theory of Infringement | Defendant's Explanation or Defense(s) |
|---|---|---|---|
| Cutnell & Johnson, *Physics*, 8th Edition (2008) |  "Enormous Triceratops Skeleton" (Am. Compl., ¶¶ 23, 24, 26, 27) | Late payment after photo sent to printer, and permission over-run | Permission granted by Science Faction; fully paid by Wiley. Unauthorized use admitted based on over-run of printing limit in permission invoice. Claim for willful infringement denied based on unintentional over-run. |

A second payment of $219 to Plaintiff's licensing agent would have covered the overprinting of this textbook by Wiley. (WPSIHOYOS 00000416-418).  Yet Plaintiff now seeks to recover $150,000 in statutory damages plus attorneys' fees from Wiley.

Plaintiff's final claim is based on Wiley's unauthorized use of one of two of his photographs as follows:

| Textbook | Photograph title and image | Plaintiff's Theory of Infringement | Defendant's Explanation or Defense(s) |
|---|---|---|---|
| Merali & Skinner, *Visualizing Earth Science*, 1st Edition (2008) |  "Fossilized dinosaur tracks" (Am. Compl. ¶¶19, 20) | No license | Permission granted by National Geographic Society; fully paid by Wiley. |
| |  "8-foot long nesting dinosaur wrapped around at least 20 eggs" (Am. Compl. ¶¶13, 14, 15, 19, 20) | No license | Unauthorized use admitted.<br><br>Claim for willful infringement denied based on unintentional oversight following Plaintiff's failure to respond to Wiley's permission request. |

One of the photographs, "Fossilized Dinosaur Tracks" was, in fact, properly licensed from the National Geographic Society, Wiley's partner in the publication of this textbook. Wiley has conceded that the second photograph, "8-foot long nesting dinosaur wrapped around at least 20 eggs" was published without a license. Plaintiff's licensing agent Science Faction would have charged Wiley a $175 license fee for use of this photograph in this textbook. (WPSIHOYOS 0000380) . (For ease of reference, a claim chart compiling all of these claims and Wiley's defenses in a single document is attached hereto as **Appendix A**.)

Wiley has conceded liability for infringement with respect to its overprinting of "Enormous Triceratops" in *Physics* 8e, and with respect to its unlicensed use of "8-foot long nesting dinosaur wrapped around at least 20 eggs" in *Visualizing Earth Science*.  The jury will be asked to determine the amount of damages to be awarded to Mr. Psihoyos as to those uses. Plaintiff's remaining claims are to be tried as to both liability and, if necessary, damages.

Among the key issues the Court and jury will be presented with at trial are: (1) Does the parties' course of conduct, in what the Plaintiff alleges to be instances of "late permissions," manifest consent by Mr. Psihoyos' agent for Wiley's use of the photos, thereby defeating a claim for infringement?, (2) What is the appropriate measure of the Plaintiff's actual damages for any photographs that were infringed?, (3) What is the appropriate measure of statutory damages (for the three photographs for which such damages may be elected)?, and (4) Did any of Wiley's infringements of Plaintiff's works—whether  as admitted by Wiley or as found by the jury— constitute "willful" infringement?

This Trial Brief sets forth the legal authorities that frame each of these issues.

## I.      WITH RESPECT TO WILEY'S USES OF PHOTOGRAPHS FOR WHICH MR. PSIHOYOS' AGENT TENDERED AN INVOICE AND THEREAFTER ACCEPTED WILEY'S PAYMENT, IN FULL, NO CLAIM CAN BE STATED FOR COPYRIGHT INFRINGEMENT

The evidence presented at trial will show that for three of the textbook titles, involving three of Mr. Psihoyos' photos,[1] Wiley's photo staff, consistent with the course of conduct they had established with Mr. Psihoyos' photo licensing agency Science Faction, sent e-mail requests, in advance of publication, to Science Faction asking that Science Faction submit an invoice for

---

[1] *See* Appendix A, with respect to *Visualizing Geology* 1st Edition, *Visualizing Geology* 2nd Edition, and *Visualizing Earth History* 1st Edition.

the photographs Wiley wished to use.  In these permission request e-mails, Wiley specified the particular photographs it had selected from Science Faction's library, the textbook title in which the photographs would appear, the figure number for where the photograph would appear in the specified book, the size of the photo use (*e.g.*, ¼ -page), and the estimated number of copies of the book that Wiley predicted it would publish.

