**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LOUIS PSIHOYOS, | Case No. 11-cv-1416 (JPO) |
| *Plaintiff*, | Hon. J. Paul Oetken |
| v. | ECF Case |
| JOHN WILEY & SONS, INC., | Electronically Filed |
| *Defendant*. | |

**MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION *IN LIMINE***

Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
NELSON & McCULLOCH LLP
The Chrysler Building
405 Lexington Ave., 26th Floor
New York, New York 10174
T: (212) 907-6677

*Attorneys for Plaintiff*

June 22, 2012

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

INTRODUCTION ................................................................................................... 1

SUMMARY OF ARGUMENT ................................................................................ 2

ARGUMENT ........................................................................................................... 3

I.     APPLICABLE STANDARD OF REVIEW. ..................................................... 3

II.    WITNESSES ASHIMA AGGARWAL AND GARY RINCK HAVE PERSONAL, UNIQUE, AND ADMISSIBLE INFORMATION DIRECTLY RELEVANT TO AN ELEMENT OF PLAINTIFF'S CLAIM FOR WILLFUL DAMAGES. ............................................................................ 3

      A.    Evidence Relevant To Determining Willfulness Under 17 U.S.C. § 504(c)(2). ................................................................................ 4

      B.    Standard For Excluding Evidence On Grounds Of Attorney-Client Privilege. ................................................................................... 5

      C.    Witness Rinck Possesses Unique, Personal Knowledge Relevant To The Issue Of Willfulness. .................................................... 9

           1.    Wiley's Decision To Continue Selling Infringing Publications. ....................... 9

           2.    Wiley's *Ex Parte* Communications with Represented Claimants. ................... 11

      D.    Witness Aggarwal Possesses Unique, Personal Knowledge that is Relevant to The Issue of Willfulness. ................................... 13

III.   WITNESSES FROM OTHER COPYRIGHT SUITS AGAINST WILEY POSSESS KNOWLEDGE THAT IS RELEVANT TO THE ISSUE OF WILLFULNESS. .......................................................................... 16

IV.   WHETHER TESTIMONY WILL BE REPETITIVE OR CUMULATIVE CANNOT BE DETERMINED AT THIS JUNCTURE. ................................ 18

CONLCUSION ...................................................................................................... 19

# TABLE OF AUTHORITIES

CASES

*Auersperg v. von Bulow*, 811 F.2d 136 (2d Cir. 1987) ...................................................... 6

*Bankcard America, Inc. v. Universal Bankcard Systems, Inc.*, 203 F.3d
477 (7th Cir.2000) .................................................................................................... 7

*Baxter Diagnostics, Inc. v. Novatek Medical, Inc.*, No. 94-cv-5520, 1998
WL 665138 (S.D.N.Y. Sept. 25, 1998) ....................................................................... 3

*Bryant v. Media Right Productions, Inc.*, 603 F.3d 135 (2d Cir. 2010) ........................ 5

*Clark v. United States*, 289 U.S. 1 (1933) ........................................................................ 8

*Delman Fabrics Inc. v. Holland Fabrics Inc.*, No. 84-cv-2512, 1985 WL
2571 (S.D.N.Y. Sept. 19, 1985) .................................................................................. 5

*Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172 (S.D.N.Y. 1983) ............... 5

*Fisher v. United States*, 425 U.S. 391 (1976) ................................................................. 6

*Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110 (2d Cir.1986) .................. 5

*In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94-cv-0897,
1995 WL 354268 (N.D. Ill. June 9, 1995) ................................................................. 6

*In re County of Erie*, 473 F.3d 413 (2d Cir.2007) ......................................................... 6

*In re Grand Jury Subpoena Duces Tecum Served upon Levy*, 165 N.J.
Super. 211 A.2d 1132 (1978) .................................................................................... 8

*In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669
(D. Kan. 2005) ........................................................................................................... 6

*Lauratex Textile Corp. v. Allton Knitting Mills Inc.*, 519 F. Supp. 730
(S.D.N.Y. 1981) ..................................................................................................... 5, 7

*Luce v. United States*, 469 U.S. 38 (1984) ....................................................................... 3

*N.A.S. Imp., Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250 (2d Cir.
1992) ......................................................................................................................... 5

*Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Group*, 937 F. Supp. 276
(S.D.N.Y. 1996) ......................................................................................................... 3

*Palmieri v. Defaria*, 88 F.3d 136 (2d Cir. 1996) ......................................................... 3

*Ravenell v. Avis Budget Group, Inc.*, No. 08-cv-2113, 2012 WL 1150450 (E.D.N.Y. Apr. 5, 2012) .................................................................................................. 7

*Rodgers v. Quests, Inc.*, C79-243Y, 1981 WL 1391 (N.D. Ohio Oct. 30, 1981) ........................................................................................................................ 7

*Shelton v. Am. Motors Co.*, 805 F.2d 1323 (8th Cir. 1986) .............................. 7

*Stevens v. Aeonian Press, Inc.*, No. 00-cv-6330, 2002 WL 31387224 (S.D.N.Y. Oct. 23, 2002) .................................................................................... 5

*Tailored Lighting, Inc. v. Osram Sylvania Products, Inc.*, 255 F.R.D. 340 (W.D.N.Y. 2009) ............................................................................................... 8

