# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

LOUIS PSIHOYOS,

      *Plaintiff*,

      v.

JOHN WILEY & SONS, INC.,

      *Defendant*.

Case No. 11-cv-1416 (JPO)

Hon. J. Paul Oetken

ECF Case
Electronically Filed

## PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT'S TRIAL BRIEF

Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
NELSON & McCULLOCH LLP
The Chrysler Building
405 Lexington Ave., 26th Floor
New York, New York 10174
T: (212) 907-6677

*Attorneys for Plaintiff*

June 22, 2012

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. iii

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 3

I.      DEFENDANT'S LICENSE DEFENSE HAS BEEN WAIVED......................................... 3

II.     DEFENDANT'S POSITION THAT IT HAS A "LICENSING AGREEMENT" WITH NGS RELATED TO ALL BOOKS IN THE "VISUALIZING" SERIES IS CONTRARY TO DEFENDANT'S ADMISSIONS. ................................................................................... 6

III.    DEFENDANT'S "COURSE OF CONDUCT" DEFENSE HAS BEEN WAIVED........................................................................................... 7

IV.     DEFENDANT IS PRECLUDED FROM RAISING LICENSE OR COURSE OF CONDUCT ARGUMENTS AT TRIAL DUE TO DISCOVERY ABUSES.................................................................................. 8

V.      DEFENDANT IS ESTOPPED FROM ARGUING THAT THE IMAGES PUBLISHED IN WILEY PUBLICATIONS ARE THE SAME AS THE IMAGES REPRESENTED BY SCIENCE FACTION. .................................... 10

VI.     DEFENDANT'S BRIEF MISSTATES THE RELEVANT STANDARD FOR DETERMINING WILLFULNESS. ......................................................... 13

VII.    UNDER 17 U.S.C. § 504(B), PLAINTIFF IS ENTITLED TO ACTUAL DAMAGES PLUS DEFENDANT'S PROFITS ATTRIBUTABLE TO THE INFRINGEMENTS. ................................................................................ 15

CONCLUSION.................................................................................................. 17

# TABLE OF AUTHORITIES

## CASES

*251 CPW Hous. Ltd. v. Paragon Cable Manhattan*, No. 93-cv-0944, 1995 WL 70675 (S.D.N.Y. Feb. 21, 1995)............................................................10

*AT & T Corp. v. Microsoft Corp.*, No. 01-cv-4872, 2004 WL 188078 (S.D.N.Y. Feb. 2, 2004)...................................................................5

*Bergt v. McDougal Littell*, 661 F. Supp. 2d 916 (N.D. Ill. 2009) ...............................................................................................................17

*Bourne v. Walt Disney Co.*, 68 F.3d 621 (2d Cir. 1995)...............................5

*Bryant v. Media Right Productions, Inc.*, 603 F.3d 135 (2d Cir. 2010) ...............................................................................................................14

*Delman Fabrics Inc. v. Holland Fabrics Inc.*, No. 84-cv-2512, 1985 WL 2571 (S.D.N.Y. Sept. 19, 1985)............................14

*Design Options, Inc. v. BellePointe, Inc.*, 940 F. Supp. 86 (S.D.N.Y. 1996)...............................................................................................5

*Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006)........................9

*Doubleday & Co., Inc. v. Curtis*, 763 F.2d 495 (2d Cir. 1985) ................................................................................................................4, 5

*Ebewo v. Martinez*, 309 F.Supp.2d 600 (S.D.N.Y. 2004) ............................10

*Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172 (S.D.N.Y. 1983)...............................................................................................13

*Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110 (2d Cir.1986)...................................................................................................13

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545 (9th Cir. 1989) ...............................................................................16

*George A. Fuller Co. v. Alexander & Reed, Esqs.*, 760 F. Supp. 381 (S.D.N.Y. 1991)..................................................................5

*I.A.E., Inc. v. Shaver*, 74 F.3d 768 (7th Cir. 1996) .......................................5

*Knitwaves, Inc. v. Lollyogs Ltd.*, 71 F.3d 996 (2d Cir. 1995).....................14

*Lauratex Textile Corp. v. Allton Knitting Mills Inc.*, 519 F.
Supp. 730 (S.D.N.Y. 1981)......................................................................14

*Mackie v. Rieser*, 296 F.3d 909 (9th Cir. 2002)........................................16

*N.A.S. Imp., Corp. v. Chenson Enterprises, Inc.*, 968 F.2d
250 (2d Cir. 1992)..................................................................................13

*Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d
505 (4th Cir. 2002)..................................................................................5

*Oddo v. Ries,* 743 F.2d 630 (9th Cir. 1984) ..............................................5

*On Davis v. The Gap, Inc.*, 246 F.3d 152 (2d Cir. 2001)......................15, 16

*Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700 (9th
Cir. 2004)..............................................................................................16

*Psihoyos v. John Wiley & Sons, Inc*., No. 11-cv1416, 2011
WL 4916299 (S.D.N.Y. Oct. 14, 2011) ...................................................1

