**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

LOUIS PSIHOYOS,

      *Plaintiff*,

 v.

JOHN WILEY & SONS, INC.,

      *Defendant*.

Case No. 11-cv-1416 (JPO)

Hon. J. Paul Oetken

ECF Case
Electronically Filed

**PLAINTIFF'S MOTION FOR AWARD OF FEES AND COSTS**
**PURSUANT TO 17 U.S.C. § 505**

Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
NELSON & McCULLOCH LLP
The Chrysler Building
405 Lexington Ave., 26th Floor
New York, New York 10174
T: (212) 907-6677

*Attorneys for Plaintiff*

August 6, 2012

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................II

INTRODUCTION ............................................................................................................... 1

I.      STANDARD FOR AWARDING FEES AND COSTS UNDER 17
        U.S.C. § 505............................................................................................................ 2

II.     WILEY'S       LITIGATION       POSITIONS       WERE
        UNREASONABLE. ................................................................................................ 3

        A.      The Jury's Finding of Liability Related to Wiley's Use of
                Plaintiff's "Fossilized Dinosaur Tracks" Photo Shows
                Wiley's Position Was Unreasonable........................................................... 3

        B.      The Jury's Finding of Willfulness Related to Wiley's
                Unauthorized Use of Plaintiff's "Enormous Triceratops
                Skeleton" and "8-Foot Long Nesting Dinosaur" Photos
                Demonstrates Wiley's Position Was Unreasonable..................................... 4

III.    PLAINTIFF IS ENTITLED TO AN AWARD OF HIS FULL
        FEES. ...................................................................................................................... 5

IV.     WILEY'S CONDUCT WARRANTS AN AWARD OF FEES. ....................................... 6

        A.      Wiley Continues To Withhold Information Regarding
                Psihoyos' Photos. ....................................................................................... 6

        B.      Wiley's Counsel Withheld Relevant Documents During
                Discovery. .................................................................................................. 9

        C.      An Award of Fees Is Warranted In Light of Wiley's
                Settlement Conduct.................................................................................... 11

V.      A FULL AWARD OF FEES IS NECESSARY TO FULFILL THE
        FUNDAMENTAL PRINCIPLES OF THE COPYRIGHT ACT.................................... 12

VI.     PLAINTIFF'S FEE REQUEST IS REASONABLE....................................................... 14

CONLCUSION.................................................................................................................. 16

## TABLE OF AUTHORITIES

CASES

*Alderman v. Pan Am World Airways*, 169 F.3d 99 (2d
    Cir.1999) .................................................................................................... 2

*Antonmarchi v. Consol. Edison Co. of New York, Inc.*, No.
    03-cv-7735, 2012 WL 3126004 (S.D.N.Y. July 31,
    2012) ........................................................................................................ 15

*Diamond v. Am-Law Publ'g Corp.*, 745 F.2d 142 (2d Cir.
    1984) .......................................................................................................... 3

*Dominic v. Consolidated Edison Co.*, 822 F.2d 1249 (2d
    Cir. 1987) ................................................................................................... 6

*Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663
    (S.D.N.Y. 2001) ........................................................................................ 14

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ........................................................ 2, 12

*Getty Images (US), Inc. v. Advernet, Inc.*, 797 F. Supp. 2d
    399 (S.D.N.Y.  2011) ................................................................................. 8

*Harris Custom Builders, Inc. v. Hoffmeyer*, 140 F.3d 728
    (7th Cir. 1998).......................................................................................... 6

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ........................................................... 2, 6

*Hickman v. Taylor*, 329 U.S. 495 (1994).............................................................. 10

*Marchisotto v. City of New York*, No. 05-cv-2699, 2009
    WL 2229695 (S.D.N.Y. July 27, 2009) .................................................... 15

*Matthew Bender & Co., Inc. v. W. Pub. Co.*, 240 F.3d 116
    (2d Cir. 2001).......................................................................................... 2, 3, 6

*Matthews v. Freedman*, 157 F.3d 25 (1st Cir.1998) .................................................. 3

*McCann v. Coughlin*, 698 F.2d 112 (2d Cir. 1983) .................................................. 5

*Mitek Holdings, Inc. v. Arce Eng'g Co.*, 198 F.3d 840 (11th
    Cir. 1999) ................................................................................................. 3