The evidence will also show that in nearly every instance, Science Faction did not promptly, or even semi-promptly, issue the requested invoice in response to Wiley's permission request.  In most instances, Wiley had to pester Science Faction to issue the invoice that Wiley had timely requested.  For example, on August (13, 2008,  Wiley sent Science Faction a permission request for two photos: "Dinosaur gastroliths" (¼ page) and "Triceratops" (¼ page), to be used in *Visualizing Earth History* 1st Edition.  (WPSIHOYOS 0000415)  Wiley's request sought permission for 40,000 copies, with World distribution rights.  Nearly two months then went by without any invoice being sent by Science Faction.  The book was finalized and published on October 6, 2008.  One week later (October 13, 2008), Wiley had to send a reminder email to Science Faction regarding the prior (Aug. 13) permission request, and Wiley asked that an invoice be issued "a.s.a.p." (WPSIHOYOS 0000413)

Three weeks later (and ten full weeks after Wiley had sent the permission request in the first place, which was well prior to publication), on November 4, 2008, Science Faction sent the invoice Wiley had requested for the two photos to be used in *Visualizing Earth History*, along with a cover note thanking Wiley for its "extreme patience regarding this invoice," and stating, "[t]hank you  for your business . . . ."  This invoice granted permission for *Visualizing Earth History*, with a handwritten addendum indicating that it was issued pursuant to the "special

pricing for these titles per agreement."[2]  (WPSIHOYOS 0000411)  The next day, November 5, 2008, Wiley processed a payment request for Science Faction's invoice (two photos at $175 each).  (WPSIHOYOS 0000410)

The evidence at trial will show that this kind of course of conduct was a common and accepted occurrence between Wiley's photo staff and Science Faction.  Despite this course of conduct between the parties, Mr. Psihoyos claims that Wiley's use of these two photos in *Visualizing Earth History* 1st Edition, as well as Wiley use of Mr. Psihoyos' photos in the other books licensed by Science Faction, constituted copyright infringement because Science Faction's invoice indicated that a "start date" for use of the photographs but the textbook had already been published. This "start date" was unilaterally inserted into the invoice by Science Faction. It was not a term requested or agreed to by Wiley.  If a verdict is not directed on this subject, Wiley will ask the jury to find that in light of the course of conduct between Wiley and Mr. Psihoyos' agent Science Faction, the Plaintiff's theory of infringement is inappropriate.

As this Court has previously recognized, "if the course of conduct between two parties demonstrates . . . 'knowledge of, and acquiescence'" by the plaintiff to the practice of submitting invoices after publication and accepting payment thereon, "then it is reasonable not to impose copyright infringement liability when a defendant engages in this practice." *Psihoyos v. Pearson Educ., Inc.,* No. 10 Civ. 5912 (JPO), --- F. Supp. 2d ---, 2012 WL 676352 (S.D.N.Y. Feb. 29,

---

[2] The evidence at trial will show that on December 11, 2006, Science Faction and Wiley entered into a special pricing schedule for photographs to be used in Wiley products that was effective through December 2009.  Under that mutually agreed pricing schedule, Wiley could buy rights to any photo in Science Faction's library for use in its "Visualizing" series of books, which were being co-branded with the National Geographic Society, with worldwide distribution rights of up to 100,000 English-language copies, at a price of $175 per photo.  [WPSIHOYOS 0000380]

2012) (citing *Keane Dealer Servs., Inc. v. Harts*, 968 F. Supp. 944, 947 (S.D.N.Y. 1997));  *see*

*also Falcon  Enters., Inc. v. Publishers Serv. Inc.,* 438 F. App'x 579, 581 (9th Cir. 2011) (taking

into account the pattern of "frequent and informal interactions between the parties"));

RESTATEMENT (SECOND) OF CONTRACTS § 233 cmt. b ("course of dealing may become part

of an agreement either by explicit provision or by tacit recognition, or it may guide the court in

supplying an omitted term.  [I]t may determine the meaning of language or it may annex an

agreed but unstated term."); *cf. Am. Int'l, Inc. v. Graphic Mgmt. Assocs.*, 44 F.3d 572, 574 (7th