*Thompson v. Safeway, Inc.*, No. 01 C 3260, 2002 WL 500547 (N.D. Ill. Apr.2, 2002) .................................................................................................... 7

*United States v. International Business Machines Corp.*, 66 F.R.D. 206 (S.D.N.Y. 1974) .............................................................................................. 6

*United States v. Mejia*, 655 F.3d 126 (2d Cir. 2011) ........................................ 6

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) ............................................ 6

*Walt Disney Co. v. Best*, No. 88-cv-1595, 1990 WL 144209 (S.D.N.Y. Sept. 26, 1990) .............................................................................................. 5

*Wu v. Pearson Educ., Inc.*, No. 09-cv-6557 (S.D.N.Y. April 12, 2012) .................................. 5, 7

FEDERAL STATUTES AND RULES

17 U.S.C. § 504(c)(2) .............................................................................................. 4

17 U.S.C. § 506 .................................................................................................... 8, 9

Fed. R. Evid. 501 .................................................................................................... 5

Plaintiff Louis Psihoyos ("Plaintiff' or "Psihoyos") submits this Memorandum of Law in Opposition to Defendant John Wiley & Sons, Inc.'s ("Defendant" or "Wiley") Motion *In Limine* ("Motion").

## INTRODUCTION

Defendant's Motion concedes that damages will be an issue at trial for all claims and the only issue at trial for Psihoyos' claims related to two photographs, but tries to exclude crucial evidence and testimony bearing directly on the question of "willfulness" under 17 U.S.C. § 504(c)(2), which is a central element of Psihoyos' damages claim. Because Defendant does not stipulate to willful infringement, Psihoyos is entitled to present evidence and testimony bearing on all factors relevant to willfulness inquiry. And because Defendant persists in arguing that its unauthorized uses of Psihoyos' images was the result of an isolated and innocent "administrative error," Psihoyos is entitled to present evidence and testimony to discredit this concocted explanation.

There is no merit to Defendant's spurious charge that Psihoyos has "improperly" designated witnesses in an "effort to increase the nuisance value of this action for Wiley." (Docket No. 73 ("Def. Memo.") at 1.) In point of fact, there is abundant evidence that the witnesses that at the subject of Defendant's Motion have unique, personal knowledge that is relevant to the crucial damages issue of willfulness.

Defendant's Motion to preclude Psihoyos from calling certain witnesses rests on numerous misrepresentations of fact and mischaracterizations of the record. To be clear, Plaintiff does not agree with Defendant's characterization of the issues remaining in this case or the scope of Defendant's admissions, but the broader disagreement between the parties need not be resolved for purposes of this Motion. The relevant question is whether the identified witnesses have personal knowledge that is relevant to issues that will arise at trial.

1

## SUMMARY OF ARGUMENT

Despite Defendant's effort to avoid appropriate discovery related to the question of willfulness, public records from the *numerous* copyright infringement actions filed around the country against Defendant plainly reveal that Defendant is a *habitual* copyright infringer. These publicly available documents also reveal that both Ashima Aggarwal and Gary Rinck have direct, personal knowledge of Wiley's business operations and other non-privileged issues.

For instance, Ms. Aggarwal was personally involved in an unethical scheme to conceal infringements and avoid future lawsuits by improperly attempting to "retain" opposing counsel in order to bribe them not to bring additional claims against Wiley. Ms. Aggarwal also personally instructed Wiley personnel to obtain dubious licenses from unwitting agents in an effort to obstruct ongoing copyright lawsuits. Testimony from other suits against Wiley also reveals that Gary Rinck personally was involved in the business decision to continue selling publications that Wiley knew included unlicensed copies of photographs owned by third parties. Moreover, Mr. Rinck and Ms. Aggarwal also facilitated efforts by Defendant's employees to improperly communicate *ex parte* with photographers that Mr. Rinck and Ms. Aggarwal knew to be represented by counsel in an effort to dissuade those photographers from bringing infringement actions against Wiley. According to Mr. Rinck, these sorts of communications are merely "normal" business communications and thus any communications involving Mr. Rinck or Ms. Aggarwal related to such communications cannot be privileged.

Because Mr. Rinck and Ms. Aggarwal have personal knowledge of relevant issues unrelated to their representation of Defendant in this suit, they can properly be called as witnesses at trial.

**ARGUMENT**

I.     APPLICABLE STANDARD OF REVIEW.

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence and testimony.  *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996); *Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Group*, 937 F. Supp. 276, 283 (S.D.N.Y. 1996).   Because the context and purpose of testimony cannot be fully evaluated until trial, the standard for excluding evidence on a motion *in limine* is rigorous, and evidence should be excluded only where the moving party demonstrates that the evidence is clearly inadmissible on all potential grounds.  *See Baxter Diagnostics, Inc. v. Novatek Medical, Inc.*, No. 94-cv-5520, 1998 WL 665138, at *3 (S.D.N.Y. Sept. 25, 1998).

II.     WITNESSES ASHIMA AGGARWAL AND GARY RINCK HAVE PERSONAL, UNIQUE, AND ADMISSIBLE INFORMATION DIRECTLY RELEVANT TO AN ELEMENT OF PLAINTIFF'S CLAIM FOR WILLFUL DAMAGES.