*Psihoyos v. Pearson Education, Inc.*, No. 10-cv-5912 (JPO)......................7

*Satchell v. Dilworth*, 745 F.2d 781 (2d Cir.1984) .....................................4

*Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639 (2d Cir.
1988) ......................................................................................................5

*Shapiro, Bernstein & Co. v. Remington Records, Inc.*, 265
F.2d 263 (2d Cir. 1959).........................................................................16

*Stevens v. Aeonian Press, Inc.*, No. 00-cv-6330, 2002 WL
31387224 (S.D.N.Y. Oct. 23, 2002) ......................................................14

*Sygma Photo News, Inc. v. High Society Magazine*, 778
F.2d 89, 95 (2d Cir. 1985).....................................................................16

*Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d
1570 (2d Cir. 1994)...............................................................................4, 6

*Underpinning & Foundation Skanska, Inc. v. Travelers
Cas. & Sur. Co. of Am.*, 726 F. Supp. 2d 339 (S.D.N.Y.
2010) .....................................................................................................10

*Walker v. Forbes, Inc.*, 28 F.3d 409 (4th Cir. 1994)...................................15

*Walt Disney Co. v. Best*, No. 88-cv-1595, 1990 WL 144209
(S.D.N.Y. Sept. 26, 1990)......................................................................14

*William A. Graham Co. v. Haughey*, 568 F.3d 425 (3d Cir. 2009) ............................................................................................................16

*Wu v. Pearson Educ., Inc.*, No. 09-cv-6557 (S.D.N.Y. April 12, 2012) ....................................................................................................14

*Zdanok v. Glidden Co.*, 327 F.2d 944 (2d Cir. 1964) .................................10

**OTHER AUTHORITIES**

Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1278 (2d Ed. 1990) .................................................................6

**FEDERAL STATUTES AND RULES**

17 U.S.C. § 504(b) ..........................................................................16, 17

17 U.S.C. § 504(c) ..................................................................................1

17 U.S.C. § 504(c)(2) ........................................................................2, 15

Fed. R. Civ. P. 26 ..................................................................................11

Fed. R. Civ. P. 37 ..................................................................................11

Fed. R. Civ. P. 37 (b)(2)(ii) ...................................................................11

Fed. R. Civ. P. 37 (c)(1) ........................................................................11

Fed. R. Civ. P. 8 .....................................................................................6

Fed. R. Civ. P. 8(c) .................................................................................6

Fed. R. Civ. P. 8(c)(1) .............................................................................6

Plaintiff Louis Psihoyos ("Plaintiff" or "Psihoyos"), by and through undersigned counsel, hereby submits, pursuant to Your Honor's Individual Practices 6(B)(iii)(c), this response and opposition to the erroneous legal arguments asserted in and underlying the "Trial Brief" (Docket No. 57) filed by Defendant John Wiley & Sons, Inc. ("Defendant" or "Wiley") on June 15, 2012. Also, because Defendant's Trial Brief raises new arguments not raised in this action previously, Plaintiff also submits this memorandum as supplemental support for Plaintiff's previously filed Motion *In Limine* (Docket Nos. 62 & 64.)

## INTRODUCTION

This is an action for copyright infringement brought by Plaintiff Psihoyos, the registered owner of copyrights to the four photographs remaining at issue, against Defendant Wiley for unauthorized uses of those copyrighted photographs.

## Plaintiff's Copyrights

The Court already has found that Plaintiff owns copyrights, and has registered his copyrights with the U.S. Copyright Office, in all four of the images that remain at issue:

(1) "8-foot Long Nesting Dinosaur";

(2) "Enormous Triceratops Skeleton";

(3) "A Collection of Gastroliths"; and

(4) "Fossilized Dinosaur Tracks."

*See Psihoyos v. John Wiley & Sons, Inc*., No. 11-cv1416, 2011 WL 4916299, at *3-4 (S.D.N.Y. Oct. 14, 2011) (Docket No. 47 at 6-9). The Court also already has determined that Plaintiff registered his copyrights prior to Defendant's infringements for all photographs except "Collection of Gastroliths." (Docket No. 47 at 11 ("Accordingly, with the exception of the

Gastroliths photograph, plaintiff may seek statutory damages on all remaining claims."").)
Defendant also stipulates to these findings.  (Docket No. 66 at 8, Nos. 1-5.)

Plaintiff thus is entitled to elect statutory damages under 17 U.S.C. § 504(c) for all claims
except those related to the "Collection of Gastroliths" photo.

## Defendant's Admissions and Stipulations

During discovery, Defendant admitted to numerous unauthorized uses of Plaintiff's
photographs and stipulated to unauthorized copying.  Specifically, Defendant stipulated to
unauthorized copying pertaining to its use of Plaintiff's "Enormous Triceratops Skeleton" photo
in the publications associated with *Physics*, 8th edition.  Defendant also stipulated to
unauthorized copying pertaining to its use of Plaintiff's "8-Foot Long Nesting Dinosaur" photo
in the publications associated with *Visualizing Earth Science*, 1st edition.