*N.A.S. Import Corp. v. Chenson Enterprises, Inc.*, 968 F.2d
    250 (2d Cir. 1992)..................................................................................... 14

*New York State Ass'n for Retarded Children, Inc. v. Carey*,
711 F.2d 1136 (2d Cir. 1983)........................................................................ 14

*Rozell v. Ross–Hoist*, 576 F. Supp. 2d 527 (S.D.N.Y.2008)........................................... 15

*Ruggiero v. Krzeminski*, 928 F.2d 558 (2d Cir. 1991) .................................................... 2

*Screenlife Establishment v. Tower Video, Inc.*, 868 F. Supp.
47 (S.D.N.Y. 1994) ...................................................................................... 14

*Wu v. Pearson Educ., Inc.*, 277 F.R.D. 255 (S.D.N.Y. 2011) ........................................ 15

## OTHER AUTHORITIES

4 Melville B. Nimmer & David Nimmer, Nimmer on
Copyright § 14.10[D][1])................................................................................ 6

## FEDERAL STATUTES AND RULES

17 U.S.C. § 504(c) ............................................................................................... 4

17 U.S.C. § 505 ...................................................................................... *passim*

Plaintiff Louis Psihoyos ("Plaintiff" or "Psihoyos"), by and through undersigned counsel, hereby moves this Court, pursuant to 17 U.S.C. § 505, for an award of his full costs and attorneys' fees from Defendant John Wiley & Sons, Inc.'s ("Defendant" or "Wiley").

## INTRODUCTION

Plaintiff demanded information of the usages at issue in this case on November 2, 2010. Defendant admitted the infringements at issue on December 16, 2010.

Plaintiff filed this action on March 1, 2011.  Well over a year later, on July 24, 2012, this action proceeded to jury trial on four claims of copyright infringement relating to photographs owned by Plaintiff.  After five days of testimony and a day of deliberation, the jury returned a verdict finding Defendant was liable for willful copyright infringement on two of the four claims at issue, liable for non-willful infringement on a third claim, and not liable on only one claim. The jury returned a verdict awarding Plaintiff $130,750.00 in statutory damages. The jury's award of damages is more than 6 times the total amount offered by Defendant (even including attorney's fees and costs) for the claims that went to trial.

Following the verdict, Plaintiff made an oral motion for attorneys' fees and costs.  The Court indicated that it would award fees, but requested briefing on the issue.

As the prevailing party, Plaintiff is entitled to a full compensatory award of his costs and attorneys' fees incurred in this action under 17 U.S.C. § 505.  An award of Plaintiff's full costs and fees is crucial to fulfilling the purposes of the Copyright Act and vindicating Plaintiff's rights.  A full award of fees is particularly appropriate in this case, where defense counsel argued to the jury that the Court could shift fees, in hopes of inducing a smaller award by discouraging the jury to compensate Plaintiff for his costs.  Defendant then shifted gears and suggested to the Court that the scope of the verdict was a factor in determining if awarding fees is appropriate. An award of full fees is essential to promoting the interests of the Copyright Act on these facts.

I.      STANDARD FOR AWARDING FEES AND COSTS UNDER 17 U.S.C. § 505.

The Copyright Act provides that "the [district] court in its discretion may allow the recovery of full costs . . . [and] may also award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505.  In order to be deemed a "prevailing party" under Section 505, the party must succeed "on a significant issue in the litigation that achieves some of the benefits the party sought in bringing suit."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Ruggiero v. Krzeminski*, 928 F.2d 558, 564 (2d Cir. 1991).

In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), the Supreme Court noted that "[t]here is no precise rule or formula for making [attorneys' fees] determinations, but instead equitable discretion should be exercised."  *Id.* at 534 (internal quotation marks omitted).  The Court then proceeded to list several *nonexclusive* factors that courts could consider when exercising this discretion, namely, "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Id.* at 534 n.19 (internal quotation marks omitted).  The Second Circuit has endorsed these same nonexclusive factors, including the objective reasonableness and compensation/deterrence components.  *See, e.g.*, *Matthew Bender & Co., Inc. v. W. Pub. Co.*, 240 F.3d 116, 121 (2d Cir. 2001).