Cir. 1995) (it is appropriate for court to consider "evidence that although [a] contract appears to

be clear, anyone who understood the real-world context would know that it does not mean what

it seems to mean.");  Def's Proposed Jury Charge No. 2.[3]

## II.   STATUTORY DAMAGES MUST BEAR A REASONABLE RELATIONSHIP TO THE PLAINTIFF'S ACTUAL INJURY

With respect to three of the photographs at issue ("8-foot long nesting dinosaur wrapped

around at least 20 eggs," "Enormous Triceratops Skeleton," and "Fossilized Dinosaur Tracks"),

Plaintiff has copyright registrations which pre-date Wiley's use of the photographs.  Plaintiff

seems to have elected a recovery of statutory damages under 17 U.S.C. § 504(c)(1) and, on the

basis that he secured a copyright registration, seeks an award of $150,000 for each copyrighted

---

[3] In addition to the permission invoices from Science Faction discussed herein, and for which Wiley paid in full and Science Faction accepted payment, this case also involves a separate licensing agreement that Wiley had negotiated with National Geographic Society ("NGS").  (NGS-Psihoyos 00026-71).  As part of that relationship, Wiley and NGS co-published books under the "Visualizing" imprint.  The agreement provided for use of photographs from the National Geographic collection in books published under this imprint. This included the use of Mr. Psihoyos' photos ("Fossilized Dinosaur Tracks") in the *Visualizing Earth Science* 1st Edition textbook.  NGS' license agreement with Wiley did not impose any "start date" or other limitations on NGS' grant of permission to Wiley and there can be no theory of late permission for this license.

work found to have been infringed.  (*See* Pl's Proposed Jury Instr. No. 11, "Copyright Overview and Matters Already Decided" and Joint Proposed Pretrial Order, "Plaintiff's Statement of Damages and other Relief Claimed"). Although the jury is authorized to award statutory damages between $750 and $30,000 for each work infringed, the law is clear that assessments of statutory damages in a copyright case must bear a rational relationship to the actual value of the underlying work.  *See* 4 Nimmer & Nimmer, *Nimmer on Copyright*, § 14.04[E][1][a], at 14-96 ("[S]tatutory damages ... should be woven out of the same bolt of cloth as actual damages."); *Capitol Records, Inc. v. Thomas-Rasset*, 680 F. Supp. 2d 1045, 104p (D. Minn. 2010) ("[A]lthough Plaintiffs were not required to prove their actual damages, statutory damages must still bear *some* relation to actual damages."); *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 388 F. Supp. 2d 435, 443 (D. Del. 2005) ("[T]he amount of a statutory damages award must also take into account the actual profits earned by the defendant and revenues lost by the plaintiff."); *Bly v. Banbury Books, Inc.*, 638 F. Supp. 983, 987 (E.D. Pa. 1986) ("[N]umerous courts have held that assessed statutory damages should bear some relation to the actual damages suffered."); *RSO Records, Inc. v. Peri*, 596 F. Supp. 849, 862 (S.D.N.Y. 1984) ("Undoubtedly assessed statutory damages should bear some relation to actual damages suffered."); *see also Golden Torch Music Corp. v. Pier III Cafe, Inc.*, 684 F. Supp. 772, 774-75 (D. Conn. 1988) (setting a statutory damage award at five times the plaintiff's actual damages); *Broad. Music, Inc. v. Melody Fair Enters., Inc.*, 1990 WL 284743, at *4 (W.D.N.Y. July 31, 1990) (setting a statutory damages award at less than four times actual damages); *Broad. Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F. Supp. 656, 660 (S.D.N.Y. 1996) (awarding statutory damages less than six times the plaintiff's actual damages).

As the evidence will show, Mr. Psihoyos' agent Science Faction routinely, regularly, and as a matter of its standard business practices, granted permission to Wiley for use of Mr. Psihoyos' photographs (including those at issue in this case) for 100,000 copies distributed worldwide, at a price of $175 per photo.  Moreover, Science Faction routinely authorized permission for Mr. Psihoyos' photos to other publishers for even less than the amount paid by Wiley.  Plaintiff and his counsel are not entitled to a windfall by virtue of any infringement. Any statutory damage amount the jury may award should be guided by the amount of actual damage Mr. Psihoyos suffered as a result of any proven infringement.  *See also EMI Entm't World v. Karen Records, Inc.*, 603 F. Supp. 2d 759, 769 (S.D.N.Y. 2009) (stating that it is "settled principle that 'statutory damages cannot be divorced from economic reality'") (citation omitted); *see infra* Section III (discussing Psihoyos' actual damages).