Ms. Aggarwal and Mr. Rinck, as well as the other witnesses that Defendant's Motion seek to exclude, each have unique, personal knowledge that is relevant to the question of willfulness, which surely will be the central issue at trial.  In particular, these witnesses were directly involved in the decision by Wiley to continue selling inventory of publications that Wiley knew included unauthorized copies of third party photographs.  These witnesses also have direct knowledge of Wiley's admissions of copyright infringements in other actions against Wiley, Wiley's settlement agreements in other actions, and Wiley's continuing effort to cover up and clean up infringements of other photographs in the books at issue in this suit.  Ms. Aggarwal also was personally involved in an improper scheme to help Wiley avoid future infringement actions, and orchestrated a surreptitious clean-up effort in other cases.  And both Mr. Rinck and Ms. Aggarwal have assisted or encouraged Wiley employees to conduct improper *ex parte*

3

communications with photographers to dissuade them from pursuing action against Wiley.  Such evidence is relevant to determining whether Wiley's conduct was willful for purposes of 17 U.S.C. § 504(c)(2).

Undoubtedly there is significant documentary evidence confirming Wiley's settlements with other claimants, Wiley's knowledge of infringements, Wiley's decision to continue selling inventory of infringing publications, and even Wiley's efforts to improperly "retain" opposing counsel and initiate *ex parte* communications with claimants that Wiley knows to be represented by counsel.  However, because Wiley did not produce *any* documentary evidence during discovery going to the issue of willfulness, Plaintiffs' only options for presenting this evidence to the jury are (i) to present the publicly available records confirming this pattern of misconduct and (ii) to call as witnesses the parties who are identified in the relevant records as having knowledge of this pattern of misconduct.[1]  Courts consistently have held that such evidence is relevant to the question of willfulness and admissible at trial.

Plaintiff would be extremely prejudiced if he were not permitted to call witnesses at trial who have direct, personal knowledge of evidence that is directly relevant to the central issue at trial, particularly because Defendant improperly refused to produce this evidence during discovery.

### A.     Evidence Relevant To Determining Willfulness Under 17 U.S.C. § 504(c)(2).

Determining whether Defendant's infringements were "willful" for purposes of 17 U.S.C. § 504(c)(2) requires the jury to consider whether Defendant either acted "recklessly" or had "actual or constructive knowledge" that its actions constituted an infringement.  *See Fitzgerald*

---

[1] Defendant's Motion argues that neither Ms. Aggarwal nor Mr. Rinck have been deposed in this action omits the fact that the disclosures that Ms. Aggarwal had violated the rules of ethics to protect Wiley from liability for copyright infringement and that Mr. Rinck had been a part of Wiley's business decision to consider selling infringing books both came after the close of discovery in this matter, despite Defendant's best efforts to conceal such information.

*Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1115 (2d Cir.1986).  Willfulness "need not be proven directly but may be inferred from the defendant's conduct."  *N.A.S. Imp., Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250, 252 (2d Cir. 1992) (citing *Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983)).  There are numerous factors relevant to this determination, including:  (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the infringements; and (6) the conduct and attitude of the parties.  *See Bryant v. Media Right Productions, Inc.*, 603 F.3d 135, 144 (2d Cir. 2010) (citing *N.A.S. Import Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250, 252-53 (2d Cir. 1992)).

In light of these factors, this Court consistently has held that evidence of a defendant's past conduct, includin gprior settlement of similar claims, is evidence relevant to willfulness. *See, e.g.*, *Wu v. Pearson Educ., Inc.*, No. 09-cv-6557 (KBF) (JCF), Docket No. 136, at 2-3 (S.D.N.Y. April 12, 2012) (Nelson Decl. Ex. 1) ("Settlement of similar claims has consistently been found to be evidence of willfulness in copyright infringement actions) (citing *Stevens v. Aeonian Press, Inc.*, No. 00-cv-6330, 2002 WL 31387224, at *3 (S.D.N.Y. Oct. 23, 2002); *Walt Disney Co. v. Best*, No. 88-cv-1595, 1990 WL 144209, at *2 (S.D.N.Y. Sept. 26, 1990); *Delman Fabrics Inc. v. Holland Fabrics Inc.*, No. 84-cv-2512, 1985 WL 2571, at *6 n.4 (S.D.N.Y. Sept. 19, 1985); *Lauratex Textile Corp. v. Allton Knitting Mills Inc.*, 519 F. Supp. 730, 733 (S.D.N.Y. 1981)).

**B.      Standard For Excluding Evidence On Grounds Of Attorney-Client Privilege.**

Federal Rule of Evidence 501 provides that "the privilege of a witness . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience." The attorney-client privilege protects

communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice. *See In re County of Erie*, 473 F.3d 413, 419 (2d Cir.2007). "In order to balance this protection of confidentiality with the competing value of public disclosure, however, courts apply the privilege only where necessary to achieve its purpose and construe the privilege narrowly because it renders relevant information undiscoverable." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir.) cert. denied, 132 S. Ct. 533 (2011) (internal quotations omitted). As the moving party, Defendant bears the burden of demonstrating that all potential testimony from these witnesses is privileged. *See Id.* (citing *von Bulow ex rel. Auersperg v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987); *Fisher v. United States*, 425 U.S. 391 (1976).