The Proposed Pre-Trial Order submitted by the parties confirms these admissions.
Specifically, Defendant stipulates that it "exceeded the terms of its license to use Plaintiff's
"Enormous Triceratops Skeleton" in the publications associated with the *Physics*, 8th edition,
title, by exceeding the authorized print run limit."  (Docket No. 66 at 8, No. 6.)  Defendant also
stipulates that it "did not obtain a license or permission or authorization to copy, publish, and
distribute" Plaintiff's "8-Foot Long Nesting Dinosaur" photo in *Visualizing Earth Science*, 1st
edition.  (*Id.* at 9, No. 7.)

Defendant's liability for these claims is not disputed, and thus only the determination of
damages remains to be tried, including whether Defendant's infringements were willful under
17 U.S.C. § 504(c)(2).

## Remaining Claims

Although Defendant concedes liability on these 2 claims, Defendant's Trial Brief (Docket

No. 57) argues that Defendant now disputes liability on all remaining claims on various grounds. These defenses, however, have been waived because they were never pled in this case and rest on intentional mischaracterizations of the facts.  For these and other reasons, Defendant should be precluded from presenting these defenses to the jury.

Defendant's Trial Brief presents a number of charts that purport to collect the parties' respective positions on the claims that remain at issue.  Unfortunately, Defendant's charts excluded Plaintiff's position and intentionally misconstrue the record.  For instance, Defendant's charts repeatedly claim that permission was granted to use the photos at issue by Science Faction.  But this argument directly conflicts with Defendant's position in moving for summary judgment that these *are not the same photographs* that are represented by Science Faction.  (*See, infra* 11-13.)   Indeed, Ms. Aggarwal's Declaration in support of Defendant's Motion for Summary Judgment presented the Court with side-by-side comparisons of the photos that appeared in Wiley's books and the photos represented by Science Faction to demonstrate the differences between the photos.  (*Id.*)  The Court accepted Defendant's position and ruled that the photos were not the same.  (Docket No. 47 at 6-7.)

And this is but one example of the numerous issues that Defendant's Trial Brief conspicuously ignores.  To clarify the record, attached hereto as **Appendix A** is a more complete, integrated chart that reflects a more balanced statement of the parties' respective positions.

## ARGUMENT

## I.      DEFENDANT'S LICENSE DEFENSE HAS BEEN WAIVED.

Defendant's Trial Brief concedes unauthorized use of Plaintiff's "8-Foot Long Nesting Dinosaur" photo in *Visualizing Earth Science*, 1e.  (Def. Trial Br. at 5 ("Unauthorized use

admitted").)  For all other claims, Defendant now asserts that its use of Plaintiff's photos was authorized under licenses obtained either from Science Faction or National Geographic Society. *See* Pl. App. A; Def. Trial Br. at 3-5.

As Plaintiff's Motion *In Limine* demonstrated, however, this is the first time in this action that Defendant asserts license as a defense to Plaintiff's infringement claims.  None of the three responsive pleadings that Defendant filed in this action included a license (or implied license) defense, either in form or substance.  (*See* Docket Nos. 7, 11, 48.)   Indeed, none of Defendant's pleadings even *mention* National Geographic Society ("NGS"), let alone allege that Defendant purchased a license from NGS that related to Plaintiff's works.  Defendant even failed to plead license as a defense in its Answer to Plaintiff's First Amended Complaint, which Defendant filed over seven months after this action began, over two months after the close of discovery, after summary judgment briefing, and even after Defendant served two separate document subpoenas on NGS.  (*See* Docket No. 48 at 8-9, ¶¶ 54-59.)

Because Defendant failed to plead either license or implied license as affirmative defenses, these defenses have been waived under Fed. R. Civ. P. 8(c) and thus Defendant must be precluded from raising such defenses, in either form or substance, during trial.  Federal Rule of Civil Procedure 8(c) requires a party to "set forth affirmatively" any matter constituting an "avoidance or affirmative defense."  The Second Circuit has held that Rule 8(c) "is intended to notify a party of the existence of certain issues, and its mandatory language has impelled us to conclude that a party's failure to plead an affirmative defense bars its invocation at later stages of the litigation."  *Doubleday & Co., Inc. v. Curtis*, 763 F.2d 495, 503 (2d Cir. 1985) (citing *Satchell v. Dilworth*, 745 F.2d 781, 784 (2d Cir.1984)); *accord Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994) ("The general rule in federal courts is

that a failure to plead an affirmative defense results in a waiver.") (citing *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 n.2 (2d Cir. 1988); 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1278 (2d Ed. 1990)).  Accordingly, any affirmative defense that Defendant did not plead is waived.  *See George A. Fuller Co. v. Alexander & Reed, Esqs.*, 760 F. Supp. 381, 385 (S.D.N.Y. 1991).