The Court of Appeals also has made clear that any review of the "award of attorney's fees is highly deferential to the district court."  *Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir.1999) (internal quotation marks omitted).  The Supreme Court has cautioned, however, that any review of a request for fees must remain "faithful to the purposes of the Copyright Act."  *Fogerty*, 510 U.S. at 534 n.19.  The Second Circuit has clarified that the "principle purpose of the [Copyright Act] is to encourage the origination of creative works by attaching enforceable property rights to them."  *Diamond v. Am-Law Publ'g Corp.*, 745 F.2d

2

142, 147 (2d Cir. 1984).   Consequently, the courts determination as to whether to award the

prevailing party its fees should seek to "encourage[e] the raising of objectively reasonable claims

and defenses, which may serve not only to deter infringement but also to ensure 'that the

boundaries of copyright law [are] demarcated as clearly as possible' in order to maximize the

public exposure to valuable works." *Mitek Holdings, Inc. v. Arce Eng'g Co.*, 198 F.3d 840, 842-

43 (11th Cir. 1999) (quoting *Fogerty*, 510 U.S. at 526-27).   Therefore, even if Defendant's

litigation position was objectively reasonable Plaintiff still is entitled to an award of fees if other

factors justify such an award, including "considerations of compensation and deterrence." *See

Matthew Bender*, 240 F.3d at 122 (citing *Matthews v. Freedman*, 157 F.3d 25, 29 (1st Cir.1998)).

## II.   WILEY'S LITIGATION POSITIONS WERE UNREASONABLE.

### A.   The Jury's Finding of Liability Related to Wiley's Use of Plaintiff's "Fossilized Dinosaur Tracks" Photo Shows Wiley's Position Was Unreasonable.

During this litigation, Wiley sought to dismiss Plaintiff's claims related to the "Fossilized

Dinosaur Tracks" photos based entirely on the Wiley's position that the images that Wiley used

in its publications "are different from" and "are not the same photos" as the images that Plaintiff

identified in the Complaint.   *See* Dkt No. 27 (Def. Motion for Summary Judgment) at 3; Dkt.

No. 31 (Aggarwal Decl.) at ¶ 15.   The Court agreed with Wiley's position that the photos were in

fact different, but held that Plaintiff's claims could proceed because the images published by

Wiley were registered under separate copyright registrations.   Dkt. No. 47 at 7.

Despite the Court's ruling, Defendant continued to argue that it obtained valid copyright

licenses from Science Faction even though Wiley knew full well that it did not obtain the photos

from Science Faction and that the photos actually published were literally different photos than

those licensed by Science Faction.   During arguments to the Court involving this issue, Wiley's

counsel refused to accept Judge Rakoff's findings as law of the case, and even confusingly

argued that Plaintiff had prevailed on the question of whether the photos published by Wiley in fact were different photos.  Wiley's position was objectively unreasonable.  Indeed, after repeated arguments on this issue, the Court finally agreed with Plaintiff's position that the Science Faction invoices related to the "Fossilized Dinosaur Tracks" photo were in fact different photos and did not correspond to the images identified in the Science Faction invoices, although the Court did allow Wiley to present its (unpled and waived) "implied license" argument to the jury on the liability question.  After considering Wiley's (unpled and waived) implied license argument, the jury held that Wiley was liable for unauthorized copying of this photo.

In other words, both the Court and the jury ultimately agreed with Plaintiff's position that Wiley did not obtain a valid license, either express or implied, to use this photo.  Wiley's year-long battle contesting liability on the unauthorized use of this photo was unreasonable.

**B.      The Jury's Finding of Willfulness Related to Wiley's Unauthorized Use of Plaintiff's "Enormous Triceratops Skeleton" and "8-Foot Long Nesting Dinosaur" Photos Demonstrates Wiley's Position Was Unreasonable.**

In August of 2011, Defendant moved this Court for summary judgment on the question of whether Wiley's misconduct rose to the level of willful infringement under 17 U.S.C. § 504(c).  *See* Dkt No. 27 at 18-20.  The basis for Wiley's motion was that its unauthorized use of Plaintiff's photographs and its exceeding license limitations was merely an isolated incident that resulted from a mere "administrative error" and that Wiley immediately took steps to remove Plaintiff's photos from the infringing books.  *Id.* at 20.  The evidence is overwhelming that these arguments were objectively unreasonable.  After five days of testimony, the jury returned a verdict finding Wiley's conduct was willful for two of the four claims at issue.