Moreover, even in cases of willful infringement, which Wiley adamantly denies here, several courts have looked to the revenues lost by the plaintiff as a result of the infringement of his work—and specifically, the amount he would have received from the defendant had the defendant simply obtained a license for the infringing uses—as the baseline against which a statutory damages award should be determined.  Indeed, in such cases, courts have regularly calculated statutory damages based on a multiple of the plaintiff's lost license fee.  *See, e.g.*, *Realsongs v. 3A North Park Avenue Rest Corp.*, 749 F. Supp. 2d 81, 87 (E.D.N.Y. 2010) (imposing statutory damages award slightly below three times the unpaid licensing fee in light of the "deliberate infringement at issue here"); *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 509 (E.D. Va. 2009) (awarding slightly more than two times the unpaid licensing fee "[g]iven the Defendant's blatantly willful conduct"); *Broadcast Music, Inc.*, 919 F. Supp. at 660 (S.D.N.Y. 1996) (imposing statutory damages of five times the licensing fee as deterrent against willful

infringement); *Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172 (S.D.N.Y. 1983)

(imposing statutory damages of twice the unpaid licensing fee for willful infringement); *see also*

Def's Proposed Jury Charge No. 8.

**III.    THE MEASURE OF MR. PSIHOYOS' ACTUAL DAMAGES FOR WILEY'S
COPYRIGHT INFRINGEMENT IS THE VALUE OF THE LICENSING FEES
HE SHOULD HAVE RECEIVED FOR THE INFRINGING USES; PSIHOYOS
CANNOT ESTABLISH AN ENTITLEMENT TO WILEY'S PROFITS
ATTRIBUTABLE TO THE INFRINGEMENTS**

> A.      Plaintiff's Actual Damages

With respect to one of the four photographs at issue, "A Collection of Gastroliths," Mr.

Psihoyos is barred by the Court's earlier rulings from any recovery of statutory damages, and he

is therefore limited to recovering only his actual damages and Wiley's profits attributable to the

infringing use of his photograph.  (Of course, Mr. Psihoyos may also elect to recover actual

damages in lieu of statutory damages with respect to Wiley's uses of the other three photographs,

but it appears that he has opted instead to recover solely statutory damages as to those.)

To recover the "actual damages suffered by him . . . as a result of the infringement," 17

U.S.C. § 504(b), Mr. Psihoyos is required to establish what revenue he would have accrued but

for Wiley's infringement.  *See Nimmer on Copyright*, § 14.02[A][1], at p. 14-14.  Here, Mr.

Psihoyos' actual damages are, of course, lost licensing fees.  *See Davis v. The Gap, Inc.,* 246

F.3d 152, 168 (2d Cir. 2001) ("'a reasonable license fee for the use of the plaintiff's work best

approximates the market injury sustained by the plaintiff as a result of the defendant's

misappropriation'") (quoting *Rogers v. Koons*, 960 F.2d 301, 310 (2d Cir. 1992); *Semerdjian v.*

*McDougal Littell*, 641 F. Supp. 2d 233, 240 (S.D.N.Y. 2009) ("In calculating actual damages,

the task is to determine the reasonable license fee for only the reproductions for which

[defendant]  did not obtain a license."); *see also Manual of Model Civil Jury Instructions for the*

*District Courts of the Ninth Circuit,* Instruction No. 17.23 (2007) (plaintiff's actual damages are

"represented by the lost license fees *the plaintiff would have received* for the defendant's unauthorized use of the plaintiff's work.") (emphasis added).[4]

Notably, in an "actual damages" copyright claim  (as opposed to one for statutory damages), the plaintiff  is ***not*** entitled to any "penalty" or other enhancement of recovery of lost revenue. *Nimmer*, § 14.02[A][1], at p. 14-15.  Instead, actual damages are determined from a pre-infringement perspective and do not encompass punitive elements.  *See Semerdjian,* 641 F. Supp. 2d at 239 ("an actual damages calculation under § 504(b) cannot encompass punitive elements.") (citation omitted); *accord Jarvis v. K2 Inc.*, 486 F.3d 526, 535 (9th Cir. 2007); *see also* Def's Proposed Jury Charge No. 6 (measure of actual damages).