"The [attorney-client] privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 674 (D. Kan. 2005) (same). The attorney-client privilege also does not apply where communications do not involve true "legal advice," or where the legal advice is merely incidental to business advice. *See United States v. International Business Machines Corp.*, 66 F.R.D. 206, 212 (S.D.N.Y. 1974); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. at 675 ("The privilege does not apply where the legal advice is merely incidental to business advice."); *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94-cv-0897, 1995 WL 354268, at *2 (N.D. Ill. June 9, 1995) ("Moreover, the legal advice must predominate; the privilege will not apply where the legal advice is merely incidental to business advice.").

Defendant's settlement agreements and communications with opposing counsel or adverse parties cannot be privileged. *See Mejia*, 655 F.3d at 134 (holding disclosure of

communications to persons outside of the attorney-client relationship waives the privilege); *Ravenell v. Avis Budget Group, Inc.*, No. 08-cv-2113, 2012 WL 1150450, at *2 (E.D.N.Y. Apr. 5, 2012).  Nor is it appropriate to exclude settlement-related evidence or testimony going to willfulness, rather than liability, under Federal Rule of Evidence 408.  *See Wu*, Docket No. 136, at 2-3 (noting settlement of infringement claims admissible for other purposes under Fed. R. Evid. 408(b)); *Lauratex Textile Corp.*, 519 F. Supp. at 733 ( "In addition, the plaintiff presented at trial docket sheets in six copyright infringement cases brought within the last three years against [defendant]. Four of these cases have been settled. This provides one more indication that the business of encroaching upon others' copyrights is not unfamiliar to the defendant. For these reasons, the defendant appears to have infringed plaintiff's copyright willfully.");  *Rodgers v. Quests, Inc.*, C79-243Y, 1981 WL 1391 (N.D. Ohio Oct. 30, 1981) ("[Defendants] had previously admitted infringements in the settlement of [three other] suits. Upon this evidence and the total record, [Defendants'] new infringements are found to be willful."); *Bankcard America, Inc. v. Universal Bankcard Systems, Inc.*, 203 F.3d 477, 484 (7th Cir.2000) ("Courts have admitted evidence of offers or agreements to compromise . . . to show the defendant's knowledge and intent"); *Thompson v. Safeway, Inc.*, No. 01 C 3260, 2002 WL 500547, * 2 (N.D. Ill. Apr.2, 2002) ("Courts have routinely admitted evidence of offers or agreements to compromise for purposes of rebuttal, for purposes of impeachment, or to show the defendant's knowledge and intent").

Contrary to the Defendant's suggestion, the Second Circuit has expressly rejected the notion that eliciting the testimony of opposing counsel is "disfavored."  *In re Subpoena Issued to Dennis Friedman, Esq.*, 350 F.3d 65, 71-72 (2d Cir. 2003) (rejecting the rule adopted in *Shelton v. Am. Motors Co.*, 805 F.2d 1323 (8th Cir. 1986)).  Following *Friedman*, this Court repeatedly has permitted testimony to be elicited from opposing counsel under similar circumstances to

those presented here.  *See In re Chevron Corp.*, 749 F. Supp. 2d 141 (S.D.N.Y. 2010) (denying motion to quash subpoena of opposing counsel).  Where testimony from inside counsel is concerned, courts in this Circuit have acknowledged that a crucial distinction exists because "advice [that] properly constitutes legal advice" as opposed to "business advice."  *Tailored Lighting, Inc. v. Osram Sylvania Products, Inc.*, 255 F.R.D. 340, 344 (W.D.N.Y. 2009).

In short, Wiley cannot hide otherwise discoverable evidence that it continued to infringe and tried to cover up admitted copyright infringements merely because such orders came from lawyers.  In fact, attorney-client communications related to criminal conduct, fraud, or ongoing misconduct are not privileged.  As the U.S. Supreme Court unanimously held:

> There is a privilege protecting communications between attorney and client.  The privilege takes flight if the relation is abused.  A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law.  He must let the truth be told.

*Clark v. United States*, 289 U.S. 1, 15 (1933).  And in New Jersey, where Wiley maintains its headquarters, courts consistently reject the claim of privilege where the communications involve criminal conduct or fraud.  *See In re Grand Jury Subpoena Duces Tecum Served upon Levy*, 165 N.J. Super. 211, 216, 397 A.2d 1132, 1134 (1978), *aff'd*, 171 N.J. Super. 475, 410 A.2d 63 (App. Div. 1979) ("[T]he attorney-client privilege does not protect communications concerning misconduct, criminal activity, or fraudulent acts in which the client is presently engaging.") (collecting cases).

Willful copyright infringement is a criminal act.  *See* 17 U.S.C. § 506.  And, as shown herein, the testimony that Defendant seeks to exclude from trial plainly involve ongoing misconduct and fraud and even violations of the rules of professional conduct.  Defendant cannot hide this evidence from the jury under a claim of privilege.