Rule 8(c)(1) expressly identifies "license" as an affirmative defense that must be included in a defendant's pleadings.  Fed. R. Civ. P. 8(c)  And courts around the country uniformly have held that both "license" and "implied license" are affirmative defenses to copyright infringement that "must be pleaded pursuant to Fed. R. Civ. P. 8."  *Design Options, Inc. v. BellePointe, Inc.*, 940 F. Supp. 86, 91 (S.D.N.Y. 1996) (citing *Oddo v. Ries,* 743 F.2d 630, 634 & n.6 (9th Cir. 1984)); *AT & T Corp. v. Microsoft Corp.*, No. 01-cv-4872, 2004 WL 188078 (S.D.N.Y. Feb. 2, 2004) (holding defendant "bears the burden of proving the implied license affirmative defense"); *Bourne v. Walt Disney Co*., 68 F.3d 621, 631 (2d Cir. 1995) (noting that burden of proving existence of license is on licensee), cert. denied, 517 U.S. 1240 (1996); *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 514 (4th Cir. 2002) ("The existence of an implied nonexclusive license . . . constitutes an affirmative defense to an allegation of copyright infringement."); *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996) ("the existence of a license, exclusive or nonexclusive, creates an affirmative defense to a claim of copyright infringement").

Allowing Defendant to raise this defense for the first time at trial would run afoul of the notice requirements and procedural safeguards ensured by Rule 8(c).  *See Design Options, Inc.*, 940 F. Supp. at 92 (holding license and implied license defenses were waived where raised for first time on summary judgment briefing) (citing *Doubleday & Co.*, 763 F.2d at 502; *Travellers*

*Int'l*, 41 F.3d at 1580–81).  Defendant's license defense is waived, and thus Defendant cannot raise the issue or introduce evidence in support of the defense at trial.

## II.    DEFENDANT'S POSITION THAT IT HAS A "LICENSING AGREEMENT" WITH NGS RELATED TO ALL BOOKS IN THE "VISUALIZING" SERIES IS CONTRARY TO DEFENDANT'S ADMISSIONS.

In support of this license defense, Defendant's Trial Brief also argues that Wiley has a "separate licensing agreement" with NGS that applies to all "books under the 'Visualizing' imprint."  (Def. Trial Br. at 9 n.3.)  Defendant not only did not plead this as an affirmative defense, Defendant actually *admitted* that numerous uses of Plaintiff's photos in the "Visualizing" series were not covered by any license.  Specifically, in response to Plaintiff's Requests to Admit, Defendant repeatedly admitted that "Defendant never obtained a license" to publish Plaintiff's photographs.  (*See* Defendant's Responses to Plaintiff's First Set of Requests for Admissions (July 5, 2011).)  In particular, Defendant admitted that it "never obtained a license" to publish Plaintiff's photos in either the *Visualizing Psychology* 1e or *Visualizing Earth Science* 1e publications.  (*Id.* at 10, No. 18; at 13, No. 26.)  Both of these "Visualizing" publications presumably would be covered by the same alleged "licensing agreement" with NGS, and yet Defendant *admits* that it "never obtained a license" related to these publications.

Defendant cannot be permitted to reverse course now and argue to the jury that it has a license agreement that covers all books in the "Visualizing" series.  Defendant has offered no evidence that it actually obtained Plaintiff's images from NGS, and Plaintiff has never been permitted the opportunity to conduct any discovery on Wiley's alleged relationship and agreement with NGS.  It would be highly prejudicial to allow Defendant to open the door on this defense for the first time at trial.  Defendant has admitted it did not have a license to cover uses in the "Visualizing" series, and it should be held to that admission.

6

III.    **DEFENDANT'S "COURSE OF CONDUCT" DEFENSE HAS BEEN WAIVED.**

Defendant's Trial Brief also blithely asserts that "[t]he evidence at trial will show that this kind of course of conduct was a common and accepted occurrence between Wiley's photo staff and Science Faction."  (Def. Trial Br. at 8.)  Defendant also asserts that Wiley's obtaining a license after publication was "consistent with the parties' course of conduct and the course of conduct in the industry for decades."  (*Id.* at 3.)

Again, this is the first time in this action that Defendant has ever alleged a "course of conduct" defense.  Because the course of conduct argument is intended to establish a defense to unauthorized use, it is no different than a license or implied license argument and, therefore, must have been expressly pleaded as an affirmative defense.  Defendant's failure to plead this defense results in waiver.

Shockingly, Defendant's Trial Brief cites to this Court's order in *Psihoyos v. Pearson Education, Inc.*, No. 10-cv-5912 (JPO), for the proposition that "if the course of dealing between two parties demonstrates  . . . 'knowledge of, and acquiesce' . . . then it is reasonable not to impose copyright infringement liability when a defendant engages in this practice."  (Def. Trial Br. at 8 (quoting 2012 WL 676352, at *20).)  But this is not at all what the Court said.  The Court actually found:

> [I]f the course of conduct between two parties demonstrates that there was a "meeting of the minds" that the practice of occasionally ***backdating licenses*** was permissible—in other words, if the plaintiff demonstrated "knowledge of, and acquiescence" to ***the practice of backdating licenses***—then it is reasonable not to impose copyright infringement liability when a defendant engages in this practice.