Among other evidence presented during trial, Wiley's witnesses also admitted that Wiley made no effort to quarantine publications even after Wiley had actual knowledge that they contained unlicensed images.  Indeed, multiple witnesses admitted that Wiley made the

4

intentional business decision to continue to sell remaining inventory and even to bind previously printed "book block" versions of the subject books that included Plaintiff's photos during the course of this litigation even after having actual knowledge that the books included unauthorized photos.  The evidence also showed that it was Wiley's policy to cap permission requests at 100,000 units regardless of whether the previous editions of the same title had sold more units or whether Wiley projected higher sales for the publication.   Wiley's witnesses also admitted that its inventory department never had a license compliance program, and that its inventory department manager operated independent of any license restrictions for over 20 years.

The evidence presented at trial conclusively demonstrated that Wiley's using Plaintiff's photos without permission and exceeding license restrictions was part of a larger practice that resulted from systemic deficiencies in Wiley's copyright compliance system.  The finding of willfulness vindicates Plaintiff's position that Wiley's conduct rose to the level of reckless disregard and resulted from systemic flaws and deficiencies in Wiley's licensing practices.

This was the crucial issue in this litigation and the most important issue at trial.  The jury not only returned a verdict finding Wiley's conduct was willful, but also awarded Plaintiff $130,000.00 in damages related to these two photos.  There could be no clearer sign that the jury found Wiley's litigation position to be objectively unreasonable.

## III.    PLAINTIFF IS ENTITLED TO AN AWARD OF HIS FULL FEES.

Presumably, Wiley intends to argue that any award of fees should be offset or reduced in some way, including due to the fact that Wiley was found not liable for 1 of the 4 claims at trial. Adjusting a fee award, however, is appropriate only where "claims are separable," *McCann v. Coughlin*, 698 F.2d 112, 130 (2d Cir. 1983), which is not the case here.  Conversely, "when a plaintiff's claims for relief 'involve a common core of facts or [are] based on related legal theories,' the 'lawsuit cannot be viewed as a series of discrete claims.'"   *Dominic v.*

*Consolidated Edison Co.*, 822 F.2d 1249, 1259 (2d Cir. 1987) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).

As in *Dominic*, Plaintiff's claims obviously involved a "common core of facts" and thus a "fully compensatory fee award [is] justified." *Id.* Plaintiff's prevailing on the crucial issues of liability related to the "Fossilized Dinosaur Tracks" photos and the willfulness issue related to the "Triceratops" and "8-Foot Long Nesting Dinosaur" photos warrants a full award of costs and fees. There is no basis for an offset or reduction in fees or costs based on Wiley's prevailing on only 1 issue at trial. This is particularly true in this context because the issue on which Wiley prevailed unquestionably was the most insignificant issue at trial.

## IV.   WILEY'S CONDUCT WARRANTS AN AWARD OF FEES.

A party's conduct prior to and during litigation also can justify an award of attorney's fees. *See Matthew Bender*, 240 F.3d at 124-25 (citing *Harris Custom Builders, Inc. v. Hoffmeyer*, 140 F.3d 728, 731 (7th Cir. 1998); 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.10[D][1]).

### A.   Wiley Continues To Withhold Information Regarding Psihoyos' Photos.

Defendant first disclosed unlicensed uses of Plaintiff's photos in an e-mail dated November 2, 2010. This disclosure, however, was incomplete and failed to advise Psihoyos of any uses other than the "William Dement" photos. Wiley's disclosure thus ignored all uses (whether authorized or infringing) relating to multiple photographs in dozens of publications. Wiley's witnesses conceded that, if it were not for undersigned counsel's follow-up demand for information, the infringements at issue here would never have been disclosed by Defendant. *See* Dkt. No. 38 at Ex. 30 (Newman Dep.) at 152:24—153:16 ("Q.  [Unpermissioned uses] never would have been [identified] if I hadn't written you a letter?   A. Right. We're really sorry. I mean, you know, I mean, I'm glad you caught -- you -- you -- you alerted us, but I'm sorry.").

6

Plaintiff responded to Wiley's November 2, 2010 e-mail by demanding a full disclosure of Wiley's use of all of Psihoyos' photos.  McCulloch Decl. Ex. 1.  On December 16, 2010, Maria Danzillo, in-house counsel for Wiley, disclosed numerous unlicensed and infringing uses of Plaintiff's photos.  *Id.* Ex. 2.  Wiley's response letter purported to be a full disclosure of Wiley's uses of "all" Psihoyos' photos, stating that the information being provided related to "all uses we were able to identify of photographs by Mr. Psihoyos in Wiley publications."  *Id.* at 1.