B.     Wiley's Profits Attributable to the Infringements

In addition to plaintiff's loss, Mr. Psihoyos may also recover that portion of defendant's gain, if any, attributable to any infringement, in the form of that non-duplicative portion of Wiley's profits that are attributable to its unauthorized use of Mr. Psihoyos' photos.  *See* 17 U.S.C. § 504(b).  In the circumstances of this action, however, *there simply are no profits* ***attributable to*** *infringing uses* of Mr. Psihoyos' photographs in Wiley's textbooks.  Here, the book containing the "Gastroliths" photo—*Visualizing Earth History,* a title on which Wiley lost money—has a total of 605 other photos in the book, not including the photos on its cover, as well as another 237 drawings, graphics and other pieces of line art, all spread across the book's 608

---

[4] As the evidence at trial will demonstrate, the plaintiff received 55% of the fees obtained by Science Faction for use  of his photographs.  So, for a $175 permission fee paid by Wiley to Science Faction, as described above, Mr. Psihoyos' royalty portion was $96.25.  This royalty stream was only available under the photos managed by Science Faction.  As for the National Geographic photo in this case, in *Visualizing Earth Science*, Mr. Psihoyos was not entitled to any royalties, and he therefore has ***no*** loss, whatsoever, from the permission fee paid by Wiley to NGS under Wiley's license agreement with NGS.

total pages.  Mr. Psihoyos' photograph of gastroliths, a bed of fossilized dinosaur digestive

stones, appearing in Chapter 11 of the book, as Figure 11.22b, is literally just one of hundreds of

other visual images in the book.  One photo in the interior of a book simply could not, and did

not, contribute to any of the sales of textbook.  The decision to purchase Wiley's textbooks,

including this one, is made by college faculty or administrators based primarily, if not

exclusively, on the textbook author's reputation and organization of the book. There is simply no

causal nexus between a college professor's decision to use a particular textbook for her course

and the inclusion in that book of one of Mr. Psihoyos' photographs. *Davis*, 246 F.3d at 160

(where "sale of the anthology were attributable to factors other than the [plaintiff's one]

infringing poem" profits attributable to those other factors should be excluded from any damages

calculation).  In other words, the evidence will show that no copy of *Visualizing Earth History*

was in fact sold due to the inclusion of Mr. Psihoyos' "Gastroliths" photo.  *See Nimmer on

Copyright*, § 1403, at pp. 14-37 and 14-38; *accord* Def's Proposed Jury Charge No. 6 (measure

of profits attributable to infringement).

     In addition to the foregoing question of "but for" causation, the related element of

"proximate cause" also applies in this case:  A defendant is entitled to show that its revenues and

profits on infringing sales were caused by factors ***other*** than the inclusion of plaintiff's

photographs in a given book.  *Nimmer on Copyright*, § 1403 at p. 14-38; *see also Data Gen.

Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1171, 1175 (1st Cir. 1994) (abrogated on

other grounds *Reed Elsevier, Inc. v. Muchnick*, 130 S.Ct. 1237, 1243 (2010)) (explicating the

related issues of "but for" causation and proximate causation between an infringing use and

claimed gross and net revenues).  The issue of proximate causation has been refined by the

doctrine of apportionment, now expressly embraced by the Copyright Act, which allows the

defendant to prove (and thereby exclude from recovery) "the elements of profit attributable to factors other than the copyrighted work."  17 U.S.C. § 504(b); U.S. House Report No. 94-1476 ("The language of the subsection make clear that only those profits 'attributable to the infringement' are recoverable; where some of the defendant's profits result from the infringement and other profits are caused by different factors, it will be necessary for the court to make an apportionment."); *see also Data Gen. Corp.*, 36 F.3d at 1176.

Thus, where the defendant's profits are derived from both infringing and non-infringing activities, defendant's profits from the non-infringing portions of the work cannot be attributed to the infringement.  Accordingly, at most, the profits can be apportioned.[5]  *See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 519 (9th Cir. 1985) ("When an infringer's profits are attributable to factors in addition to use of plaintiff's work, an apportionment of profits is proper.").  And, in the circumstances of this case, the evidence will demonstrate that *none* of Wiley's profits are appropriately apportioned as proximately related to the infringements at issue.  *See Polar Bear Prods. v. Timex Corp.*, 384 F.3d 700, 710-11 (9th Cir. 2004) ("When an infringer's profits are only remotely and speculatively attributable to infringement, courts will deny recovery to the copyright owner.") (internal quotation marks omitted)

---

[5] The defendant has the burden of proving the portion of its profits, if any, attributable to factors other than infringing the copyrighted work.  *See Davis*, 246 F.3d at 160.