### C.      Witness Rinck Possesses Unique, Personal Knowledge Relevant To The Issue Of Willfulness.

Mr. Rinck is not litigation counsel for Defendant in this case.  He has never appeared in this action, never attended a deposition or court hearing, and has not signed any pleadings or filings.  Defendant's Motion does not deny this, but instead contends that any evidence that Mr. Rinck may offer must be protected by the attorney-client privilege merely because he is General Counsel of Wiley and "has responsibility for management of Wiley's litigations, including this action."  (Def. Memo. at 2.)  Even if true, Wiley cannot seriously deny that Mr. Rinck's responsibilities at Wiley are not *limited* to the "management of Wiley's litigations," and it is settled law that his involvement in business decisions at Wiley and settlement of relevant claims is not privileged, and neither is any advice that Mr. Rinck has provided related to fraud or ongoing criminal conduct, including willful copyright infringement under 17 U.S.C. § 506.

### 1.      Wiley's Decision To Continue Selling Infringing Publications.

Defendant's Motion concedes that Mr. Rinck was personally involved in Wiley's decision to continue selling publications that Wiley knew included infringing uses of third party photographs, but argues that any evidence Mr. Rinck may offer on this subject is privileged. (Def. Mem. at 3.)  As explained above, such communications are not subject to a claim of privilege.

Defendant's Motion also seriously mischaracterizes this Court's order in *Cole v. John Wiley & Sons, Inc.*, No. 11-cv-2090.  Contrary to Defendant's suggestion, Magistrate Judge Freeman did not hold that Mr. Rinck was immune from being called to offer testimony, but rather that the record in that case remained undeveloped and thus she granted the motion for protective order but did so "without prejudice to plaintiffs seeking to depose these witnesses in the future, based on a fuller record demonstrating relevance."

Defendant also conspicuously fails to mention that another court has rejected the arguments advanced by Defendant here and ordered Mr. Rinck to appear for deposition on this exact issue.  *See Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc.*, No. 11-cv-1665, Docket No. 97 (E.D. Penn. Aug. 18, 2011) (Nelson Decl. Ex. 2).  The plaintiff in the *Grant Heilman* action deposed Ms. Kay Pace as Wiley's corporate representative pursuant to Fed. R. Civ. P. 30(b)(6).  According to an August 18, 2011 order handed down by Magistrate Judge Perkin in that action:

> Ms. Kaye Pace testified at deposition that she was present in a meeting in April, 2011 with Maria Danzilo, an in-house attorney, General Counsel Rinck, Ann Berlin and Joe Hyder.  Her testimony did not reveal the substance of the conversation during the meeting, but she stated that she believed Attorney Danzilo requested the meeting and at that time, <u>a decision had already been made to continue selling or distributing books and electronic books or inventory containing unpermissioned Grant Heilman Photography Inc. images and other photographer's images but not to physically reprint them.</u>

*Id.* at 1 n.1 (emphasis added).  Judge Perkin noted that Wiley's basis for seeking a protective order in that action, just like its argument here, was that Mr. Rinck's knowledge was privileged and that he had "no direct personal knowledge about the specific issues in this case."  *Id.*  Judge Perkin rejected these arguments, expressly finding that "Ms. Pace testified at her deposition that she was present in a meeting with Mr. Rinck . . . in April 2011 in or around the time that the decision was made to continue selling or distributing books containing Plaintiffs' unpermissioned images."  *Id.* The court thus ruled that "Plaintiffs are entitled to test Mr. Rinck's direct personal knowledge about the specific issues in this case."  *Id.*

The same issue presented in the *Grant Heilman* is at issue here.  Indeed, it is almost certainly the case that the books at issue in this action also were discussed at this April 2011 meeting given that Plaintiff filed this action merely a few weeks prior to the meeting.  In fact,

Ms. Pace testified that Wiley's decision to continue selling infringing inventory in *Grant Heilman* involved multiple books and was not limited to the books at issue in that suit.  *Id.*

Moreover, this case involves Wiley's use of Psihoyos' photos in "book blocks" of each publication.  As a prior declaration submitted by Lisa Suarez, the Senior Manager of Inventory in the Finance and Operations Department, explained:  "'[B]ook blocks" are not sold but are maintained in Wiley's warehouse.  In the event Wiley needs additional inventory of a textbook, it will send "book blocks" for that textbook to the printer to be bound with a cover and then sold to a customer.'"  (Docket No. 21 at 2, ¶ 4.)  This is significant because, even if Wiley replaced Plaintiff's photos in *future* printings, there was no evidence produced in this action that Wiley ever quarantined the infringing copies of existing inventory, or that Wiley destroyed the unbound "book block" inventory of the infringing publications.  For instance, Hilary Newman, a Manager of the Photo Department for the Global Education division at Wiley, submitted a declaration claiming that:  "The Photo Department has taken steps to replace the photographs at issue in this litigation . . . in any books . . . *which Wiley plans to reprint*."  (Docket No. 19 at 3, ¶ 10 (emphasis added).)  Ms. Newman conspicuously fails to explain how Wiley disposed of the existing inventory of bound books or the so-called "book blocks" that contained unlicensed copies of Plaintiffs' photos.  Wiley's decision to continue to sell infringing publications, standing alone, is sufficient to establish willfulness.