*Psihoyos*, 2012 WL 676352, at *20 (emphasis added).  Unlike the Pearson case, however, there is no suggestion that Science Faction *ever* backdated *any* licenses, let alone that this was a

common course of conduct that such that Wiley could establish a the necessary "meeting of the minds" between the parties.

Moreover, the Court's order in the *Psihoyos* case expressly recognized that in order to evaluate Pearson's "course of dealing" and "implied license" defense, it was "necessary to re-open discovery in order to allow the parties to better develop the evidence on this issue." *Id.* at *26.  In doing so, the Court moved away from Judge Rakoff's prior ruling denying such discovery.  During the status conference on April 11, 2012, Plaintiff's counsel expressly asked the Court to make the same ruling here and re-open discovery to address certain issues that were precluded by Judge Rakoff's July 2011 limiting discovery to only those images and publications identified in the Complaint.   Your Honor denied Plaintiff's request based principally on the fact that Wiley did not assert either an implied license or course of dealing defense, specifically explaining that the additional discovery allowed in the *Pearson* case was not appropriate here because such discovery related to Pearson's implied license defense, which Wiley did not plead. (*See* Docket No. at 16:4-22; 17:11-17.).  Defendant's counsel conceded this distinction.

Wiley's Trial Brief ignores these facts and pretends that there is a "course of conduct" defense in this case.  There isn't, and never has been.  No pleadings ever allege any course of conduct, and no discovery on the parties' course of conduct has ever been permitted.  Wiley cannot be permitted to raise this argument during trial.  It will be highly prejudicial because Plaintiff has not been permitted an opportunity to explore the argument, and it will serve only to confuse the issues and the jury.

## IV.    DEFENDANT IS PRECLUDED FROM RAISING LICENSE OR COURSE OF CONDUCT ARGUMENTS AT TRIAL DUE TO DISCOVERY ABUSES.

In addition to waiver, Defendant must be precluded from introducing any evidence of an alleged license from NGS because Defendant failed to produce such evidence during the course

of discovery.   As Plaintiff's Motion *In Limine* demonstrated, Plaintiff's First Request for

Production of Documents unequivocally requested:

> No. 3.    All documents that Defendant contends authorize Defendant to use any
> of Plaintiff's photographs in any Wiley program, publication, or other
> material.
>
> No. 30.   All documents that Wiley contends authorize it to reproduce or
> otherwise use any of Plaintiffs' photographs.
>
> No. 35.   Documents identifying, demonstrating, or regarding the date and manner
> in which Wiley acquired any of Plaintiff's images.

Despite Plaintiff's request for licensing and acquisition documents, Defendant refused to provide

discovery on these topics and ***did not produce a single document during discovery regarding its***

***alleged relationship with NGS, any alleged license from NGS, or its alleged acquisition of***

***Psihoyos' images from NGS***.   Nor did Defendant provide any discovery on its new "course of

dealing" position.   In fact, when Plaintiff moved to compel discovery on this issue in June 2011,

Defendant vehemently opposed discovery unrelated to the specific images and publications

identified in the Complaint.   (*See* Letter from Ashima Aggarwal to Hon. Jed. S. Rakoff dated

June 13, 2011.)   Indeed, the very notion that Defendant obtained any images from NGS is

contrary to the repeated representations of Defendant's counsel prior to litigation and during

discovery that all images were obtained from Science Faction.   (*See, e.g.*, *id.* at 3 n.3.)

Because Defendant refused to engage in discovery on its alleged its relationship and prior

dealings with NGS or Science Faction, it must be precluded from raising these issues at trial.

*See* Fed. R. Civ. P. 37 (c)(1); (b)(2)(ii) ("prohibiting the disobedient party from supporting or

opposing designated claims or defenses, or from introducing designated matters in evidence");

*Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006) ("a 'bad-faith' violation of the

Rule 26 is not required in order to exclude evidence pursuant to Rule 37"); *Ebewo v. Martinez*,

9

309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004) ("The purpose of the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence."); *Underpinning & Foundation Skanska, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 726 F. Supp. 2d 339, 348-49 (S.D.N.Y. 2010). Exclusion of this defense and evidence is warranted even if it would require a finding of liability against Defendant. *See 251 CPW Hous. Ltd. v. Paragon Cable Manhattan*, No. 93-cv-0944, 1995 WL 70675, at *4-5 (S.D.N.Y. Feb. 21, 1995).

## V.   DEFENDANT IS ESTOPPED FROM ARGUING THAT THE IMAGES PUBLISHED IN WILEY PUBLICATIONS ARE THE SAME AS THE IMAGES REPRESENTED BY SCIENCE FACTION.