During this litigation, Wiley continued to maintain this farce.  For instance, during the settlement conference before Magistrate Judge Katz, Ashima Aggarwal, in-house counsel for Wiley, again represented that the December 2010 letters included a full disclosure of Wiley's use of all of Psihoyos' photos.  And Hilary Newman, the Manager of Wiley's Photo Department, testified at trial that Wiley had disclosed all uses of Psihoyos photographs, only to later concede the inaccuracy of that claim.

Wiley's contention that it disclosed the full scope of its uses of all Psihoyos' photos is demonstrably false.  Not only did Wiley fail to disclose the complete usage of the photographs identified on December 16, it also concealed information regarding dozens of other photographs owned by Plaintiff that it obtained from his other agents—many of which Plaintiff were even *published in some of the same publications at issue in this action*, as was demonstrated during trial.

The evidence offered at trial indicates that Wiley intentionally did not disclose the uses of any of Psihoyos' photos licensed through Corbis or Getty Images because Wiley is in the process of negotiating a settlement with Getty Images, and thus Wiley hoped to secure a release from Plaintiff's agents without his knowledge.  This is shocking given that Psihoyos' photo collection is no longer represented by Getty Images, not to mention that the distribution agreement between Science Faction and Getty Images does not give Getty Images authority to settle copyright

claims for Psihoyos.  In fact, the agreement with Getty Images is *nonexclusive* and thus, as this Court recently ruled in a copyright suit brought by Getty Images, does not give Getty Images any authority to pursue or resolve such claims.  *See Getty Images (US), Inc. v. Advernet, Inc.*, 797 F. Supp. 2d 399 (S.D.N.Y.  2011).

After discovering these secret negotiations, undersigned counsel immediately notified Getty Images that Psihoyos rejects Getty Images' efforts to compromise or resolve any claims on his behalf.  McCulloch Decl. Ex. 3.  We also reiterated our demand that Wiley provide a full disclosure of information related to Psihoyos' photos.  *Id.*

Wiley's effort to conceal this information from Psihoyos also appears intended to prejudice Psihoyos' claims related to these photos.  In moving for summary judgment, Wiley argued to this Court that infringement claims accrued on the date of publication, not the date of discovery of the unauthorized use.  *See* Dkt. No. 27 at 17.  The Court properly rejected this argument and held that the discovery rule applies to infringement claims.  *See* Dkt. No. 47 at 11. If it were not for the discovery rule, however, Psihoyos and other copyright holders could not possibly vindicate their copyrights and pursue claims against Wiley where Wiley successfully concealed its misconduct long enough.  Because information regarding Wiley's infringements remains in Wiley's sole possession, copyright owners rely on such disclosures to obtain sufficient information to protect their copyrights.   Defendant's proposed reading of Section 507(b) effectively sought to reward its own efforts to conceal unauthorized uses.

Wiley's efforts to conceal usage information from Psihoyos – especially when considered in light of Wiley's position on the statute of limitations and its negotiations with Getty Images – cannot be condoned by the Court.  Wiley's conduct will require extensive additional litigation between the parties.  Wiley's conduct can and should be considered by the Court in awarding fees and costs.

**B.      Wiley's Counsel Withheld Relevant Documents During Discovery.**

Defendant's discovery conduct also justifies an award of fees.   Plaintiff's document requests specifically requested discovery related to any alleged license to use Plaintiff's photos and Wiley's acquisition of Plaintiff's photos.  *See* McCulloch Ex. 4 at Nos. 3, 30, & 35.  After Defendant served its response and objections to this discovery, Plaintiff's counsel also expressly advised Defendant's counsel that "it is evident that Wiley did not acquire all of the images identified in the Complaint directly from Science Faction, but instead acquired those images from other agencies[.]"  *Id.* Ex. 5.  Defendant's counsel rejected this notion and refused to provide any additional discovery, claiming that only Science Faction "was involved in licensing certain of the photographs[.]"  *Id.* Ex. 6.  It is evident, however, that this statement was false and that Wiley withheld numerous relevant licensing documents.