**IV.    THE JURY'S DETERMINATION OF WHETHER ANY INFRINGEMENT BY
WILEY WAS "WILLFUL" MUST BE GUIDED BY THE UNINTENTIONAL
NATURE OF WILEY'S UNAUTHORIZED USE**

If the Court determines, after the close of the Plaintiff's case in chief, that there is

sufficient evidence to support submitting to the jury the question of Wiley's willfulness with

respect to the three photos eligible for statutory damages, then the jury will be called upon to

determine whether Wiley infringed Mr. Psihoyos' copyright rights "willfully," and, if so, what

amount of statutory damages, up to $150,000 per photograph, should be awarded to Mr.

Psihoyos.  *See* Defs. Proposed  Jury Charge. No. 7.

To prove "willfulness" under the Copyright Act, the plaintiff must show that at time of

the infringing activity either (1) that the defendant was actually aware that its conduct constituted

infringement of the plaintiff's rights, or (2) that the defendant's actions were the result of

"reckless disregard" for, or "willful blindness" to, the copyright holder's rights. *See Lipton v.*

*Nature Co.,* 71 F.3d 464, 472 (2d Cir.1995); *N.A.S. Imp. Corp. v. Chenson Enters., Inc.*, 968 F.2d

250, 252 (2d Cir. 1992); *see also Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 112 (2d Cir.

2001) ("Willfulness in this context means that the defendant recklessly disregarded the

possibility that its conduct represented infringement.") (citation and internal quotation marks

omitted).

Generally, "awards outside the ordinary statutory range are made only in 'exceptional

cases,' and there must be evidence of 'especially egregious circumstances' before the enhanced

damages become appropriate." *Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*, Civ. A.  No. 03-

4962, 2005 WL 67077, at *5 (E.D. Pa. Jan. 11, 2005) (internal citation omitted).  The Second

Circuit has defined the term "willful infringement" for more than two decades to mean that the

infringer must have had "actual or constructive knowledge" that its actions constituted

infringement at the time the acts occurred.  *See Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807

F.2d 1110, 1115 (2d Cir. 1986).  The requisite knowledge of infringement may be proven inferentially through conduct that demonstrates "'[r]eckless disregard of the copyright holder's rights.'"  *See Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1010 (2d Cir. 1995) (citation omitted); *see also Lipton*, 71 F.3d at 472 (copyright infringement is willful only "where the defendant had knowledge that its conduct constituted infringement or showed reckless disregard for the copyright holder's rights").  But a finding of such "reckless disregard" requires evidence that the infringer harbored actual doubts about its right to make use of the work and yet proceeded to do so without investigating further.  *See Island Software and Computer Serv. Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005) (without proof of actual knowledge of infringement, copyright owner must demonstrate "willful blindness" by infringer to be eligible for enhanced statutory damages).

Willfulness is thus a question of the infringer's subjective state of mind (*i.e.*, what the infringer actually thought).  This must be so because, if willfulness were determined merely as an objective matter (*i.e.*, what a reasonable person would have thought under the circumstances), then all infringements would necessarily have to be either willful or innocent pursuant to Section 504(c)(2), but the Second Circuit has expressly held that some infringements are neither.  *See Fitzgerald Publ'g*, 807 F.2d at 1115.  As explained by one court of appeals, sitting *en banc*, willful infringement must mean "with knowledge that the defendant's conduct constitutes copyright infringement," or else "any infringement that was nonwillful would necessarily be innocent," and there would be no point in providing for the reduction of even minimum awards for innocent infringement.  *Princeton Univ. Press v. Mich. Document Servs., Inc.*, 99 F.3d 1381, 1392 (6th Cir. 1996) (*en banc*) (quoting *Nimmer*, § 14.04[B][3] (1996 ed.)).