### 2. Wiley's *Ex Parte* Communications with Represented Claimants.

Mr. Rinck also may be called to testify regarding his involvement in Wiley's practice of engaging in *ex parte* communications with photographers regarding infringements and Wiley's efforts to dissuade those claimants from pursuing litigation against Wiley.  For instance, undersigned counsel contacted Wiley on February 1, 2011 regarding Wiley's unlicensed use of Brandon Cole's photos in Wiley's *Frommer's Costa Rica* guide books.  Mr. Cole's copyright

claims, and expressly instructed Mr. Rinck that Wiley "direct all communications regarding those issues to me, rather than Mr. Cole directly."  Nelson Decl. Ex. 3.  Despite our instructions, Wiley's Associate Publisher, Ensley Eikenburg, then contacted Mr. Cole to attempt to "discuss and resolve the photo rights situation."  *Id.* Ex. 4.  Upon learning about these improper *ex parte* contacts, undersigned counsel brought the issue to Mr. Rinck's attention and requested that he instruct Wiley's employees not to continue contacting Mr. Cole.  *Id.* Ex. 5.  On February 28, 2011, prior to this litigation, Mr. Rinck responded that:

> There is nothing in the slightest bit improper with Wiley business employees contacting authors and photographers directly.  This is, after all, their/our business.
>
> By all means, if you have some 'authority' to the contrary, show it to me.  And your 'clients' can at any point refuse to join in a dialogue.  Although if they wish to have 'normal' commercial relations with publishers, I cannot conceive why they would so refuse.

*Id.* Ex. 6.

Ms. Eikenburg could only have known to contact Mr. Cole if Mr. Rinck informed her that undersigned counsel had contacted Wiley.  If Mr. Rinck did so to encourage Ms. Eikenburg contact Mr. Cole *ex parte*, that conduct is unethical and contrary to the most basic rules of professional conduct.  *See* Rule 4.2(a) of the New York Rules of Professional Conduct ("In representing a client, a lawyer shall not communicate *or cause another to communicate* about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the other lawyer or is authorized to do so by law.").  In any event, according to Mr. Rinck, such communications—which Ms. Eikenburg described as attempting to "resolve the photo rights situation"—with photographers are merely "business" communications within the "normal" course of Wiley's "commercial relations."  Mr.

Rinck's knowledge of such discussions, therefore, cannot fall within ambit of privileged communications or attorney-work product.

### D. Witness Aggarwal Possesses Unique, Personal Knowledge that is Relevant to The Issue of Willfulness.

Like Mr. Rinck, Ms. Aggarwal has unique, personal knowledge bearing directly on factors relevant to the willfulness inquiry.

For instance, Ms. Aggarwal unquestionably has personal and unique knowledge of Defendant's unsuccessful scheme to avoid liability for copyright infringement by attempting to "retain" (*i.e.*, bribe) opposing counsel in a prior litigation involving identical claims to those at issue here.  Publicly available records demonstrate that Ms. Aggarwal insisted that the plaintiff's attorneys in *John Wiley & Sons, Inc v. Hiser.*, No. 09-cv-4307 (AKH) (S.D.N.Y.), agree to an improper provision in a settlement agreement promising that they would not sue Wiley for copyright infringement.  *Id.*, Docket No. 39 at 2 (Nelson Decl. Ex. 7).  Specifically, Ms. Aggarwal proposed:  "Can we craft some sort of agreement to avoid future litigations over photo permissions issues with you as part of this settlement?"  *Id.* at 2.  Mr. Hiser's counsel wisely rejected Ms. Aggarwal's proposal because, as this Court recognized, "such an agreement would violate the applicable ethics rules."  *Id.*  Undeterred, Ms. Aggarwal suggested a scheme that she believed would allow the parties to avoid the ethical concerns, proposing that opposing counsel would merely agree to "a small annual retainer and effectively become a client of [Wiley's]."  *Id.* When Mr. Hiser's lawyers again refused, Wiley abandoned the settlement, insisting that this blatantly unethical provision was a necessary term of the settlement because, according to Ms. Aggarwal, "the agreement that there would be no more litigations is an important aspect of the settlement for [Wiley]."  *Id.*

This Court determined that the scheme proposed by Ms. Aggarwal violated the rules of ethics.  *Id.* at 3 (citing ABA Model Rule 5.6(b); N.Y. Rule 5.6(a)(2)).  *See also* 22 N.Y.C.R.R. § 1200.13(b) ("In connection with the settlement of a controversy or suit, a lawyer shall not enter into an agreement that restricts the right of a lawyer to practice law."); Nelson Decl. Ex. 8 (New York City Bar Formal Opinion 1999-03) ("We believe that this rule is unambiguous in its application to agreements not to represent present or future clients in litigation against a settling defendant. We therefore join numerous other bar committees in concluding that such agreements are improper.").

Ms. Aggarwal is the principal witness to this damning evidence of Defendant's improper efforts to avoid future copyright claims.  Ms. Aggarwal admitted that she was requesting such an agreement because she was aware of potential future claims that could be brought against Wiley. This evidence, standing alone, also is sufficient to establish Defendant's knowledge that its conduct constitutes an infringement because Ms. Aggarwal's knowledge is imputed to Wiley. *See, e.g.*, *N.A.S. Import*, 968 F.2d at 252 (willfulness can be established by constructive knowledge imputed to corporate defendant or inferred from employee conduct).