Defendant also must be precluded from relying on any alleged license agreements with Science Faction related to the "8-Foot Long Nesting Dinosaur" or "Fossilized Dinosaur Tracks" because Defendant already has taken the position in this litigation that these two photos represented by Science Faction are "***not the same photographs***" that Wiley in fact published in the books at issue. The Court accepted this argument (*see* Docket No. 47 at 6-7) and thus this finding is now law of the case. *See Zdanok v. Glidden Co*., 327 F.2d 944, 953 (2d Cir. 1964) ("Where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."). As Your Honor advised the parties: "I take the rulings of the prior judge to be the law of the case." (Docket No. 55 at 13:15-16.)

Specifically, Defendant's memorandum of law in support of its Motion for Summary Judgment expressly argued that "the [8-Foot Long Nesting Dinosaur] photo published by Wiley in the books listed here ***is different from*** the photo registered by Science Faction in 2009 in the name of Psihoyos in copyright registration VA 1-659-154." (Docket No. 27 at 5 (emphasis added).) But the image registered by Science Faction under VA 1-659-154 ("scf4399-095") is the same image identified on the alleged invoice on which Wiley now seeks to rely. In fact, the

declaration submitted by Ashima Aggarwal included the following side-by-side comparison of the images intended to demonstrate that the image used by Wiley is different from the Science Faction image:

Copy of "8-foot long nesting dinosaur wrapped around at least 20 eggs" in Wiley books:



Copy of "Oviraptor Fossil Still protects Clutch of Eggs" in Science Faction's 2006 publication of Psihoyos photos, referenced in copyright registration VA 1-659-154:



Aggarwal Aug. 17, 2011 Decl. at 7, ¶ 24, Ex. 16 (Docket No. 31-18).

Wiley cannot have it both ways. If Wiley did not obtain the image from Science Faction and did not publish the Science Faction image identified on the license, then it cannot claim this license provides any usage rights pertaining to the image actually published by Wiley. As Charlie Sliwoski, Science Faction's Vice President of Editing & Production, previously explained in his August 31, 2011 affidavit:

I am aware that Ms. Aggarwal contends in her declaration that the photograph that Wiley used in its publications, including the pages attached as Exhibits 5 and 6 to her declaration, is not the same photograph identified by Science Faction as Image scf4399-095, for which Wiley sought a license from Science Faction. ***If that is true, then Wiley did not use the image identified in the license that Wiley purchased from Science Faction.***

(Docket No. 36 at 5, ¶ 21 (emphasis added).)

The same rationale precludes Wiley from relying on any Science Faction license related to the "Fossilized Dinosaur Tracks" photo because Wiley again argued that "[t]he version of the ["Fossilized Dinosaur Tracks"] photo that appears in plaintiff's book, however, is not the same version that appears in Wiley's publication."  (Docket No. 27 at 5.)  This argument, once again, was based on a side-by-side comparison of the photos supplied by Ms. Aggarwal:

Photo of "Fossilized dinosaur tracks" in Wiley books, with enlarged detail:




Photo in *Hunting Dinosaurs*, with enlarged detail:




Aggarwal Aug. 17, 2011 Decl. at 6, ¶ 18, Ex. 11 (Docket No. 31-13).  Mr. Sliwoski thus reached

the same conclusion with respect to this photo:

> I am aware that Ms. Aggarwal contends in her declaration that the ["Fossilized Dinosaur Tracks"] photograph that Wiley used in its publications, including the pages attached as Exhibits 5 and 6 to her declaration, is not the same photograph identified by Science Faction as Image scf4399-070, for which Wiley sought a license from Science Faction.  *If that is true, then Wiley did not use the image identified in the license that Wiley purchased from Science Faction*.

(Docket No. 36 at 6, ¶ 27 (emphasis added).)

Because Defendant already has taken the position that the images it published are not the

same as the Science Faction images (and *prevailed on that argument* to Plaintiff's detriment),

Defendant is precluded from taking a contrary position at this subsequent stage of the litigation.

## VI.   DEFENDANT'S BRIEF MISSTATES THE RELEVANT STANDARD FOR DETERMINING WILLFULNESS.

Defendant's Trial Brief misstates the relevant standard for determining willfulness under

17 U.S.C. §504(c)(2).  Contrary to Defendant's argument, Plaintiff is entitled to present evidence

demonstrating Wiley's pattern and practice of infringements as such evidence is relevant to

establishing whether Wiley acted with "reckless disregard" for Plaintiff's copyrights and whether

Wiley had constructive knowledge that its conduct was infringing.

Determining whether Defendant's infringements were "willful" for purposes of 17 U.S.C.

§ 504(c)(2) requires the jury to consider whether Defendant either acted "recklessly" or had

"actual or constructive knowledge" that its actions constituted an infringement.  *See Fitzgerald

Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1115 (2d Cir.1986).  Willfulness "need not be

proven directly but may be inferred from the defendant's conduct."  *N.A.S. Imp., Corp. v.