First, Wiley withheld the alleged license obtained from Matrix International related to the use of Psihoyos' photos in *Geology Today*.  This document would have been crucial in showing that Wiley did not have permission to retain copies of Plaintiff's photos or republish them without additional licensing.  This document also likely will show that Wiley exceeded the scope of its permission related to this book.

Second, Wiley withheld the communications with and the alleged license it obtained from Getty Images related to the use of the "Enormous Triceratops Skeleton" photo in *Physics*, 8th Edition.  Such documents bear directly on Wiley's claim that it was upfront with Getty Images regarding the fact that the license request pertained to a book that already had been published and for which Wiley was being sued by the photographer.

Third, Wiley withheld alleged agreements and invoicing documents from the National Geographic Society ("NGS").  These documents, of course, are relevant to Wiley's claim that it had a license from NGS related to the "Fossilized Dinosaur Tracks" photo.  In fact, these

documents formed a core part of Wiley's defense related to the use of this image in the *Visualizing Geology* series.

Wiley's refusal to provide obviously relevant documents related to the photos in suit is unjustifiable.  Defendant's counsel attempted to rely on the existence of these alleged documents at trial, and thus these discovery abuses created significant prejudice to Plaintiff.

The documents that Wiley obtained from NGS pursuant to its second subpoena in October 2011 clearly were not documents that Wiley could have discovered only through NGS. The nature of these documents makes clear that Wiley was (or should have been) in possession of these documents, not to mention significant additional materials related to the negotiation of these agreements and the parties' dealings pursuant to these agreements that has never been produced.

Wiley's effort to avoid discovery of its relationship and dealings with Plaintiff's other agents (Matrix and Getty Images) has caused significant evidence relevant to Plaintiff's claims or Wiley's defenses to remain undiscovered.  Wiley either intentionally withheld these documents in discovery or it failed to conduct an appropriate search of its records and systems for relevant discovery material.  Either way, Wiley's failure to discover and produce these sorts of documents is entirely attributable to Wiley, and thus Wiley must be held responsible for that mistake or omission. *See Hickman v. Taylor*, 329 U.S. 495, 507 (1994) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.").  Defendant's counsel apparently did not take the obligations imposed by the Federal Rules seriously in this case, and its discovery abuses can and should be considered by the Court in awarding fees and costs.

### C.      An Award of Fees Is Warranted In Light of Wiley's Settlement Conduct.

Plaintiff's attorneys' fees in this case were reasonably and necessarily incurred as a result of Defendant's calculated and unreasonable settlement posture in this case.  Despite admitting to and conceding  several infringements of Plaintiff's copyrights, Defendant offered no money to Plaintiff.   Rather, Defendant sought to exploit the costs and uncertainties of litigation to discourage Plaintiff's righteous claims.  Defendant continued its "zero pay" position, even in the face of admitted liability, until it was ordered to attend a settlement conference with Magistrate Judge Katz.  Wiley made its first offer the day before the conference, and did so only because Judge Katz's rules require a pre-conference offer.

At the conference, Wiley demanded a general release of all claims by Psihoyos despite refusing to disclose the full scope of Wiley's uses of Plaintiff's photos.  Indeed, Wiley's counsel misrepresented that Wiley in fact already had disclosed the full scope of its use of Plaintiff's photographs despite the fact that Wiley had never disclosed the use of numerous photos owned by Psihoyos that were published in the same books in suit.  In the end, Wiley balked at the recommendation by Judge Katz.

Following the settlement conference, Wiley focused its efforts on getting Plaintiff's claims dismissed based on procedural technicalities arising from Wiley's own misrepresentations about where it obtained the photographs.  After some success with this strategy, Wiley made no offers of settlement for nearly a year.

From the outset of this action, Defendant has refused to concede or even address Plaintiff's entitlement to recover his fees and costs, and has never offered Plaintiff any amount for fees and costs even though such expenses were necessarily incurred because of Defendant's infringements and unreasonable settlement posture.  It is evident that Defendant's strategy in this and other suits of this nature is to make the litigation process sufficiently expensive for copyright

owners in order to induce low settlement amounts.  As Defendant's counsel has put it, it is Wiley's strategy of using its litigation posture to break Plaintiff's counsel's "business model."  It obviously has been Wiley's intentional strategy to increase litigation expenses in the hopes of gaining leverage in settlement talks.  This is perverse and unsupportable position that cannot be rewarded by the Court.