Other courts have likewise stressed that eligibility for enhanced statutory damages requires affirmative evidence of a defendant's bad faith. *See, e.g.*, *Digital Filing Sys., L.L.C. v. Agarwal*, No. 03-70437, 2005 WL 1702954, at *3 (E.D. Mich. July 20, 2005) (no willful infringement because "[t]his was not a case of 'reckless disregard' of Plaintiff's rights by Defendants, as they truly believed they were legitimately marketing and selling their product"); *Schiffer Publ'g, Ltd.*, 2005 WL 67077 at *7 (describing a willful infringer as "one who, after receiving notice of a possible infringement either 'sneers in the face of the copyright owner' or 'hides its head in the sand like an ostrich'") (citation omitted).

Notably, courts applying Section 504(c) of the Copyright Act have held that even when a defendant is aware that the plaintiff's work is copyrighted, not all unauthorized use of the work is necessarily "willful,"  For example, infringement that results from "bureaucratic ineptitude" within a defendant organization does not amount to willfulness.  *See Martin v. City of Indianapolis*, 192 F.3d 608, 614 (7th Cir. 1999); *see also Fitzgerald v. CBS Broad., Inc.,* 491 F. Supp. 2d 177, 191 (D. Mass. 2007) (holding that infringement that results from "negligence or simple accident" is not willful.).

Thus, the jury will be asked to consider whether Wiley's efforts, at the time it made use of Plaintiff's photographs, to request permission and to accurately estimate the number of copies of a textbook that would be printed, based on anticipated market demand, constitute the kind of negligence, or simple accident, or "bureaucratic ineptitude," that necessarily precludes a finding of willful infringement.

Here, the evidence at trial will show that, when Wiley, on its own, discovered it had published unauthorized copies of Mr. Psihoyos' photographs, it promptly notified Mr. Psihoyos of the mistake and offered to compensate him for the error.  Wiley then undertook to ascertain

whether it had used any of Mr. Psihoyos' other photos without permission or in excess of the permission granted, and it provided that information to Mr. Psihoyos voluntarily.  Such conduct is the antithesis of "bad faith."

With respect to the one instance in this case where Wiley used a photo by Mr. Psihoyos without any permission—the "8-foot long nesting dinosaur" in *Visualizing Earth Science*—the evidence will demonstrate that Wiley's photo staff sent a permission request to Mr. Psihoyos' personal office in Boulder, Colorado, based on the address on his personal website, rather than to his licensing agent Science Faction in Washington, and Mr. Psihoyos did not respond to that request.  Wiley then failed to notice that it had not received a response from Mr. Psihoyos and that it had therefore not processed an invoice for its use of that photo.

Separately, with respect to the admitted fact that Wiley published more copies than the 100,000 copies authorized for the *Physics* 8th Edition textbook, containing the "Enormous Triceratops Skeleton" photo, as set out in the permission invoice from Science Faction, the evidence will demonstrate that this printing over-run was unanticipated and unintentional.  Wiley's pre-publication estimates for this book simply did not anticipate that it would sell more than the 100,000 copies for which Wiley had requested permission.  Moreover, Wiley had no system in place in its sales and distribution departments at the time that would have triggered a request to re-permission the photo once Wiley's sales crossed over the 100,000-copy limit.  This printing over-run was the epitome of inadvertence and, at most, "bureaucratic ineptitude" within Wiley, and not the type of intentional, culpable act that is required to properly constitute "willful infringement."

**<u>CONCLUSION</u>**

As the above recitation of applicable law demonstrates, although Wiley has admitted liability for infringement with respect to two of the four photographs still at issue in this case, Wiley firmly believes that the appropriate damages to be awarded to Mr. Psihoyos for those admitted infringements should be commensurate with the ordinary licensing fee ($175 per photo) that Mr. Psihoyos' licensing agent charged for such uses, as that is a concrete, tangible, and readily ascertainable measure of the fair market value of Plaintiff's violated rights.  The evidence at trial, assessed under the legal precedents set forth above, will also show that Wiley had permission, through the course of conduct of Mr. Psihoyos' licensing agents, to use Plaintiffs' two other copyrighted works in its textbooks, and Wiley's use did not exceed the scope of those permissions.  Lastly, Wiley's admitted infringements, which were inadvertent (the product, at worst, of "bureaucratic ineptitude") were discovered by Wiley and brought promptly to Mr. Psihoyos' attention with an offer to fully compensate him. These facts preclude any finding that Wiley's infringements were willful.