Ms. Aggarwal also may become an important witness on other issues.  For instance, in the event that the Court allows Defendant to advance its (unpleaded, waived, and dubious) license or implied license defenses, Plaintiff may call Ms. Aggarwal to testify about her false and/or mistaken representations to Plaintiff's counsel and the Court that only Science Faction was "involved in licensing" the photographs in suit to Wiley.  *See* Pl. Memo. in support of Motion *In Limine*, Docket No. 63 at 8-9.

Ms. Aggarwal's false representation on this point is even more curious given that she previously has orchestrated efforts to dupe the licensing agents of copyright owners who have claims against Wiley into unwittingly granting licenses that Wiley contended extinguished

copyright claims.  *See* Nelson Decl. Ex. 9 (Excerpts from July 9, 2010 Deposition of Jennifer MacMillan in *Hiser*) at 75:19—80:1.   As Ms. MacMillan testified in the *Hiser* action, Ms. Aggarwal instructed her to seek a license from a licensing vendor for the infringing uses at issue in that suit *after the litigation already had been filed*, and Ms. Aggarwal *instructed her to conceal from the vendor* that the license request pertained to a book that already had been published and for which copyright claims already had been asserted.

> Q.  Did anyone else talk to you about the image in Blue Horizons, anyone else at Wiley besides Mr. Barker, and request that you try to obtain a license from National Geographic for Hiser's image in that book?
>
> A.  Ashima [Aggarwal].
>
> Q.  Anyone else?
>
> A.   I talked with my boss, Hilary Newman who's copied on this message.
>
> . . .
>
> Q.  Did you talk at all about whether you should disclose to [National Geographic] that this image was involved in a lawsuit in an U.S. Federal court in Manhattan at the very time that you were requesting a license for it?
>
> A.  I don't remember discussing that topic, that specific topic with Hilary.
>
> Q.  At all?
>
> A.  At all.
>
> Q.  Did you discuss it with anybody else beside Hilary?
>
> A.  Yes.
>
> Q.  Who would that be?
>
> A.  Joe Barker and Ashima [Aggarwal].

*Id.* at 77:12-20; 79:13—80:1.   This scheme plainly was intended to cover up a known infringement so that Wiley could continue to sell and profit from the book sales.  And concealing this material information from the vendor is fraud.  Ms. Aggarwal's knowledge of this scheme thus cannot be protected as privileged.

And like Mr. Rinck, Ms. Aggarwal also may be called to testify regarding her involvement in Wiley's ongoing practice of encouraging *ex parte* communications with

photographers regarding infringements. In particular, Ms. Aggarwal recently encouraged William Zerter, Vice President of Finance and Operation in the Global Education division at Wiley, to contact a photographer in an effort to intimidate her and discourage her from pursuing claims against Wiley. *See* Nelson Decl. Ex. 10.

It is difficult to imagine how Ms. Aggarwal's communications with Mr. Hiser's attorneys regarding an unethical scheme to avoid liability, her misrepresentations to opposing counsel and the Court in this action, or her correspondence with Mr. Zerter to encourage improper *ex parter* communications with photographers, which Mr. Rinck described as "normal business" communications, could be protected by the attorney-client privilege.

III.    **WITNESSES FROM OTHER COPYRIGHT SUITS AGAINST WILEY POSSESS KNOWLEDGE THAT IS RELEVANT TO THE ISSUE OF WILLFULNESS.**

Defendant also argues that Plaintiff should be precluded from calling witnesses from other Wiley divisions, since such witnesses "cannot provide testimony with respect to knowledge of the individuals who actually licensed or used Plaintiff's photographs in the books at issue as they had no involvement or knowledge of those transactions."   (Def. Mem. at 5-6.)   This argument is unavailing.   Indeed, the fact that Cherie Cincilla, Ensley Eikenburg, and Alden Gewirtz work in another division of Wiley is precisely the point and will make their testimony regarding similar infringements in other Wiley divisions even more compelling.   Particularly because these witnesses offered the same bogus "administrative error" and "clerical mistake" explanation in other lawsuits against Wiley related to unlicensed uses occurring in Wiley's Professional and Trade division.

Contrary to Defendant's suggestion, it is not necessary to show that Wiley was "actually aware that its conduct constituted an infringement" to demonstrate willfulness.  (Def. Mem. at 5.) On the contrary, it is settled law that willfulness can be shown through constructive knowledge

16

and even inferred from Defendant's prior conduct, including involvement in similar suits.  *See, e.g.*, *N.A.S. Import*, 968 F.2d at 252; *Wu*, No. 09-cv-6557, Docket No. 136, at 2-3 ("Settlement of similar claims has consistently been found to be evidence of willfulness in copyright infringement actions).   Moreover, "reckless disregard of the copyright holder's rights (rather than actual knowledge of infringement) suffices to warrant award of the enhanced damages." *N.A.S. Import*, 968 F.2d at 252.

When the standard is understood properly, these witnesses certainly have relevant knowledge bearing on Plaintiff's claim of willfulness.  Indeed, evidence that personnel in other divisions of Wiley who worked on different publications have knowledge of infringements and also provided the exact same false information to photographers and their agents is compelling proof of an intentional, corporate-wide problem, which plainly is probative of Wiley's reckless disregard for third-party copyrights.