Chenson Enterprises, Inc.*, 968 F.2d 250, 252 (2d Cir. 1992) (citing *Fallaci v. New Gazette

Literary Corp.*, 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983)).  Contrary to Defendant's suggestion,

there in fact are numerous factors relevant to this determination, including:  (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the infringements; and (6) the conduct and attitude of the parties.  *See Bryant v. Media Right Productions, Inc.*, 603 F.3d 135, 144 (2d Cir. 2010) (citing *N.A.S. Import Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250, 252-53 (2d Cir. 1992).

In light of these factors, this Court consistently has held that evidence of a defendant's past conduct, including prior settlement of similar claims, is evidence relevant to willfulness. *See, e.g.*, *Wu v. Pearson Educ., Inc.*, No. 09-cv-6557 (KBF) (JCF), Docket No. 136, at 2-3 (S.D.N.Y. April 12, 2012) ("Settlement of similar claims has consistently been found to be evidence of willfulness in copyright infringement actions) (citing *Stevens v. Aeonian Press, Inc.*, No. 00-cv-6330, 2002 WL 31387224, at *3 (S.D.N.Y. Oct. 23, 2002); *Walt Disney Co. v. Best*, No. 88-cv-1595, 1990 WL 144209, at *2 (S.D.N.Y. Sept. 26, 1990); *Delman Fabrics Inc. v. Holland Fabrics Inc.*, No. 84-cv-2512, 1985 WL 2571, at *6 n.4 (S.D.N.Y. Sept. 19, 1985); *Lauratex Textile Corp. v. Allton Knitting Mills Inc.*, 519 F. Supp. 730, 733 (S.D.N.Y. 1981)).

Accordingly, it is not necessary to show that the Defendant acted in "bad faith."  Rather, establishing a pattern of infringement is enough to show "reckless disregard" for third party copyirghts.  *See Knitwaves, Inc. v. Lollyogs Ltd.*, 71 F.3d 996, 1010 (2d Cir. 1995).   Indeed, Judge Rakoff already reached this conclusion in denying Wiley summary judgment on this point:

> Here, plaintiff has pointed to an arguable pattern of knowing and continued infringing publication on the part of defendant.  Accordingly, plaintiff argues, there is a genuine dispute of material fact on whether defendant acted willfully. The court agrees, and therefore denies defendant's motion for summary judgment on the issue of willfullness.

(Docket No. 47 at 13.)  Indeed, if Plaintiff demonstrates a sufficient number of infringements, the jury should be instructed that Plaintiff has established a "habit" of infringement and is entitled to a finding of willfulness as a matter of law.

**VII.   UNDER 17 U.S.C. § 504(B), PLAINTIFF IS ENTITLED TO ACTUAL DAMAGES PLUS DEFENDANT'S PROFITS ATTRIBUTABLE TO THE INFRINGEMENTS.**

The Court previously determined that Plaintiff cannot seek statutory damages for any claims related to his "Collection of Gastroliths" photo.  Nevertheless, under 17 U.S.C. § 504(b), Psihoyos still is entitled to recover two categories of compensatory damages:  (1) his actual damages suffered as a result of the infringement; and (2) any profits of Wiley that are attributable to the infringement.  *See* 17 U.S.C. § 504(b); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 160 (2d Cir. 2001) (Section 504(b) includes "two categories of compensatory damages" that must be considered separately):  *Walker v. Forbes, Inc.*, 28 F.3d 409, 412 (4th Cir. 1994) ("the damages awarded under § 504(b) can be stated as plaintiff's loss plus defendant's gain").  Psihoyos is entitled to recover Defendant's profits attributable to the infringement because the law does not permit an infringer to benefit from taking and using someone else's intellectual property without their consent. *On Davis*, 246 F.3d at 160 ("If the infringer has earned a profit, this award makes him disgorge the profit to insure that he not benefit from his wrongdoing.");  *Walker*, 28 F.3d at 412 ("By stripping the infringer not only of the licensing fee but also of the profit generated as a result of the use of the infringed item, the law makes clear that there is no gain to be made from taking someone else's intellectual property without their consent.").

Ignoring this controlling law, Defendant blithely asserts that Plaintiff is not entitled to a disgorgement of its ill-gotten profits because none of those profits are attributable to the infringements.  As "[c]ourts and commentators agree," however, the damages analysis under Section 504(b) "should be broadly construed to favor victims of infringement."  *On Davis*, 246

F.3d at 164; *Sygma Photo News, Inc. v. High Society Magazine*, 778 F.2d 89, 95 (2d Cir. 1985) (explaining that when courts are confronted with imprecision in calculating damages, they "should err on the side of guaranteeing the plaintiff a full recovery"); *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1549 (9th Cir. 1989) (holding that "the benefit of the doubt must always be given to the plaintiff, not the defendant"). Therefore, in addition to his lost license fees, Plaintiff also is entitled to a disgorgement of all Defendants' profits attributable to the infringements at issue here. *On Davis*, 246 F.3d at 160.