Defendant's final offer to Mr. Psihoyos was for approximately 15% of the amount of the jury award.  At the time, the offer represented approximately 50% of Plaintiff's case costs, not including fees.  The offer represented approximately 4% of Psihoyos' attorneys' fees. Defendant's position was objectively reasonable, and should compel this Court to award Plaintiff his full fees and costs.

## V.   A FULL AWARD OF FEES IS NECESSARY TO FULFILL THE FUNDAMENTAL PRINCIPLES OF THE COPYRIGHT ACT.

The Court's award of fees must remain "faithful to the purposes of the Copyright Act," with the primary objective being to "encourage the production of original literary, artistic, and musical expression for the good of the public." *Fogerty*, 510 U.S. at 524. This objective requires discouraging infringement. *Id.*  Accordingly, a crucial part of the Court's analysis under Section 505 is "to advance considerations of *compensation and deterrence*." *Id.* at 533 n.19 (emphasis added).  Under the circumstances of this case, anything less than a full award of fees and costs will erode this principle and make it more difficult for copyright owners such as Psihoyos to pursue their righteous claims against Wiley and other textbook publishers.

It is evident that Psihoyos' claims against Wiley in this action arose from and evince a larger pattern and practice at Wiley.  Indeed, Wiley has been sued dozens of times for literally

12

hundreds of incidents of copyright infringement involving the same claims at issue here.[1]   For instance, Wiley has admitted to exceeding the print run for 40 books for which it obtained licenses from just one vendor, with literally thousands of other third-party photos being published in these same books.  *See* McCulloch Decl. Ex. 7.

This litany of cases is merely the tip of the iceberg because Wiley, in an effort to conceal its illegal conduct, refuses to disclose usage information to copyright owners.  Except for suits referred to arbitration, Wiley either has settled or been held liable for infringement in each of these actions.   *See, e.g.*, *Hiser*, No. 09-cv-4307, Dkt. No. 40 (S.D.N.Y.   Dec.  1, 2010) (terminated due to settlement); *Bean*, No. 11-cv-8028, Dkt. No. 122 (D. Ariz. Mar. 30, 2012) (granting summary judgment on 108 counts of infringement); *Bean*, No. 12-cv-8001, Dkt. No. 16 (D. Ariz. May 29, 2012) (terminated due to settlement).   Nevertheless, Wiley continues to maintain (in every case) that its misconduct was merely an isolated administrative error.

Given Wiley's litigation position, it was necessary for Psihoyos to pursue his claims all the way to trial.  The verdict in this action vindicates Plaintiff's position and sends a clear message to Wiley that it should abandon this litigation position.

Holding Wiley responsible for anything less than Psihoyos' full fees and costs would be contrary to the fundamental principles of the Copyright Act as it would not adequately compensate Plaintiff for the work expended in this lengthy lawsuit, nor will a partial award properly deter Wiley from continuing to advance these baseless arguments.

---

[1] *See, e.g.*, *John Wiley & Sons, Inc. v. Hiser*, No. 09-cv-4307 (S.D.N.Y.); *Visuals Unlimited v. John Wiley & Sons, Inc.*, No. 11-cv-0415 (D.N.H.); *Grant Heilman v. John Wiley & Sons, Inc.*, No. 11-cv-1665 (E.D. Penn.); *Gentieu v. Pearson*, No. 11-cv-1946 (N.D. Cal.); *Cole v. Wiley*, No. 11-cv-2090 (S.D.N.Y.); *Frerck v. John Wiley & Sons, Inc.*, No. 11-cv-2727 (N.D. Ill.); *Bean v. John Wiley & Sons, Inc.*, No. 11-cv-8028 (D. Ariz.); *DRK Photo v. John Wiley & Sons, Inc.*, No. 11-cv-8133 (D. Ariz.); *Bean v. John Wiley & Sons, Inc.*, No. 12-cv-8001 (D. Ariz.); *Warren v. John Wiley & Sons, Inc.*, No. 12-cv-5070 (S.D.N.Y.); *Rubin v. John Wiley & Sons, Inc.*, No. 12-cv-5071 (S.D.N.Y.); *Young-Wolff v. John Wiley & Sons, Inc.*, No. 12-cv-5230 (S.D.N.Y.).