Dated:   New York, New York          Respectfully submitted,
         June 15, 2012

                                     LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.


                                       /s/ Christopher P. Beall
                                     Robert Penchina (RP-5866)
                                     Christopher P. Beall (CB4590)
                                     321 West 44th Street, Suite 510
                                     New York, NY 10036
                                     (212) 850-6100
                                     (212) 850-6299 (Fax)


                                     Ashima Aggarwal (AA-1444)
                                     JOHN WILEY & SONS, INC.
                                     111 River Street
                                     Hoboken, NJ 07030
                                     (201) 748-7862


                                     *Attorneys for Defendant John Wiley & Sons, Inc.*

# Appendix A

to

## Defendant's Trial Brief

*Psihoyos v. JohnWiley & Sons, Inc.*
Case No. 11 CV 1416 (JPO)

# Plaintiff's Claims

| Textbook | Photograph title and image | Plaintiff's Theory of Infringement | Defendant's Explanation or Defense(s) |
|---|---|---|---|
| Merali & Skinner, *Visualizing Earth Science*, 1ˢᵗ Edition (2008) |  "Fossilized dinosaur tracks" (Am. Compl. ¶¶19, 20) | No license | Permission granted by National Geographic Society; fully paid by Wiley. |
| |  "8-foot long nesting dinosaur wrapped around at least 20 eggs" (Am. Compl. ¶¶13, 14, 15, 19, 20) | No license | Unauthorized use admitted.<br><br>Claim for willful infringement denied based on unintentional oversight following Plaintiff's failure to respond to Wiley's permission request. |
| Murck, Skinner & Mackenzie, *Visualizing Geology*, 1ˢᵗ Edition (2007) |  "8-foot long nesting dinosaur wrapped around at least 20 eggs" (Am. Compl. ¶16) | Late payment, after photo sent to printer | Permission granted by Science Faction; fully paid by Wiley. |

| Textbook | Photograph title and image | Plaintiff's Theory of Infringement | Defendant's Explanation or Defense(s) |
|---|---|---|---|
| Murck, Skinner & Mackenzie, *Visualizing Geology*, 2nd Edition (2009) |  "8-foot long nesting dinosaur wrapped around at least 20 eggs" (Am. Compl. ¶¶17, 18) | Late payment, after photo sent to printer | Permission granted by Science Faction; fully paid by Wiley. |
| |  "Fossilized dinosaur tracks" (Am. Compl. ¶¶17, 18) | Late payment, after photo sent to printer | Permission granted by Science Faction; fully paid by Wiley. |

| Textbook | Photograph title and image | Plaintiff's Theory of Infringement | Defendant's Explanation or Defense(s) |
|---|---|---|---|
| Babcock, *Visualizing Earth History*, 1st Edition (2008) |  "A Collection of Gastroliths" (Am. Compl., ¶25) | Late payment, after photo sent to printer | Permission granted by Science Faction; fully paid by Wiley. |
|  |  "Enormous Triceratops Skeleton" (Am. Compl., ¶¶ 21, 22) | Late payment, after photo sent to printer | Permission granted by Science Faction; fully paid by Wiley. |
| Cutnell & Johnson, *Physics*, 8th Edition (2008) |  "Enormous Triceratops Skeleton" (Am. Compl., ¶¶ 23, 24, 26, 27) | Late payment after photo sent to printer, and permission over-run | Permission granted by Science Faction; fully paid by Wiley.

Unauthorized use admitted based on over-run of printing limit in permission invoice.

Claim for willful infringement denied based on unintentional over-run. |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this __15th__ day of __June__, 2012, a true and correct copy of the foregoing **DEFENDANT'S TRIAL BRIEF** was filed with the Court through the ECF-CM electronic filing system, which will automatically serve electronic notice of the same on the counsel of record:

> Danial A. Nelson, Esq.
> Kevin P. McCulloch, Esq.
> NELSON & McCULLOCH LLP
> The Chrysler Building
> 405 Lexington Ave., 26th Floor
> New York, N.Y 10174
> (646) 704-4900
> Email – dnelson@nelsonmcculloch.com;
> kmcculloch@nelsonmcculloch.com
> *Counsel for Plaintiff Louis Psihoyos*

> ___/s/  Christopher P. Beall_____