The testimony from these witnesses also will justifiably impugn the credibility of any Wiley witnesses who attempt to mislead the jury with the concocted story that the infringements here are innocent incidents caused by an isolated "administrative error."  For this charade to succeed, of course, Defendant needs to hide from the jury the fact that Wiley has been sued all over the country by dozens of photographers for infringing literally hundreds of photographs in dozens of different publications across multiple Wiley divisions, including:

- *John Wiley & Sons, Inc. v. Hiser*, No. 1:09-cv-4307 (S.D.N.Y.);
- *Grant Heilman v. John Wiley & Sons, Inc.*, No. 5:11-cv-01665 (E.D. Penn.);
- *Visuals Unlimited, Inc. v. John Wiley & Sons, Inc.*, No. 1:11-cv-0415 (D.N.H.);
- *Bean v. John Wiley & Sons, Inc.*, No. 3:11-cv-8028 (D. Ariz.);
- *Bean v.  John Wiley & Sons, Inc.*, No. 3:12-cv-8001 (D. Ariz.);
- *DRK Photo v. John Wiley & Sons, Inc.*, No. 3:11-cv-8133 (D. Ariz.);
- *Frerck v. John Wiley & Sons, Inc.*, No. 1:11-cv-2727 (N.D. Ill.); and
- *Cole v. John Wiley & Sons, Inc.*, No. 11-cv-2090 (S.D.N.Y.).

In each action to be resolved thus far, Wiley has admitted infringements, settled claims, or been found to have infringed copyrights on a motion for summary judgment.  *See, e.g.*, *Bean*, No. 3:11-cv-8028, Docket No. 122 (order granting summary judgment against Wiley); *Bean*, 3:12-cv-8001, Docket No. 16 (stipulation for dismissal due to settlement).  In many of these cases, Wiley gave similar explanations for the infringements that Wiley is advancing in this action.  If Wiley wants to advance the same argument here, then testimony regarding infringements, admissions, alleged "clerical errors," and settlements in other divisions and actions is relevant and probative.

If Wiley insists on misleading the jury by contending that the cases in suit are isolated incidents, Psihoyos must be allowed to present evidence that these infringements actually are part of a broad, company-wide practice of malfeasance.

## IV.   WHETHER TESTIMONY WILL BE REPETITIVE OR CUMULATIVE CANNOT BE DETERMINED AT THIS JUNCTURE.

Defendant's Motion concludes with the argument that an unspecified list of Plaintiff's witnesses should not be allowed to testify because their testimony would be cumulative of evidence already in the record.  At this juncture, however, there is no context within which to evaluate Defendant's request and the Court cannot properly consider whether particular testimony would be cumulative at this point.  Since there is no testimony in the record, Defendant's request is premature and must be denied.

Moreover, because the question of willfulness involves multiple factors, Defendant's contention that any evidence bearing on the broad topic of "willfulness" is repetitive or cumulative and thus should be excluded is unpersuasive.  Defendant must show more than evidence merely relates to the same broad topics of liability or damages or willfulness, otherwise the standard would be overly restrictive and prejudicial.  As long as Wiley denies that its conduct

was willful, Plaintiff is entitled to present evidence relevant to that claim.  And because Wiley failed to provide appropriate discovery on this claim, the Court should give Plaintiff broad latitude in presenting evidence and witnesses related to the willfulness inquiry.

Furthermore, Defendant's request relates largely to Plaintiff's "may call" witnesses. Defendant's position ignores that designation of multiple "may call" witnesses on each topic is appropriate and permissible where, as here, it is unclear at this stage whether all witnesses will be available to testify or whether subpoenas may be required, etc.  Also, several witnesses have been designated as "may call" witnesses in the event that Defendant is permitted to raise its (unpleaded, waived, and dubious) license or implied license defenses.  Plaintiff should be given extreme latitude in designating potential witnesses related to a defense that Defendant *did not raise in this action in any pleading* and for which Defendant provided *no discovery*.

In any event, there is no authority for Defendant's request that "Plaintiff should be . . . limited to one witness on each relevant topic on which he wishes to present testimony."  (Def. Mem. at 7.)  Nor does Defendant identify for the Court what would be a "relevant topic" by which the Court could evaluate this request.

## CONLCUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Wiley's Motion *in Limine* in its entirety.


Dated: June 22, 2012
       New York, New York

Respectfully submitted,

NELSON & McCULLOCH LLP

By: _____
Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
The Chrysler Building
405 Lexington Ave., 26th Floor
New York, New York 10174
T: (212) 907-6677
F: (646) 308-1178
dnelson@nelsonmcculloch.com
kmcculloch@nelsonmcculloch.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I, Danial A. Nelson, an attorney, hereby certify that I caused a true and correct copy of the foregoing Memorandum in Opposition to Defendant's Motion *In Limine* to be served via ECF and or electronic mail on all counsel listed below on this 22nd day of June, 2012.


Ashima Aggarwal
Joseph Barker
John Wiley & Sons, Inc.
111 River Street
Hoboken, NJ 07030
aaggarwa@wiley.com
jobarker@wiley.com


Robert Penchina
Christopher P. Beall
LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
321 W. 44th Street, Suite 510
New York, NY 10036
rpenchina@lskslaw.com
cbeall@lskslaw.com


Dated:  June 22, 2012


_____
Danial A. Nelson
NELSON & McCULLOCH LLP
dnelson@nelsonmcculloch.com