In establishing Defendants' profits, Plaintiff is required to prove only Defendants' "gross revenue" from the books at issue, at which point the burden shifts to Defendants to prove (i) the elements of costs that can be deducted from their gross revenue figures; and (ii) whether any portion of the profits are attributable to factors other than the use of Plaintiff's works. *See* 17 U.S.C. § 504(b). In conducting this inquiry, any doubt as to the computation of costs or profits is to be resolved in favor of Plaintiff. *Shapiro, Bernstein & Co. v. Remington Records, Inc.*, 265 F.2d 263 (2d Cir. 1959).

The only requirement is that the plaintiff establish "the existence of a causal link" to establish that profits may be recovered. *See Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002). Therefore, Plaintiff must demonstrate *only* that Wiley's revenue "bear[s] a legally significant relationship to the infringement," he will not be required "to separate the gross profits resulting from the infringement from the profits resulting from other sources." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711-12 (9th Cir. 2004); *On Davis*, 246 F.3d at 160 (requiring plaintiff to show only that indirect profits are "reasonably related to the infringement"); *William A. Graham Co. v. Haughey*, 568 F.3d 425, 443 (3d Cir. 2009) (finding causal connection satisfied for all commissions earned from clients to which defendant provided infringing

proposals).   In this precise context, courts already have held that publishing an image in a textbook provides the necessary causal nexus to entitle the plaintiff to recover the defendant's profits.   *See, e.g.*, *Bergt v. McDougal Littell*, 661 F. Supp. 2d 916, 928-29 (N.D. Ill. 2009) (plaintiff need only establish the gross revenue from book sales including unauthorized copy of one photo in voluminous book).   As in these other textbook case reaching the same conclusion, the fact that Defendant pays significant fees to license third-party photographs in its textbooks, and that for its "Visualizing" series, it pays National Geographic royalties of a minimum of a million dollars for photographic content, will easily establish a nexus between the inclusion of world-class photographs in its text books and the sales of those books.

Given this causal link, Plaintiff need only put on evidence of Wiley's gross revenue, at which point Defendant bears the burden to show that its profits are attributable to any other factors.   Nevertheless, Defendant failed to provide *any discovery* on this point.   In fact, the only evidence in the record on this point plainly establishes that the "Visualizing" series was designed to emphasize visual works and photographs precisely because Wiley determined that the use of photographs was more appealing to its prospective clients.   If Defendant is not able to sufficiently distinguish the source of its sales and profits, then "[a]ny doubt as to the computation of costs or profits is to be resolved in favor of the plaintiff."   *Frank Music*, 772 F.2d at 514.

## CONCLUSION

Defendant does not dispute that Plaintiff created and owns the photographs used in the publications at issue in this action.   For two of the claims at issue, Defendant admits to using Plaintiff's images without a license or beyond the scope of its putative licenses and stipulates to "unauthorized copying."    For all remaining claims, Defendant contends that its use was permitted by either "license" or under an implied license created by the parties' "course of

conduct."  Defendant, however, failed to plead these affirmative defenses and thus they are waived.  Defendant also refused to provide discovery on these issues and thus cannot be permitted to raise these arguments at trial.  In fact, Defendant expressly argued to this Court that the images it published in the publications at issue in this case are *not the same photos* as the images represented by Science Faction.  Wiley thus cannot find any comfort in the invoices from Science Faction that its previously casted off as irrelevant. Wiley also expressly admitted to not having a license to use Plaintiff's images in the "Visualizing" series, and thus it cannot now claim that Wiley and NGS have some overarching "licensing agreement" that now provides a defense in this action.

The only issues that remain to be tried relate to damages.   Because Wiley has a long and disturbing practice of infringing copyrights—and has settled numerous such claims in identical circumstances—Plaintiff easily will show that Defendant acted with reckless disregard for his copyrights and the jury will be entitled to infer from Wiley's prior infringements that it has the requisite constructive knowledge to establish willfulness here.  For the only photo for which Psihoyos cannot seek statutory damages, he is entitled to both his actual damages and Wiley's profits attributable to the infringement.  Wiley's attempt to escape disgorgement of its profits is unavailing.


Dated: June 22, 2012
       New York, New York

                                        Respectfully submitted,

                                        NELSON & McCULLOCH LLP


                          By:  _____

18

Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
The Chrysler Building
405 Lexington Ave., 26th Floor
New York, New York 10174
T: (212) 907-6677
F: (646) 308-1178
dnelson@nelsonmcculloch.com
kmcculloch@nelsonmcculloch.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I, Danial A. Nelson, an attorney, hereby certify that I caused a true and correct copy of

the foregoing Memorandum to be served via ECF and/or electronic mail on all counsel listed

below on this 22nd day of June, 2012.


Ashima Aggarwal
Joseph Barker
John Wiley & Sons, Inc.
111 River Street
Hoboken, NJ 07030
aaggarwa@wiley.com
jobarker@wiley.com


Robert Penchina
Christopher P. Beall
LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
321 W. 44th Street, Suite 510
New York, NY 10036
rpenchina@lskslaw.com
cbeall@lskslaw.com


Dated:  June 22, 2012


_____
Danial A. Nelson
NELSON & McCULLOCH LLP
dnelson@nelsonmcculloch.com