## VI.     PLAINTIFF'S FEE REQUEST IS REASONABLE.

Under Section 505, the Court must determine only that the fees requested are reasonable. When determining whether an award of fees is reasonable, courts should "consider the amount of work, the skill employed, damages at issue, and the result achieved." *N.A.S. Import Corp. v. Chenson Enterprises, Inc.,* 968 F.2d 250, 254 (2d Cir. 1992).  In making this determination, it is appropriate for the Court to rely on its own experience of other fee applications and its own recognition of the skill exhibited by undersigned counsel. *See Screenlife Establishment v. Tower Video, Inc.*, 868 F. Supp. 47, 53 (S.D.N.Y. 1994).  All factors in this action weigh in favor of a full award of fees.

"The starting point of the attorney's fee calculation is the 'lodestar' method, under which fees are determined by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 668-69 (S.D.N.Y. 2001) (citation omitted).  The fee application must be supported by contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

Plaintiff's request for his fees and costs is support by appropriate time records that are reasonable in light of the work required to successfully litigate this action. *See* McCulloch Decl. Exs. 8 & 9 (time records for Kevin McCulloch and Danial Nelson).  As the documentation provided herewith demonstrates, the most significant time was devoted to preparing for and conducting the jury trial in this action, at which Plaintiff overwhelmingly prevailed on the most significant issues.

The hours are billed at $600 per hour for Mr. Nelson and $500 per hour for Mr. McCulloch.  These rates are commensurate with our relative litigation experience, firm location,

14

and nature of the work involved.  *See e.g.*, *Antonmarchi v. Consol. Edison Co. of New York, Inc.*,

No. 03-cv-7735, 2012 WL 3126004, at *2 (S.D.N.Y. July 31, 2012) (approving $530/hour rate

for senior partner); *Rozell v. Ross–Hoist*, 576 F. Supp. 2d 527, 545–46 (S.D.N.Y.2008)

(approving $600/hour rate for senior partner); *Marchisotto v. City of New York*, No. 05-cv-2699,

2009 WL 2229695, at *7 (S.D.N.Y. July 27, 2009) (approving $400/hour rate for an attorney

with approximately twelve years of experience).  Plaintiff's counsel are experienced copyright

litigators who have been lead counsel in dozens of cases in this Court, and have handled complex

intellectual property matters in the Second Circuit and United States Supreme Court.  In fact, this

Court has approved Plaintiff's counsel as class counsel in *Wu v. Pearson Educ., Inc.*, No. 09-cv-

6557 (S.D.N.Y.), a certified nationwide class action involving identical issues to the instant case.

*See Wu*, 277 F.R.D. 255, 272 (2011).

Mr. Nelson has practiced for 11 years in courts throughout the United States.  Mr.

McCulloch has practiced for 7 years since graduating from Yale Law School.  *See* McCulloch

Decl. ¶¶ 13-14.  Both counsel have briefed papers to multiple courts of appeals and even the

United States Supreme Court.  Considering counsel's experience and expertise, and the location

of the firm in New York City, their hourly fees are reasonable.

The amount of time expended on this action also was reasonable.  This entire litigation

was handled for Plaintiff by only two attorneys, compared to the numerous in-house and outside

counsel involved in this action for Wiley.  This dispute arose in November 2010 and a verdict

was returned in Plaintiff's favor on August 1, 2012, nearly 21 months later.  During that time, the

parties engaged in document discovery, depositions, and written discovery; briefed multiple

motions; litigated discovery disputes occasioned entirely by Defendant's litigation conduct; and

participated in a 6-day trial.  The total hours expended are reasonable given that litigating these

claims lasted 21 months and required a jury trial in Federal court.

15

Plaintiff thus seeks an award of his full litigation costs ($44,163.12) and attorneys' fees ($548,370.00).  *See* McCulloch Decl. ¶¶ 10-13, Exs. 8-11.

## CONLCUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court GRANT his full application for fees and costs under 17 U.S.C. § 505.

Respectfully submitted,

NELSON & McCULLOCH LLP

By:   _____
Danial A. Nelson (DN4940)
Kevin P. McCulloch (KM0530)
The Chrysler Building
405 Lexington Ave., 26th Floor
New York, New York 10174
T: (212) 907-6677
F: (646) 308-1178
dnelson@nelsonmcculloch.com
kmcculloch@nelsonmcculloch.com

*Attorneys for Plaintiff*

16